# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LARRY A. LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-1100-EFM-ADM |
| | ) | |
| SPIRIT AEROSYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff Larry A. Lawson's Motion to Compel (ECF No. 56). The court held a hearing on the motion on April 23, 2019. As detailed on the record at that hearing, Mr. Lawson's motion is granted in part and denied in part. This memorandum and order is intended to memorialize the court's rulings.

## I.     BACKGROUND

This case arises out of Defendant Spirit AeroSystems, Inc.'s ("Spirit") alleged breach of a retirement agreement with Mr. Lawson, Spirit's former CEO. Mr. Lawson alleges that, after he retired from Spirit, he became a consultant for an investment firm that planned to install him as CEO of Arconic, Inc. ("Arconic"), an aircraft component manufacturer. Mr. Lawson alleges that, when Spirit learned of this plan, it improperly withheld his retirement benefits because Spirit claimed that he violated the non-compete provision in his retirement agreement. That provision prohibited Mr. Lawson from becoming involved in any business "that is engaged, in whole or in part, in the Business, or any business that is competitive with the Business or any portion thereof" for two years after his employment with Spirit was terminated. The provision that defines "Business" reads as follows:

> We are engaged in the manufacture, fabrication, maintenance, repair, overhaul, and modification of aerostructures and aircraft components, and market and sell our products and services to customers throughout the world (together with any other businesses in which Spirit may in the future engage, by acquisition or otherwise, the "Business").

Mr. Lawson now seeks the court's intervention regarding discovery related to the "Business" of Spirit and Arconic. Specifically, Mr. Lawson asks the court to compel Spirit to produce (1) its contracts with Boeing and Airbus; (2) its antitrust filings relating to its planned acquisition of Asco Industries; (3) documents related to the aspects of Spirit's business that Spirit alleges overlap with Arconic's business; and (4) documents related to Spirit's relationship with Arconic.

## II. DISCUSSION

### A. Discovery Standards

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). To determine whether discovery sought is proportional to the needs of the case, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The party resisting discovery "has the burden to establish . . . that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003). Courts in this District do not favor "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004). A party objecting to discovery "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id.* at 670-71.

**B.     Plaintiff's Discovery Requests**

The court now addresses the categories of documents Mr. Lawson seeks, which are encompassed in Request for Production Nos. 19-21, 25-30, 32, 34-38, and 40. At the hearing, Mr. Lawson clarified that he is not seeking to compel the full scope of documents sought in these RFPs, but rather only the smaller subset of documents that are the subject of his motion to compel. The court will therefore focus its discussion only on the smaller subset of documents at issue.

**1.     Boeing and Airbus Contracts**

Mr. Lawson asks the court to compel Spirit to produce contracts between Spirit and its largest customers (RFP Nos. 20-21). As further detailed on the record at the hearing on April 23, the court grants Mr. Lawson's motion with respect to the portions of these contracts (or amendments, addenda, exhibits, schedules, data compilations, or lists) that relate to Spirit's deliverables to Boeing and Airbus. Spirit shall produce these documents on or before **May 7, 2019**.

3

### 2. Antitrust Filings

Mr. Lawson asks the court to require Spirit to produce its antitrust filings relating to Spirit's planned acquisition of Asco Industries (RFP No. 32). As further detailed on the record at the hearing on April 23, the court grants Mr. Lawson's motion with respect to the portion of these filings relating to Spirit's business and market/marketing positioning, including the index(es) for these filings, the "4(c) documents," and related white papers. Spirit shall produce these documents on or before **May 7, 2019**.

### 3. Product Overlaps and Spirit's Relationship with Arconic

Mr. Lawson asks the court to compel Spirit to produce documents relating to Spirit products, processes, equipment, and certifications that Spirit contends overlap with Arconic products, processes, equipment, and certifications (RFP Nos. 34-38, 40). He also asks the court to compel Spirit to produce documents relating to Spirit and Arconic's relationship (RFP Nos. 19, 25-30). As further detailed on the record at the hearing on April 23, the court will grant these aspects of the motion in part and deny them in part. Specifically, Spirit shall produce these documents to the extent that such documents are captured by the ESI search protocol.

### C. ESI Search Protocol

After consultation with the parties, the court orders the parties to comply with the following ESI search protocol:

- By **May 3, 2019**, Mr. Lawson shall identify up to seven categories of documents for which it seeks ESI.

- By **May 20, 2019**, for each category of documents, Spirit shall serve a list of the top three custodians most likely to have relevant ESI, from the most likely to the least likely, along with a brief explanation as to why Spirit believes each custodian will have relevant information.

- By **May 23, 2019**, Mr. Lawson shall serve a list of five custodians and proposed search terms for each custodian.

- Spirit shall search the identified custodians' ESI using these proposed search terms. Spirit shall use sampling techniques to assess whether the search has produced an unreasonably large number of non-responsive or irrelevant results and, if so, Spirit shall suggest modified search terms (*e.g.*, different keywords, negative search restrictions, etc.) by **May 30, 2019**.

- The parties shall meet and confer about search terms and try to achieve an estimated responsive hit rate of at least 85%.

- Spirit shall produce responsive documents from the first five custodians on or before **June 21, 2019**.

- Meanwhile, the parties shall begin this same process for the next five custodians. By **May 30, 2019**, Mr. Lawson will produce to Spirit a list of the next five custodians and proposed search terms for each custodian. If Spirit finds that the estimated responsive hit rate is not at or above 85%, Mr. Lawson shall suggest modified search terms by **June 6, 2019**. The court will set a deadline for Spirit to produce documents from the second set of five custodians at a later time.

If Mr. Lawson wishes to seek ESI from additional custodians beyond the ten described in this protocol, the parties are directed to contact the court for further guidance.

### D.   Attorneys' Fees and Costs

Mr. Lawson also asks the court to require that Spirit pay his attorneys' fees and costs associated with the motion to compel. When a court grants in part and denies in part a motion to compel, "the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C). Whether to impose sanctions lies within the court's discretion. *See Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013). The court does not find sanctions are warranted here. The parties will bear responsibility for their own attorneys' fees and costs related to Mr. Lawson's motion to compel.

Accordingly,

**IT IS THEREFORE ORDERED** that plaintiff Larry A. Lawson's Motion to Compel (ECF No. 56) is granted in part and denied in part as detailed on the record in the hearing held April 23, 2019 and memorialized herein.

**IT IS SO ORDERED.**

Dated April 26, 2019, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge