IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LARRY A. LAWSON,<br><br>        Plaintiff,<br><br>v.<br><br>SPIRIT AEROSYSTEMS, INC.,<br><br>        Defendant. | Case No. 6:18-cv-01100-EFM-ADM |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SHIFT COSTS OF
TECHNOLOGY ASSISTED REVIEW OF ESI TO PLANITIFF**

## I.  Preliminary Statement

The time is ripe for the Court to order that Plaintiff Larry A. Lawson ("Lawson") bear the costs of the technology assisted review[1] of approximately 322,000 documents of Defendant Spirit AeroSystems, Inc. ("Spirit") that is currently underway. Over the past nine months, the parties have engaged in what has proven to be an unworkable, costly, and largely fruitless ESI discovery process on the issue of business overlap between Spirit and non-party Arconic, Inc. ("Arconic"). Spirit has already incurred approximately $140,000 in costs solely to conduct three sampling exercises using Lawson's selected custodians and proposed search terms. These costs are exclusive of attorneys' fees incurred by Spirit in connection with conferences and communications with Lawson's counsel, conducting numerous custodian interviews, harvesting data, and coordinating the sampling exercises with Spirit's e-discovery vendor, Legility. Yet those sampling exercises—which involved collecting, processing, hosting, and searching *millions* of documents—yielded responsiveness rates of just 0.5% to 15%.

Concurrently with this failed process, Spirit has been independently conducting its own reasonable efforts to collect, review, and produce relevant documents in this case, including but not limited to documents bearing on the issue of business overlap between Spirit and Arconic. To date, Spirit has made 16 productions amounting to approximately 40,000 pages. Most of Spirit's productions resulted from targeted searches and collection of ESI from custodians that Spirt determined—through custodian interviews—are most likely to have information relevant to this dispute. This method has proven far more fruitful than ESI discovery efforts undertaken based on Lawson's selected custodians and search terms.

During the September 17, 2019 discovery conference, the Court raised the issue of whether

---

[1] Spirit is leveraging a TAR 2.0 process, which uses continuous active learning, herein referred to as "TAR."

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SHIFT COSTS OF TECHNOLOGY ASSISTED REVIEW OF ESI TO PLANTIFF– Page 1**

the costs for reviewing the 322,000 documents using TAR should be shifted to Lawson, and invited Spirit to file a motion regarding the same. To be clear, the approximately 322,000 documents at issue resulted entirely from the application of search terms *selected by Lawson* to the data of ten Spirit custodians *selected by Lawson*. On September 19, 2019, Spirit proposed simply continuing to conduct its own reasonable searches for responsive documents in lieu of the expensive and time-consuming process of proceeding with a TAR; however, Lawson rejected Spirit's proposal

Per Lawson's direction, Spirit's review of the 322,000 documents utilizing TAR has begun. This review is currently estimated to cost between $250,000-$400,000, and will take four to six weeks to complete. Given the substantial time, effort, and cost Spirit has already incurred in connection with the ESI protocol, the fact that Lawson selected the custodians and search terms at issue, the multiple predictions that this review will likely yield only 5% technically responsive documents (and far fewer *relevant* documents), Lawson's election to pursue TAR even after the Court raised the issue of cost-shifting, and for reasons more fully explained below, Spirit respectfully requests that the Court shift all costs and fees associated with the TAR of the 322,000 documents to Lawson.

## II.     Background of Dispute

### A.     Relevant Facts and Discovery Timeline

One of the central issues in this case is whether Lawson failed to comply with the condition precedent to receiving certain benefits under his Retirement Agreement with Spirit by consulting with and assisting non-party Elliott in connection with its investment in Arconic and/or by endeavoring to become a board member or the CEO of Arconic. Like Spirit, Arconic is a manufacturer of aerostructures and aerospace components whose major customers include Boing and Airbus. Whether Arconic and Spirit are in the same "Business" (as defined in Lawson's

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SHIFT COSTS OF TECHNOLOGY ASSISTED REVIEW OF ESI TO PLANITIFF– Page 2**

employment agreement) is central to the issue of whether Lawson failed to comply with the condition precedent to receiving benefits under his Retirement Agreement.

Lawson served his First Requests for Production on November 30, 2018, which consisted of 40 requests with 55 subparts, many of which were directed at the issue of "Business" overlap between Spirit and Arconic.[2] On January 28, 2019, consistent with the Agreed Order Establishing Protocol for ESI and Paper Documents (Dkt. 40), Lawson provided proposed search terms and custodians to Spirit.[3] Lawson asked Spirit to collect all ESI from 69 custodians (and their administrative assistants), and apply 90 search terms to each custodian's data. Lawson did not budge from that position until this Court ordered otherwise on April 26, 2019. (Dkt. 82).[4]

**Sampling Exercise # 1.** In February 2019, after consulting with Legility, Spirit conducted a sampling exercise using Lawson's 90 proposed search terms on four custodians from Lawson's list of 69-plus.[5] Spirit selected four custodians it viewed as most likely to have relevant and responsive ESI.[6] This exercise resulted in the collection, processing, and hosting of over 1.2 million documents.[7] Running Lawson's proposed search terms on these documents resulted in 409,784 hits, including with families.[8] Legility generated a random sample of nearly 400 of these documents for review. After a review of each document, it was determined that 85% were not responsive to Lawson's requests on the "Business" overlap or otherwise relevant to the dispute.[9]

---

[2] *See* Exhibit A to the Declaration of Ann Marie Arcadi in Support of Defendant's Motion to Shift Costs ("Arcadi Decl."), filed concurrently herewith. Lawson has also served two additional sets of request for production upon Spirit, both of which are overly broad and not proportional to the needs of the case. *See* Arcadi Decl., Exhibits L and M. In total, Lawson has served 94 requests for production upon Spirit, many of which include numerous discrete subparts.
[3] Arcadi Decl., Exhibit B.
[4] *See* March 12, 2019 Memorandum of Law in Support of Lawson's Motion to Compel (Dkt. 57) at 23-24.
[5] *See* Declaration of Jeff Stoneking in Support of Defendant's Response in Opposition to Plaintiff's Motion to Compel ("April Stoneking Decl.") (Dkt. 72-13) at ¶¶ 6-10.
[6] Arcadi Decl. at ¶ 6; April Stoneking Decl. at ¶ 11 (Dkt. 72-13).
[7] April Stoneking Decl. at ¶ 11 (Dkt. 72-13).
[8] *Id.* at ¶ 12.
[9] *Id.* at ¶ 13.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SHIFT COSTS OF TECHNOLOGY ASSISTED REVIEW OF ESI TO PLANITIFF– Page 3**

On February 25, 2019, Spirit provided Lawson with the results from this sampling exercise.[10]

**Sampling Exercise # 2.** The Court's April 26, 2019 Order ("April Order") (Dkt. 82) required Spirit to provide Lawson with a "list of the top three custodians most likely to have relevant ESI" for each of up to seven categories of documents for which Lawson seeks ESI regarding the issue of "Business" overlap.[11] Lawson was permitted to select 10 Spirit custodians as well as search terms for each. Spirit was to conduct a sampling exercise based on Lawson's selected custodians and proposed search terms "to assess whether the search has produced an unreasonably large number of non-responsive or irrelevant results."[12] The parties were ordered to "try to achieve an estimated responsive hit rate of at least 85%."[13]

In May 2019, Lawson selected his 10 custodians, *7 of which were not on Spirit's lists of custodians most likely to have relevant ESI* for the categories of information that Lawson sought.[14] Lawson also provided Spirit with *803 search terms* to be run across the 10 custodians' ESI.[15] Spirit conducted a second sampling exercise, using Lawson's 803 search terms and 10 selected custodians.[16] Unsurprisingly, this sampling exercise confirmed that Lawson's selected custodians had a miniscule amount of responsive information – 7.8% – and even less relevant information.[17]

**Sampling Exercise # 3.** On June 6, 2019, the Court conducted a discovery conference, and subsequently entered an order (the "June Order") (Dkt. 88), modifying, in part, the April Order.

---

[10] Arcadi Decl., Exhibit C, p. 3.
[11] April Order at p. 4.
[12] *Id.* at p. 5.
[13] *Id.*
[14] Arcadi Decl. at ¶ 8-10 and Exhibits D, E and F.
[15] *Id.*, Exhibits E and F.
[16] *See* Declaration of Jeff Stoneking in Support of Defendant's Motion to Shift Costs of Technology Assisted Review of ESI to Plaintiff ("Stoneking Decl."), filed concurrently herewith, at ¶¶ 7-9.
[17] Arcadi Decl., Exhibit G; Stoneking Decl. at ¶ 9.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SHIFT COSTS OF TECHNOLOGY ASSISTED REVIEW OF ESI TO PLANTIFF– Page 4**

Finding that Lawson's proposal of 803 search terms was unreasonable, the Court ordered Lawson to instead provide Spirit with 25 search terms per custodian.[18] On June 28, 2019 Lawson provided 25 proposed search terms for each of his 10 selected custodians (which he amended on July 2, 2019.[19] Spirit conducted separate sampling exercises for each of Lawson's 10 selected custodians.[20] The responsiveness rate for the ten samples ranged from only 0.5% to 13.5%, with an average responsiveness rate of 5.1%.[21] On August 19, 2019, Spirit produced all responsive, non-privileged documents from the third sampling exercise, totaling only 173 documents.[22] Although not required to do so, Spirit also provided for Lawson's review 77 non-responsive documents that Lawson's search terms had hit upon in an effort to assist Lawson to determine why his proposed search terms were resulting in such few responsive documents and nearly no relevant documents.[23]

Spirit has spent approximately $140,000 solely in connection with the three sampling exercises described above.[24] This cost *does not include* the attorneys' fees incurred by Spirit in connection with attorney conferences with Lawson's counsel on his proposed custodians and search terms, conducting numerous custodian interviews, harvesting data, and coordinating each of the three sampling exercises with Legility.[25]

    B.    <u>Spirit Makes Significant Productions Regarding Issue of Overlap</u>

It has been Spirit's position for several months that discovery on the issue of "Business" overlap between Spirit and Arconic can be conducted without incurring the expense and delay

---

[18] June Order at 1 (Dkt. 88).
[19] Arcadi Decl., <u>Exhibit H</u>.
[20] Stoneking Decl. at ¶¶ 11-13.
[21] Arcadi Decl., <u>Exhibit I</u>; Stoneking Decl. at ¶ 13.
[22] Arcadi Decl. at ¶ 13.
[23] *Id*.
[24] Stoneking Decl. at ¶ 15; Arcadi Decl. at ¶ 14.
[25] Arcadi Decl. at ¶ 14.

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SHIFT COSTS OF TECHNOLOGY ASSISTED REVIEW OF ESI TO PLANITIFF</u>– Page 5**

associated with the review of large data populations known to have little responsive material. Indeed, outside of the ESI protocol process, Spirit has collected, reviewed, and produced 40,000 pages (approximately 4,690 documents, in 16 separate productions), including documents bearing on the issue of the "Business" overlap between Spirit and Arconic. Spirit's productions resulted from targeted document collections from custodians that Spirit determined (through interviews) to be most likely to have ESI responsive to Lawson's requests. Spirit has been undertaking these efforts since December 2018, and continues to do so.[26] Spirit has also been working diligently to meet all of the requirements set forth in the Court's April and June Orders, and has repeatedly communicated and conferred with Lawson regarding his 94 document requests, untenable positions, and unreasonable demands.

### C. Lawson Elects to Pursue TAR

The parties provided the Court with an update on the status of the ESI discovery during the September 17, 2019 conference. The Court recognized that ***"[the] ESI exercise that has been undertaken in this case, which has been fairly extensive, is not yielding a very high relevance rate in terms of the benefit to be sought relative to the burden of seeking this discovery."***[27] Lawson raised the possibility of utilizing TAR as a substitute for the search term protocol which had proven to be unworkable. Subsequently, the Court discussed the potential for shifting costs to Lawson, and invited Spirit to brief the issue in its order ("September Order") (Dkt. 128).

Spirit reached out to Lawson on September 19, 2019 in an attempt to avoid another lengthy and expensive review of ESI which is unlikely to yield many responsive (let alone relevant)

---

[26] Additionally, on September 12, 2019, Spirit served its Amended Objections and Answers to Plaintiff's First Set of Interrogatories (Dkt. 131 – sealed), which provides a multi-page list identifying 49 aerostructures and aircraft components that both Spirit and Arconic manufacture, produce, or sell, and includes the Bates numbers of specific documents in Spirit's productions that discuss each individual component.
[27] Sept. 17, 2019 Discovery Conference Audio 26:28–26:48.

documents.[28] As previously stated, only 5% of the 322,000 documents at issue are likely to be responsive to Lawson's requests, and many of the technically responsive documents are likely to be irrelevant.[29] Spirit therefore proposed to Lawson that, in lieu of TAR, Spirit simply continue to make reasonable efforts to review and produce documents regarding the "Business" overlap issue based on Spirit's identification of custodians most likely to have relevant and responsive information.[30] Lawson rejected this proposal.[31]

On September 26, 2019—at Lawson's request—Spirit's counsel, Legility, and Lawson's counsel conferred regarding Legility's TAR procedures.[32] Lawson's counsel asked whether Spirit had begun the TAR process, and Spirit's counsel indicated that it had. Nonetheless, on September 30, 2019, Lawson sent a letter requesting that Spirit provide Lawson with the 322,000 documents at issue, so that Lawson could conduct *his own TAR*.[33] Lawson suggested this proposal would "help the parties avoid costly motion practice on the fee-shifting motion," even though Lawson sent this proposal late in the day, on the day before Spirit's motion was due, *11 days after Spirit asked Lawson whether he wanted Spirit to proceed with the TAR,* and 4 days after Spirit had indicated that the TAR process had already begun. Lawson's proposal is unworkable because it would require Spirit to turn over substantial amounts of non-responsive ESI, including proprietary and sensitive business information (95% of which is likely to be non-responsive and/or irrelevant), and because Spirit had started conducting the TAR and incurring substantial costs associated with same, at Lawson's direction.[34]

---

[28] Arcadi Decl, Exhibit J.
[29] *Id*. at ¶ 13 and Exhibit I; Stoneking Decl. at ¶ 13.
[30] Arcadi Decl., Exhibit J.
[31] *Id.*, Exhibit K.
[32] *Id*. at ¶ 20.
[33] *Id.*, Exhibit N.
[34] *Id.*, Exhibit O.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SHIFT COSTS OF TECHNOLOGY ASSISTED REVIEW OF ESI TO PLANITIFF– Page 7**

      D.      <u>TAR of this Largely Irrelevant ESI Will be Costly and Time-Consuming</u>

Spirit and Legility estimate that using TAR to conduct a review of the 322,000 documents at issue will cost between $250,000-400,000 and take between four and six weeks to complete. These costs consist of: (1) between $150,000 to $300,000 for costs incurred by Legility's document review team; (2) between $25,000 and $30,000 in data promotion costs to migrate the ESI into Legility's review platform; (3) $6,000 per month in hosting costs (in addition to the $12,069 per month Spirit is already spending on hosting and related costs); and (4) an estimated $40,000 to $60,000 in fees for Arcadi Jackson, LLP to provide a quality control review of Legility's document review, coordinating with Legility and its review team, and ultimately reviewing the documents prior to production.[35]

## III.    Argument

      A.      <u>Legal Standard</u>

FED. R. CIV. P. 26(c) gives courts "discretion… to condition discovery on the requesting party's payment of the costs of the discovery." *Foreclosure Mgmt. Co. v. Asset Mgmt. Hldgs., LLC*, C.A. No. 07-2388-DJW, 2008 WL 3822773, at *7 (D. Kan. Aug. 13, 2008). Cost-shifting is an important tool "in enforcing the [the] proportionality" standard expressly set forth in Rule 26(b)(1). *F.D.I.C. v. Brudnicki*, 291 F.R.D. 669, 676 (N.D. Fl. 2013). Among the factors that bear on whether cost-shifting is appropriate are: "predictions as to the importance and usefulness of the further information," "the quantity of information available from other and more easily accessed sources," and "the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources." *Semsroth v. City of Wichita*, 239 F.R.D. 630, 637 (D. Kan. 2006) (quoting 2006 Advisory Committee Notes to FED. R. CIV. P. 26(b)(2)).

---

[35] *See* Stoneking Decl. ¶ 17; Arcadi Decl. at ¶ 17.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SHIFT COSTS OF TECHNOLOGY ASSISTED REVIEW OF ESI TO PLANITIFF– Page 8**

B.   Lawson Should Bear the Costs of the TAR

Cost-shifting is clearly appropriate at this juncture. First, "predictions as to the importance and usefulness of the discovery sought" have shown that 95% of the 322,000 documents at issue are likely to be nonresponsive and/or irrelevant. *Semsroth*, 239 F.R.D. at 637. The third (most recent) sampling exercise resulted in a 5.1% responsiveness rate.[36] This result is nowhere close to the 85% responsiveness rate set forth in the Court's April and June Orders.

Courts routinely require the requesting party to shoulder discovery costs when sampling exercises reveal similarly low responsiveness rates. *See, e.g.*, *Moody v. Aircastle Advisor, LLC*, No. 3:13 CV 575(CSH), 2014 WL 1761736, at *2 (D. Conn. Apr. 30, 2014) (denying motion to compel defendant that had spent approximately $90,000 reviewing 8,000 documents to conduct additional ESI searches when sample searches indicated a low responsiveness rate, unless plaintiff agreed to pay costs); *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568 (N.D. Ill. 2004) (shifting 75% of production costs in light of 4.5%-6.5% sample responsiveness rate); *Stryker Corp. v. Ridgeway*, No. 1:13-CV-1066, 2015 WL 4425947, at *2 (W.D. Mich. July 20, 2015) (ordering former employee to pay for additional searches of employer's emails due in part to "the manner in which [employer] had already attempted to respond to [employee's] request . . . and the low probability that there would be any responsive documents").

Second, the ESI discovery process thus far has shown that "the quantity of information available from other and more easily accessed sources" is superior to those sources identified by Lawson which have resulted in the 322,000 documents at issue. As stated above, documents regarding the "Business" overlap between Spirit and Arconic are far more easily—and economically—accessed through alternative means, including collecting documents identified by

---

[36] Arcadi Decl. at ¶ 13 and Exhibit I; Stoneking Decl. at ¶ 13.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SHIFT COSTS OF TECHNOLOGY ASSISTED REVIEW OF ESI TO PLANITIFF– Page 9**

Spirit employees who are likely to have relevant ESI. Because the TAR of ESI that Lawson seeks is more difficult, expensive, time-consuming, and is expected to bear far less fruit than the alternative means being employed by Spirit, a party like Lawson who nonetheless insists on proceeding should bear the cost of doing so. *See Wood v. Capital One Servs., LLC*, No. 5:09-CV-1445, 2011 WL 2154279, at *9 (N.D.N.Y. Apr. 15, 2011) (denying motion to compel expensive ESI where information sought could be obtained through other means unless plaintiff agreed "to underwrite the expense associated with any such search"). Indeed, it is unclear why Lawson would even want ESI of this low "richness" or quality.

Third, the three sampling exercises conducted have not revealed any "relevant, responsive information that cannot be obtained from other, more easily accessed sources." Instead, these sampling exercises have revealed few responsive documents among the 322,000 files, with little-to-no relevance to this dispute. Additionally, the sampling exercises have confirmed Spirit's suspicion that Lawson's selection of 7 custodians not identified by Spirit likely to have relevant ESI has been a significant factor in the failure to discover relevant, responsive ESI within the data at issue. Almost all of the documents regarding the "Business" overlap between Spirit and Arconic produced by Spirit to date have resulted from numerous custodian interviews and the retrieval of targeted custodian files—not by using Lawson's selected custodians or through the application of Lawson's search terms, and not by harvesting and processing all ESI of relevant Spirit custodians.

## IV.   Conclusion

Spirit respectfully requests that the Court order Lawson to bear all costs and attorneys' fees associated with Spirit's TAR of the 322,000 documents identified using Lawson's search terms and custodians, and production of responsive, non-privileged, documents with resulting therefrom. Spirit also respectfully requests all other relief that this Court deems to be appropriate.

Date: October 1, 2019                    Respectfully submitted,

                                              */s/ Jeff P. DeGraffenreid*
Jeff DeGraffenreid, KS #15694
jdegraffenreid@foulston.com
Gary L. Ayers, KS #10345
gayers@foulston.com
FOULSTON SIEFKIN, LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
Telephone: (316) 291-9530
Facsimile: (866) 346-1938

Ann Marie Arcadi (admitted *pro hac vice*)
annmarie.arcadi@arcadijackson.com
T. Gregory Jackson (admitted *pro hac vice*)
greg.jackson@arcadijackson.com
Seema Tendolkar (admitted *pro hac vice*)
seema.tendolkar@arcadijackson.com
ARCADI JACKSON, LLP
2911 Turtle Creek Blvd., Suite 800
Dallas, TX 75219
Telephone: 214.865.6458
Facsimile: 214.865.6522

*Attorneys for Defendant Spirit AeroSystems, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 1st day of October 2019, I presented the foregoing to the Clerk of the Court by electronic transmission for filing with the Court, which will send notice of electronic filing to all counsel of record.

                                              */s/ Jeff P. DeGraffenreid*
                                              Jeff P. DeGraffenreid