## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LARRY A. LAWSON,

               Plaintiff,

v.

SPIRIT AEROSYSTEMS, INC.,

               Defendant.

Civil Action No. 6:18-cv-01100-EFM-KGS

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Larry A. Lawson ("Plaintiff"), by and through his counsel, and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, hereby requests that Spirit AeroSystems, Inc. ("Defendant") and all other persons acting or purporting to act on its behalf, produce, for inspection and copying, the documents described below at the offices of Hite, Fanning & Honeyman L.L.P., 100 N. Broadway, Suite 950, Wichita, KS 67202 by no later than January 15, 2019, except as otherwise indicated in the requests.

## DEFINITIONS

1.       "Spirit" means Defendant Spirit AeroSystems, Inc., as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

2.       "Lawson" means Plaintiff Larry A. Lawson.

3.       "Elliott" means Elliott Associates, L.P. and Elliott International, L.P., as well as each of their principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors,

members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

4.      "Arconic" means Arconic Inc., as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

5.      "Asco" means Asco Industries N.V., as well as each of its principals, parents (including SRIF N.V.), subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

6.      "Boeing" means The Boeing Company, as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

7.       "Airbus" means Airbus S.A.S., as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

8.       "Retirement Agreement" means the Retirement and Consulting Agreement and General Release, dated June 7, 2016, between Lawson and Spirit.

9.      "Consulting Agreement" means the Consulting Agreement, dated January 31, 2017, by and among Elliott and Lawson.

10.     "Employment Agreement" means the Employment Agreement, dated March 18, 2013, between Lawson and Spirit.

11.     "Documents" is used in the broadest possible sense permissible under Rule 34 of the Federal Rules of Procedure and shall mean all written or graphic matter, computer memory, tapes or other tangible things by which information is contained, stored or displayed, of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted, or executed, including but not limited to: written communications, emails, letters, correspondence, memoranda or notes of telephone conversations or personal conversations, diaries, desk calendars, interoffice or intraoffice communications, records, studies, analyses, statistical and financial statements, charts, graphs, reports, working papers, records, notes, manuals, books, instructions, telegrams, receipts, contracts, agreements, computer printouts, computer disks, computer programs, or material similar to any of the foregoing, however denominated, by whomever prepared, and to whomever addressed, which are in your possession, custody or control or to which you have, have had or can obtain access.

12.     "Communications" means any and all manner of transmitting, sending, receiving, transferring, conveying, disclosing or exchanging information, whether in writing, including via mail, electronic mail or telefaxes, or orally in person, by phone or by other recorded media such as audio or video tape or otherwise.

13.     "Electronically-Stored Information" or "ESI" means information generated, received, processed, recorded, manipulated, communicated, stored, or used in digital form including metadata (e.g., author, recipient, file creation date, file modification date, etc.). ESI includes, without limitation, data stored on or in computer servers, computer hard drives,

computer desktops, laptops, handheld or tablet computers, portable digital media, backup media, CD-ROMs, DVD-ROMs, floppy discs, non-volatile memory including flash memory devices, external hard drives, internal or external web sites, personal digital assistants (such as Palm or Blackberry devices), cell phones, electronic voicemail systems, text messages, instant messages, e-mails and attachments to e-mails, or any device or medium capable of storing data in any format.  ESI also includes, without limitation, output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant MessengerTM (or similar programs), bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment.  All ESI produced shall include sufficient metadata fields to identify, at minimum, its author, recipient, date and time of creation and modification, and where the document was located.

14.     "Person" means any natural person or any business, legal or governmental entity or association.

15.     "And" and "or" shall mean and include both the conjunction and the disjunctive.

16.     "All" shall be construed to include "all," "every," and "each" as necessary to make the request inclusive rather than exclusive.

## INSTRUCTIONS

1.     The Requests require that you produce documents in a manner that satisfies the requirements of Rules 26 and 34 of the Federal Rules of Civil Procedure.

2.     Each Request seeks production of each document in its entirety, without abbreviation or redaction, and all drafts and non-identical copies of each document, including,

but not limited to, all attachments, actual, proposed, or contemplated, envelopes, transmittal sheets, "post it notes," notes, cover letters, exhibits, and enclosures.

3.      In responding to these document requests, you shall produce separately all documents in your possession, custody or control, including documents in the possession, custody or control of your agents and representatives.

4.      The term "or" is to be read in both the conjunctive and disjunctive and shall serve as a request for information that would be responsive under a conjunctive reading in addition to all information that would be responsive to a disjunctive reading.

5.      If you claim any form of privilege or any other objection, whether based on statute, common law or otherwise as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information: date, sender, recipient, persons to whom copies were provided together with their job titles, subject matter, basis on which a privilege or other objection is claimed, and the paragraph(s) of this request to which such document responds.  If you claim privilege or any other objection with regard to only part of a document, produce the part to which there is no objection.

6.      If any document or copy thereof was but is no longer in your possession, custody or subject to your control, please state and specify in detail for each such document: date, sender, recipient, persons to whom copies were provided together with their job titles, the information contained therein, the date upon which it ceased to exist, the disposition that was made of it and the identity of all persons having knowledge of the contents thereof.

7.      In making production, produce all documents as kept in the normal course of business and identify the file from which each document was taken.

8.      In making production of ESI, you should produce all data or information that exists in electronic or magnetic form, including electronic data compilations, electronic email, or documents that are kept in electronic format (such as Microsoft Outlook, Lotus Notes, Microsoft Word, Microsoft Excel, Microsoft PowerPoint).  All information in electronic or magnetic form is hereby requested to be produced in the following format:

- Data load files in Summation (DII and Summary) and Concordance (OPT, DAT, and LFP load files) formats corresponding to each production volume.

- Document images should be 300 DPI in single page Group IV, TIFF format.

- Extracted/OCR text files on a document level.

- Excel files or other spreadsheet file types should be produced natively with links referenced in the "DocLink" field.  Natively produced documents should also be accompanied by a TIFF image slip sheet indicating the document was produced natively.

- Media files, such as audio and video, should be produced in native format with links referenced in the "DocLink" field.  Natively produced documents should also be accompanied by a TIFF image slip sheet indicating the document was produced natively.

- Metadata produced should include the following fields of information: BegBates, EndBates, AttachRange, BegAttach, EndAttach, ParentID, ChildIDs, Custodian, FilePath, Subject, ConversationIndex, From, To, CC, BCC, Date Sent, Time Sent, DateReceived, TimeReceived, FileName, Author, DateCreated, DateModified, MD5 Hash, FileSize, FileExtension, DocLink.

9.      These requests shall be deemed to be continuing so as to require supplemental answers from time to time up until the date of trial. If, after responding, you obtain or become aware of any additional documents responsive to these Requests, you shall produce such additional documents forthwith as required by Rule 26 of the Federal Rules of Civil Procedure.

**TIME PERIOD**

Unless otherwise specified in an individual Request, this Request for Production seeks documents and information prepared, sent, provided, received, in possession during, or relating

to specific time periods between January 1, 2014 to the present (the "Relevant Period"), or relating to the Relevant Period whenever prepared.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All Documents concerning the corporate and organizational structure of Spirit, including, but not limited to, organizational charts and corporate structure charts.  Documents responsive to this Request shall be produced by December 14, 2018.

2.      All Documents and Communications identified in Spirit's Rule 16 Initial Disclosures.

3.      All Documents and Communications relating to the drafting of the Employment Agreement or Retirement Agreement.

4.      All Communications relating to the negotiation of the Employment Agreement or Retirement Agreement.

5.      All Communications relating to any restrictive covenants in the Retirement Agreement and Employment Agreement, including non-competition obligations.

6.      All Documents relating to the compensation owed to Lawson pursuant to the Retirement Agreement.

7.      Documents sufficient to show the value of Spirit shares owned by Lawson or owed to him under the Employment Agreement, the Retirement Agreement, or any other agreement, from February 1, 2017 to the present.

8.      All minutes, agendas, presentations, or notes, including any drafts thereof, from any meeting relating to Spirit's decision to declare that Lawson was in breach of the Employment Agreement and/or the Retirement Agreement.

9.      All minutes, agendas, presentations, or notes, including any drafts thereof, from any meeting relating to Spirit's decision to cease making payments and vesting awards to Lawson pursuant to the Retirement Agreement.

10.     All Documents and Communications referring to or relating to any other agreements entered into between Spirit and Lawson.

11.     All Documents relating to Lawson's performance as CEO of Spirit.

12.     All Documents and Communications relating to Lawson's relationship with Elliott.

13.     All Documents and Communications referring to or relating to the proxy contest between Elliott and Arconic.

14.     All Documents relating to Spirit's letter dated February 2, 2017 to Lawson.

15.     All Communications relating to the letter received by Spirit from Lawson's counsel dated February 6, 2017.

16.     All Documents relating to Spirit's letter dated February 8, 2017 to Lawson's counsel.

17.     All Documents and Communications relating to the letter received by Spirit from Elliott's counsel, dated February 21, 2017.

18.     All Documents and Communications referring to or relating to Lawson's compensation or to sums owed or paid to Lawson under the Retirement Agreement.

19.     All Documents and Communications relating to whether either Elliott or Arconic engage in the "Business" referenced in section 4(c) of the Employment Agreement.

20.     Any and all agreements between Boeing and Spirit, including the Special Business Provisions Agreement, General Terms Agreement, and any amendments, addenda, exhibits, schedules, data compilations, or lists related to those agreements.

21.     Any and all agreements between Airbus and Spirit, and any amendments, addenda, exhibits, schedules, data compilations, or lists related to those agreements.

22.     Any and all agreements to supply products or services to any entity, and any amendments, addenda, exhibits, schedules, data compilations, or lists related to those agreements.

23.     All Documents and Communications relating to products or services to be provided in connection with any of the agreements responsive to Document Requests 20 through 22.

24.     All Documents received pursuant to a subpoena or document request in this case or any other related proceeding.

25.     All Documents and Communications relating to aerospace products, parts, components, or structures manufactured or assembled by Arconic.

26.     Documents sufficient to show all products purchased by Spirit from Arconic or any contracts between Spirit and Arconic, from January 1, 2013 to the present.

27.     All Documents and Communications relating to machine fabrication or chemical processing used by Arconic.

28.     All Documents and Communications relating to equipment used by Arconic.

29.     All Documents and Communications relating to certifications maintained by Arconic.

30.     All Documents and Communications relating to Arconic's past, present, or future customers, clients, or potential customer or clients.

31.     All Documents and Communications relating to Spirit's planned acquisition or combination with Asco.

32.     All Documents related to Spirit's planned acquisition or combination with Asco submitted by Spirit or Asco to regulatory agencies, including but not limited to the United States Federal Trade Commission, United States Department of Justice, the European Commission, or agencies tasked with enforcing antitrust or competition laws in any other jurisdictions, and any Documents and Communications relating to those submissions.

33.     All Documents related to any actual, proposed, or contemplated business transaction submitted by Spirit to regulatory agencies, including but not limited to the United States Federal Trade Commission, United States Department of Justice, the European Commission, or agencies tasked with enforcing antitrust or competition laws in any other jurisdictions, and any Documents and Communications relating to those submissions.

34.     All Documents and Communications relating to sales, purchases, and manufacturing since January 1, 2013 for any aerospace parts, structures, and components, including but not limited to the following categories:

     (a)     fuselage frames

     (b)     fuselage kits

     (c)     fuselage panels

     (d)     flight critical parts

     (e)     wing ribs

     (f)     wing boxes

     (g)     shear ties

(h)     pallet assemblies

(i)     spoilers

(j)     access doors

(k)     helicopter floors

(l)     engine/turbine bases and structures

(m)     window frames

(n)     seat tracks

(o)     pylons

(p)     bulkheads

35.     All Documents and Communications related to any machine fabrication and chemical processing procedures since January 1, 2013, including but not limited to the following categories:

(a)     5-axis aluminum machining

(b)     Diffusion bonding

(c)     5-axis laser and water-jet cutting

(d)     Chemical milling

(e)     Stretch form

(f)     Hard and soft metal machining

(g)     Chromic acid anodizing

(h)     Passivation

(i)     Chemical conversion

(j)     Titanium etching

36.     All Documents and Communications related to sourcing, purchasing, sales, and utilization of any equipment since January 1, 2013, including, but not limited to, the following equipment:

(a)     Makino A77

(b)     Makino T2

(c)     High Velocity Forest Line

(d)     Makino Mag3 EX

(e)     Cincinnati multi-spindle high torque-hard metal gantry machines

(f)     Cincinnati multi-spindle high speed gantry machines

(g)     Extrusion machining (Cinetic, Chiron, Modig HHV's and FlexMills)

(h)     Henri Line' single spindle high rail gantry machine

(i)     3-, 4-, and 5-axis 500mm, 600mm, and 800mm hard and soft metal machining center of all brands, including but limited to: Makino, Okuma, Matsuura, SNK, and Mazak, and Nomura, DeVleg or DeVlieg

(j)     Toshiba precision boring equipment

(k)     Norsk Additive Manufacturing

(l)     Stretch Forming

(m)     Joule Forming

(n)     Heat treat

(o)     Shot peening

(p)     Hand forming

(q)     Paint

37.     All Documents and Communications related to aerospace certifications since January 1, 2013, including but not limited to the following:

(a)     ISO 9001

(b)     AS9100C

38.     For each product, part, structure, service, procedure, or component responsive to Document Request 34 through 36, Documents or Communications sufficient to show the following information for the last five years:

      (a)      Spirit's sales to all customers, stated separately in units and dollars;

      (b)      The portion of Spirit's sales to customers, stated separately in units and dollars, that were of products, parts, structures, or components, purchased from sources outside Spirit and resold by Spirit, rather than of products, parts, structures, or components manufactured by Spirit;

      (c)      The names and addresses of the 100 persons or companies who purchased the greatest unit and dollar amounts of the products, parts, structures, services, or components from the company;

      (d)      All contracts for each customer;

      (e)      The names, addresses, estimated sales, and estimated market share of Spirit and each of Spirit's competitors for each product, part, structure, service, procedure, or component.

39.      Documents sufficient for understanding the educational and professional qualifications and employment history of Spirit's officers, directors, and anyone employed by Spirit having the ability to direct, influence, or make decisions about Spirit's manufacture, sales, or purchase of any of the items identified in Document Requests 34 through 36.

40.      All Documents and Communications relating to competition in the purchase, manufacture or sale of any item identified in Document Requests 34 through 36, including but not limited to, market studies, forecasts and surveys, and all other Documents and Communications relating to:

      (a)      The sales, market share, or competitive position of Spirit or any of its competitors;

      (b)      The relative strength or weakness of persons or companies producing or selling each product produced or sold by Spirit;

      (c)      Supply and demand conditions;

      (d)      Attempts to win customers from other persons or companies;

      (e)      Any losses of customers or sales to other persons or companies.

Dated: November 30, 2018
New York, New York

/s/ Martin L. Seidel
Martin L. Seidel (admitted pro hac vice)
Matthew Freimuth (admitted pro hac vice)
Jonathan D. Waisnor (admitted pro hac vice)
mseidel@willkie.com
mfreimuth@willkie.com
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: 212.728.8000
Facsimile: 212.728.8111

F. James Robinson Jr. SC #11589
robinson@hitefanning.com
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Suite 950
Wichita, KS 67202
Telephone: 316.265.7741
Facsimile: 316.267.7803

*Attorneys for Plaintiff Larry A. Lawson*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's *First Request for Production of Documents* was served via electronic mail on this 30 day of November, 2018 on:

Ann Marie Arcadi
T. Gregory Jackson
annmarie.arcadi@arcadijackson.com
ARCADI JACKSON, LLP
2911 Turtle Creek Blvd., Suite 450
Dallas, Texas 75219
Telephone: 241-865-6458

Gary L. Ayers
gayers@foulston.com
FOULSTON SIEFKIN, LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206
Telephone: 316-291-9530

*Counsel for Defendant*

/s/ Jonathan D. Waisnor
Jonathan D. Waisnor