

**Ann Marie Arcadi**
Partner
214.862.0063
annmarie.arcadi@arcadijackson.com

February 25, 2019

<u>Via E-Mail</u>
Martin Seidel
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
mseidel@willkie.com

Re. *Lawson v. Spirit AeroSystems, Inc.*, Civil Action No. 6:18-cv-01100-EFM-KGC

Dear Martin:

In connection with the above-referenced matter, I write to continue our discussions regarding (1) Lawson's proposed search terms and custodians and (2) Spirit's objections and responses to Lawson's First Request for Production of Documents ("RFPs").

Lawson has requested the search of 68 custodians, plus each of their administrative assistants, using nearly 90 search terms, many of which are generic and/or commonly used within this industry or at this company, and/or have no relevance to this action. Based on our search term sampling exercise, we anticipate that the combination of these search terms and Lawson's proposed custodians would results in more than 5.5 million "hits" -- the vast majority of which will not be responsive to the RFPs or relevant to this dispute, and which would take months to review and produce. This is simply not proportional to the needs of this case, and, more importantly, will not result in an effective means of identifying and producing documents relevant to this dispute or responsive to the RFPs.

Similarly, Lawson has served two sets of overly broad and unduly burdensome requests for production, seeking documents that are irrelevant to this dispute and disproportional to the needs of the case. For example, Lawson's RFP 20-23, which seek "all agreements between Boeing and Spirit," "all agreements between Airbus and Spirit," "all agreements to provide products or services to any entity," and, "all documents and communications relating to products or services to be provided in connection with any of these agreements" seek documents that fall far outside the scope of discovery that is relevant and proportional to the needs of this matter. Indeed, these requests call for virtually every document in Spirit's possession relating to the products and services that Spirit provides. Less burdensome discovery avenues obviously exist to produce information relevant to the issues in this matter.

Federal Rule of Civil Procedure 26(b)(1) sets forth the permissible scope of discovery. As amended in 2015, it provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. *Fed. R. Civ. P.* 26(b)(1)

Thus, consideration of both relevance *and* proportionality now govern the scope of discovery. This emphasis on proportionality is mirrored in the District of Kansas' "Guidelines for Cases Involving . . . [ESI]," which state that the "[p]arties should consider proportionality, now an express component of the scope of discoverable evidence." *Guidelines for Cases Involving Electronically Stored Information [ESI]*, at 1, D. Ka. (Dec. 1, 2015). This principal is further embodied in the ESI Protocol for this action, in which "[t]he parties agree to embark on a collaborative effort to identify appropriate Search Terms and Searching Syntax, scoped to key player custodians." *Agreed Order Establishing Protocol for ESI and Paper Documents*, at 3, ECF No. 40 (emphasis added).

As we have previously discussed, despite the lack of agreed upon custodians or search terms, Spirit has already engaged in reasonable searches to identify and collect (and continues to identify and collect) documents responsive to the RFPs. Spirit made its first production on February 5, 2019 and it will continue to make rolling productions, with the next one expected this week. Lawson's RFPs, proposed search terms, and proposed custodian list are disproportional to the needs of the case and will yield a significant amount of irrelevant information. Moreover, it will be burdensome, costly, and time-consuming to review the (largely irrelevant) information that returns after applying Lawson's proposed search terms to Lawson's proposed custodian list.

A.  Lawson's Proposed Search Terms

Lawson's proposed search terms suggested in "Plaintiff's First Set of Search Terms to Spirit 1/28/2019" ("Proposed First Search Terms") are general in nature, contain commonly used industry terms, and are not sufficiently tailored to identify responsive information. For example, the Proposed First Search Terms include the term "Elliott OR Elliot OR Eliott OR Eliot OR Singer". There are over 60 current or former Spirit employees with "Elliott" or "Elliot" as a first or last name. Searching for "Elliott" would yield a significant amount of information unrelated to the issues in this lawsuit. Similarly, in an attempt to locate documents related to Spirit's "Business," Lawson proposes that Spirit use exceedingly broad search terms untethered to the issues in this case, such as "paint" and

2

"fuselage." While Lawson is entitled to take reasonable discovery related to certain aspects of Spirit's Business, he may not take discovery of every single document that constitutes such Business.

Spirit tested Lawson's proposed search terms against the electronically stored information of four key custodians listed in "Plaintiff's First List of Custodians to Spirit 1/28/2019" ("Proposed First Custodian List") who Spirit agrees are appropriately identified custodians: (1) Wendy Crossman, (2) Duane Hawkins, (3) Sam Marnick, and (4) Alan Young. Lawson's Proposed First Search Terms pulled nearly 40% of the data (more than 320,000 documents) for each of these four custodians. Assuming a similar number of documents would be generated for each of Lawson's proposed 68 custodians (excluding their assistants), Spirit would need to collect, search and review almost 5.5 million electronic documents and communications. The costs to review and produce 5.5 Million documents is disproportional to the needs of a case involving one executive's severance package.

Moreover, in addition to the disproportional volume, a review of a random sample of approximately 400 documents generated using Lawson's Proposed First Search Terms revealed that 85% of the documents were _not relevant to this dispute_. This sampling exercise demonstrates that the Proposed First Search Terms are not effective and will largely yield a significant number of false-positives and irrelevant information. Spirit continues to craft its proposed search terms based on sampling exercises, and will follow-up regarding the same as soon as practicable. Agreeing upon search terms without knowing the quantity or quality of the results they produce will not generate documents that are relevant to this dispute. In the meantime, Spirit will continue to make reasonable efforts to identify, review, and produce documents responsive to the RFPs.

B.   Lawson's Proposed Custodians

Plaintiff's Proposed First Custodian List contains 68 custodians. In addition to this already exorbitant number of custodians (many of whom are will not have responsive information), Lawson seeks to have Spirit search the electronically stored information of their administrative assistants. There is no reasonable basis for this request. While a limited number of assistants at Spirit are given access to the email account of their managers, the email itself remains with the manager. Accordingly, there is no reasonable basis for Spirit collect and review the administrative assistants' email.

While Spirit will continue to collaborate with Lawson on the selection of search terms and custodians, we note that "absent agreement among the parties, the party who will be responding to discovery requests is entitled to select the custodians it deems 'most likely to possess responsive information and to search the files of those individuals.'" *In re Epipen Marketing, Sales Practices, and Antitrust Litigation,* MDL No. 2785, Case No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, *2 (D. Kan. Mar. 15, 2018). Moreover, "unless the [responding] party's choice is 'manifestly unreasonable or the requesting party

3

demonstrates that the resulting production is deficient,' the court should not dictate the designation of ESI custodians." *Id.* Additionally, "the party seeking to compel the designation of a particular additional ESI custodian has the initial threshold burden of showing that the disputed custodian's ESI likely includes information relevant to the claims or defenses in the case. This is because the party responding to discovery requests is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case." *Id.*

To date, Lawson has not provided any substantiation regarding its need for 68 custodians and each of their administrative assistants. As a reasonable alternative, Spirit proposes the key custodians listed in Exhibit A hereto. To the extent Lawson believes he is entitled to additional custodians, we ask that he provide Spirit with specific information as to why such additional custodians would possess relevant information that is proportional to the needs of the case.

C.      Lawson's RFP 20-23

While Spirit has already provided its objections and responses to Lawson's RFPs, so as to summarize the material open discovery issues, Spirit again sets forth its position regarding Lawson's RFP 20-23 below.

*First,* these requests are self-evidently overbroad. They call for the production of virtually every major contract that Spirt has entered into and every document and communication relating to such contracts.

*Second*, the requests are unduly burdensome insofar as the nature of Spirit's "Business" can be readily determined from publicly available information. For instance, as disclosed in Spirit's publicly filed documents, Spirit's largest customer is Boeing. Spirit's contracts with Boeing (with confidential information redacted) are publicly available and are easily accessible to Lawson. In response to the RFPs, Spirit has already provided Lawson a link with access to that information. Much of the information sought here concerning the nature of Spirit's Business is already in the public record. Additionally, we note that confidential portions of Spirit's commercial contracts with Boeing and other customers are not relevant to determining, for the purpose of this case, the nature of Spirit's "Business". [1]

*Third*, these requests are overly-broad insofar as they require information about the entirety

---

[1] Many of these agreements contain confidential and commercially-sensitive terms and conditions governing the parties' relationship – not the substance of what Spirit provides for its customers – and are therefore irrelevant. Spirit's commercial contracts are subject to confidentiality provisions which prevent Spirit from divulging even the existence of the business relationship without prior written consent from its customer. These customer relationships are also governed by non-disclosure agreements that restrict Spirit from disclosing to third-parties information exchanged between the parties.

of Spirit's business, rather than the aspects of its Business that are germane to this dispute, namely, those which show Arconic to be a supplier or competitor of Spirit.

To resolve these objections, Spirit is gathering a list of all parts manufactured by Spirit, which will adequately address the nature of Spirit's Business. We believe that this approach will obviate the need for Spirit to produce any additional documents in response to RFP 20-23.

* * * * * * *

As you know, even without agreed upon custodians and search terms, Spirit has been making reasonable, good-faith efforts to identify, collect, review, and produce responsive, non-privileged documents. Spirit will continue to do so. We hope that we can reach an agreement and avoid court intervention considering Spirit's reasonable efforts to respond to the current discovery requests and its proposal to identify responsive documents in a manner that will result in a discovery process that is proportion to the needs of this case.

Please feel free to call me if you wish to discuss any of these issues further.

                   Sincerely,

                   */s/Ann Marie Arcadi*

                   Ann Marie Arcadi

## **EXHIBIT A**

*<u>Spirit's Second List of Custodians - 2/25/2019</u>*

1. Stacy Cozad
2. Wendy Crossman
3. Tom Gentile
4. Sam Marnick
5. Kevin Matthies
6. Kammy Rapier
7. Justin Welner
8. Alan Young
9. Duane Hawkins
10. Larry Lawson