

Ann Marie Arcadi
Partner
214.865.6537
annmarie.arcadi@arcadijackson.com

September 19, 2019

*Via E-Mail*
Martin Seidel
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York City, New York 10019-6099
E-mail: mseidel@willkie.com

    Re:  *Lawson v. Spirit AeroSystems, Inc., Civil Action No. 6:18-cv-01100*

Dear Martin:

I write to confirm Lawson's final position regarding next steps for the ESI Protocol and related issues discussed during the discovery conference with Judge Mitchell on Tuesday. In light of the low responsiveness rate of the three sampling exercises conducted to date, Spirit requests that Lawson reconsider his position that Spirit review (whether using TAR or otherwise) the ~322,0000 documents that resulted from an application of Lawson's proposed search terms to the electronic files of 10 custodians selected by Lawson, thereby avoiding the need for Spirit to file the motion to shift discovery costs as contemplated by the First Amended Scheduling Order (Dkt. 128). It continues to be Spirit's position that the best means to identify ESI relevant to this dispute and responsive to Lawson's discovery requests is to conduct targeted collections from relevant custodians, which Spirit has done and will continue to do.

After receiving Lawson's first set of 90 proposed search terms and 68+ proposed custodians on January 28, Spirit conducted a sampling exercise on 4 of Lawson's proposed custodians, using all of Lawson's proposed search terms. This exercise resulted in the collection, processing, and hosting of approximately 1.2 million documents. As stated in our correspondence to you dated February 25, a review of a random sample of these documents revealed that only 15% were responsive to Lawson's discovery requests.

The Court's April 26, 2019 Memorandum and Order (Dkt. 82) set forth an ESI Search Protocol which, among other things, required Spirit to search the ESI of 10 custodians selected by Lawson using Lawson's proposed search terms "to assess whether the search has produced an unreasonably large number of non-responsive or irrelevant results." The parties were ordered to "try to achieve an estimated responsive hit rate of at least 85%."



ARCADI JACKSON

Page 2
Martin Seidel
September 19, 2019

Spirit conducted two additional sampling exercises following the April 26 Order. A review of a random sample of documents resulting from Lawson's May 23/May 30 search terms revealed that only 7.8% of the documents were responsive to Lawson's discovery requests, as stated in our June 5 correspondence. More recently, Spirit ran a sampling exercise on 10 different sample sets (one for each of Lawson's 10 selected custodians) using the 25 search terms that Lawson had proposed on a per-custodian basis. This resulted in approximately 322,000 documents, including families (out of 1,757,277 documents collected). As stated in our July 19 correspondence, the responsiveness rate for the 10 sample sets ranged from 0.5% to 13.5%. Spirit produced all of the responsive, non-privileged documents from these 10 sample sets on August 19. In a further show of good faith, on September 9, Spirit provided Lawson with approximately 80 non-responsive documents to assist Lawson in determining why Lawson's proposed search terms were not working.

Judge Mitchell has set forth a briefing schedule to consider whether the costs of Spirit's planned technology-assisted review of ESI should be shifted to Lawson. Already, Spirit has incurred almost $140,000 solely in connection with the three sampling exercises (exclusive of attorney-time spent meeting, conferring, and otherwise corresponding regarding these issues, speaking with Spirit custodians, harvesting data, or coordinating and managing this process). Spirit's view is that a review of the ~322,000 documents at issue (whether using TAR or otherwise) is not proportional to the needs of this case and will likely result in a small number of relevant documents. Based on the most recent sampling exercise, it is likely that only 5% of these documents are responsive to outstanding discovery requests, and that these technically responsive documents are largely irrelevant to the dispute. Yet, such review efforts could cost between $250,000-$400,000 in eDiscovery and document review costs, and $40,000-$60,000 in outside counsel time, as well as additional costs not yet identified.

Before Spirit initiates this lengthy and costly process, and before Spirit files its motion to shift costs to Lawson, please confirm **by 5:00 p.m. on September 20** whether Lawson will agree that Spirit may meet its discovery obligations consistent with the means it has employed to date – by making reasonable efforts to identify Spirit personnel likely to have information responsive to the outstanding discovery requests and relevant to the dispute (as well as the types of documents identified in your August 30 correspondence), and reviewing and producing that information on a rolling basis. If I do not hear from you, Spirit will proceed with the technology-assisted review of the ~322,000 documents discussed during the discovery conference.

Please feel free to call me if you would like to discuss this issue further.

Sincerely,

Ann Marie Arcadi