**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LARRY A. LAWSON,

                Plaintiff,

v.

SPIRIT AEROSYSTEMS, INC.,

                Defendant.

Civil Action No. 6:18-cv-01100

**PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

Larry A. Lawson ("Plaintiff"), by and through his counsel, and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, hereby requests that Spirit AeroSystems, Inc. ("Defendant") and all other persons acting or purporting to act on its behalf, produce, for inspection and copying, the documents described below at the offices of Hite, Fanning & Honeyman L.L.P., 100 N. Broadway, Suite 950, Wichita, KS 67202 within the time prescribed by the Federal Rules of Civil Procedure and any other applicable rules. Plaintiff propounds this Second Request for Production of Documents ("Second Request") without prejudice as to his First Request for Production of Documents, dated November 30, 2018.

**DEFINITIONS**

1.     "Spirit" means Defendant Spirit AeroSystems, Inc., as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

2.     "Lawson" means Plaintiff Larry A. Lawson.

3. "Asco" means Asco Industries N.V., as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

4. "Employment Agreement" means the Employment Agreement, dated March 18, 2013, between Lawson and Spirit.

5. "Board of Directors" means Spirit's board of directors, or any committee or subcommittee thereof.

6. "Restrictive Covenant" means a non-compete or non-solicit clause, a clause identical in language to or serving a similar purpose as Section 4(c) of the Employment Agreement, or a clause prohibiting or restricting an employee or former employee of Spirit from engaging in any relationship, employment, or service with an entity other than Spirit.

7. "Boeing" means The Boeing Company, as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

8. "Airbus" means Airbus S.A.S., as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

9. "Rolls Royce" means Rolls Royce plc, as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders,

attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

10.     "Embraer" means Embraer S.A., as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

11.     "Lockheed Martin" means Lockheed Martin Corporation, as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

12.     "GE Aviation" means GE Aviation, as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

13.     "Onex" means Onex Corporation, Onex Group, as well as each of its principals, parents, subsidiaries, affiliates, divisions, agents, officers, directors, members, employees, shareholders, attorneys, assigns, consultants, representatives, predecessors, and successors, past, present, or future, in their individual or representative capacities.

14.     "Documents" is used in the broadest possible sense permissible under Rule 34 of the Federal Rules of Procedure and shall mean all written or graphic matter, computer memory, tapes or other tangible things by which information is contained, stored or displayed, of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received,

redrafted, or executed, including but not limited to: written communications, emails, letters, correspondence, memoranda or notes of telephone conversations or personal conversations, diaries, desk calendars, interoffice or intraoffice communications, records, studies, analyses, statistical and financial statements, charts, graphs, reports, working papers, records, notes, manuals, books, instructions, telegrams, receipts, contracts, agreements, computer printouts, computer disks, computer programs, or material similar to any of the foregoing, however denominated, by whomever prepared, and to whomever addressed, which are in your possession, custody or control or to which you have, have had or can obtain access.

15. "Communications" means any and all manner of transmitting, sending, receiving, transferring, conveying, disclosing or exchanging information, whether in writing, including via mail, electronic mail or telefaxes, or orally in person, by phone or by other recorded media such as audio or video tape or otherwise.

16. "Electronically-Stored Information" or "ESI" means information generated, received, processed, recorded, manipulated, communicated, stored, or used in digital form including metadata (e.g., author, recipient, file creation date, file modification date, etc.). ESI includes, without limitation, data stored on or in computer servers, computer hard drives, computer desktops, laptops, handheld or tablet computers, portable digital media, backup media, CD-ROMs, DVD-ROMs, floppy discs, non-volatile memory including flash memory devices, external hard drives, internal or external web sites, personal digital assistants (such as Palm or Blackberry devices), cell phones, electronic voicemail systems, text messages, instant messages, e-mails and attachments to e-mails, or any device or medium capable of storing data in any format. ESI also includes, without limitation, output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets,

database files, charts, graphs and outlines, electronic mail, AOL Instant MessengerTM (or similar programs), bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment.  All ESI produced shall include sufficient metadata fields to identify, at minimum, its author, recipient, date and time of creation and modification, and where the document was located.

17. "Person" means any natural person or any business, legal or governmental entity or association.

18. "And" and "or" shall mean and include both the conjunction and the disjunctive.

19. "All" shall be construed to include "all," "every," and "each" as necessary to make the request inclusive rather than exclusive.

## INSTRUCTIONS

1. The Requests require that you produce documents in a manner that satisfies the requirements of Rules 26 and 34 of the Federal Rules of Civil Procedure.

2. Each Request seeks production of each document in its entirety, without abbreviation or redaction, and all drafts and non-identical copies of each document, including, but not limited to, all attachments, actual, proposed, or contemplated, envelopes, transmittal sheets, "post it notes," notes, cover letters, exhibits, and enclosures.

3. In responding to this Second Request, you shall produce separately all documents in your possession, custody or control, including documents in the possession, custody or control of your agents and representatives.

4. The term "or" is to be read in both the conjunctive and disjunctive and shall serve as a request for information that would be responsive under a conjunctive reading in addition to all information that would be responsive to a disjunctive reading.

5.      If you claim any form of privilege or any other objection, whether based on statute, common law or otherwise as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information: date, sender, recipient, persons to whom copies were provided together with their job titles, subject matter, basis on which a privilege or other objection is claimed, and the paragraph(s) of this request to which such document responds.  If you claim privilege or any other objection with regard to only part of a document, produce the part to which there is no objection.

6.      If any document or copy thereof was but is no longer in your possession, custody or subject to your control, please state and specify in detail for each such document: date, sender, recipient, persons to whom copies were provided together with their job titles, the information contained therein, the date upon which it ceased to exist, the disposition that was made of it and the identity of all persons having knowledge of the contents thereof.

7.      In making production, produce all documents as kept in the normal course of business and identify the file from which each document was taken.

8.      In making production of ESI, you should produce all data or information that exists in electronic or magnetic form, including electronic data compilations, electronic email, or documents that are kept in electronic format (such as Microsoft Outlook, Lotus Notes, Microsoft Word, Microsoft Excel, Microsoft PowerPoint).  All information in electronic or magnetic form is hereby requested to be produced in the following format:

- Data load files in Summation (DII and Summary) and Concordance (OPT, DAT, and LFP load files) formats corresponding to each production volume.
- Document images should be 300 DPI in single page Group IV, TIFF format.
- Extracted/OCR text files on a document level.

- Excel files or other spreadsheet file types should be produced natively with links referenced in the "DocLink" field. Natively produced documents should also be accompanied by a TIFF image slip sheet indicating the document was produced natively.

- Media files, such as audio and video, should be produced in native format with links referenced in the "DocLink" field. Natively produced documents should also be accompanied by a TIFF image slip sheet indicating the document was produced natively.

- Metadata produced should include the following fields of information: BegBates, EndBates, AttachRange, BegAttach, EndAttach, ParentID, ChildIDs, Custodian, FilePath, Subject, ConversationIndex, From, To, CC, BCC, Date Sent, Time Sent, DateReceived, TimeReceived, FileName, Author, DateCreated, DateModified, MD5 Hash, FileSize, FileExtension, DocLink.

9. Any production of ESI should be consistent with the format and procedures agreed to in Sections IV and V of the *Agreed Order Establishing Protocol for ESI and Paper Documents* [ECF No. 40].

10. These requests shall be deemed to be continuing so as to require supplemental answers from time to time up until the date of trial. If, after responding, you obtain or become aware of any additional documents responsive to these requests, you shall produce such additional documents forthwith as required by Rule 26 of the Federal Rules of Civil Procedure.

11. Service of this Second Request does not and is not intended to supplant, modify, waive, amend, or alter any prior discovery request, including Plaintiff's First Request for Production of Documents.

**TIME PERIOD**

Unless otherwise specified in an individual Request, this Second Request seeks documents and information prepared, sent, provided, received, in possession during, or relating to specific time periods between January 1, 2013 to the present (the "Relevant Period"), or relating to the Relevant Period whenever prepared.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. All analyses or reports regarding Spirit's present or future competitors, Spirit's competitive position within the aerospace industry, or Spirit's competitive position within the Boeing or Airbus supply chain.

2. All analyses or reports related to Spirit's past, present, or future customers, clients, potential customers, or potential clients.

3. All Documents and Communications relating to Spirit's disclosure of its competitors in its public filings.

4. Any and all agreements between Spirit and Rolls Royce, Embraer, Lockheed Martin or GE Aviation, including any amendments, attachments, addenda, exhibits, schedules, data compilations, or lists related to those agreements.

5. Any Documents or Communications generated in the ordinary course of business with respect to the agreements sought in Request 4.

6. All agreements entered into by Spirit and any current or former employees identified in Spirit's organizational charts produced on December 7, 2018, other than Lawson, that contain a Restrictive Covenant.

7. All Documents and Communications referring to or relating to any dispute, litigation or contemplated litigation regarding any Restrictive Covenant contained in an agreement responsive to Request 6.

8. All Documents and Communications relating to any alternative or subsequent employment, other than employment with Spirit, for any person identified in Spirit's organizational charts produced on December 7, 2018 who is no longer employed by Spirit, including but not limited to the below individuals:

    (a)    Sanjay Kapoor

      (b)      Scott Eads

      (c)      Jonathan Connell

      (d)      Heidi Wood

      (e)      Charlie McKinny

      (f)      Alan Hermanson

      (g)      Rod Webber

      (h)      Jim Urso

      (i)      Tony Hardone

      (j)      Lillian Dukes

      (k)      Charles Baggett

      (l)      Janice Christol

      (m)      Tony Kondrotis

      (n)      Andy Cobb

      (o)      Ken Evans

9.      All Documents and Communications (excepting those of a personal nature) with any person identified in Spirit's organizational charts produced on December 7, 2018 who is no longer employed by Spirit, including but not limited to the persons identified in Request 8, that post-dates their final day of employment at Spirit.

10.     All Documents and Communications regarding Spirit's business relationship with the following entities:

      (a)      Beechcraft Corporation

      (b)      Spirit Airlines, Inc.

      (c)      Elbit Systems of America, LLC

      (d)      Wesco Aircraft Holdings, Inc.

      (e)      Textron Inc.

    (f)  Textron Aviation

    (g)  Gulfstream

    (h)  Vought

    (i)  TE Connectivity, Ltd.

    (j)  Northrop Grumman Innovation Systems Inc.

    (k)  Booz Allen Hamilton.

  11. All Documents and Communications regarding the relationship of any current or former member of Spirit's Board of Directors with any entity, other than Spirit, which they "directly or indirectly own, manage, operate, control, be employed by, serve as an officer or director of, solicit sales for, invest in, participate in, advise, consult with, or be connected with the ownership, management, operation, or control of."

  12. All Documents and Communications describing or listing the products, parts, structures, or components that Spirit currently manufactures or sells, has manufactured or sold in the last five years, and is considering or has considered manufacturing or selling, including but not limited to Documents describing each product and its end uses.

  13. All Documents and Communications relating to competition in the manufacture or sale of any product identified in Request 12, including but not limited to, market studies, forecasts and surveys, and all other Documents or Communications relating to:

    (a)  The sales, market share, or competitive position of Spirit or any of its competitors;

    (b)  The relative strength or weakness of persons or companies producing or selling each product produced or sold by Spirit;

    (c)  Supply and demand conditions;

    (d)  Attempts to win customers or business from other persons or companies;

    (e)  Any losses of customers, business or sales to other persons or companies;

14. All Documents and Communications relating to any companies or individuals considered or analyzed by any committee or person (including, but not limited to Spirit's Compensation Committee) responsible for evaluating or establishing the compensation of Spirit's directors, officers, or management.

15. All presentations to management committees, executive committees, the Board of Directors, or any committee of the Board of Directors relating to Spirit's business plans, strategies and objectives.

16. All meeting minutes and associated notes, materials, or Board packages of any meeting of Spirit's Board of Directors, from January 1, 2015 to the present.

17. All competitive analyses, market analyses, presentations, reports, studies, or similar documents relating to Spirit's fabrication business.

18. All scope of services documents, production or sales contracts, or similar documents relating to Spirit's fabrication business.

19. All Documents and Communications describing or listing the components, materials, or products that Spirit has fabricated, currently fabricates, or is considering or has considered fabricating, including but not limited to Documents describing the end uses of each component, material, or product.

20. All Documents and Communications relating to Spirit's efforts to grow, expand, or reorganize its fabrication business.

21. All Documents and Communications relating to a decision by Spirit to fabricate or insource the production of any component, material, or product.

22. All Documents and Communications relating to components, materials, or products that Spirit has considered fabricating or insourcing.

23. All Documents and Communications relating to Spirit's plans for, interest in, contemplation of, or efforts undertaken to bring about any acquisition, divestiture, joint venture, alliance, or merger.

24. All internal Documents and Communications relating to the business, competitive, or strategic rationale for Spirit's planned acquisition or combination with Asco.

25. All Documents and Communications relating to Spirit's participation in the Boeing Partners Network.

26. All Documents and Communications relating to any contemplated spin-off, divestiture, or sale of Spirit's fabrication business to Onex, in whole or in part.

27. All analyses or reports related to Spirit's past, present, or future suppliers or potential suppliers.

28. All Documents and Communications regarding Elliott Management, L.P., Elliott Associates, L.P., or Elliott International, L.P..

29. All documents setting forth, listing, or identifying any entity that is part of Spirit's Preferred Suppliers Network.

30. All documents relating to the business rationale, justification for, or plan for the creation of or transition to the Preferred Suppliers Network.

31. All Documents and Communications relating to the decision not to include any entity in the Preferred Suppliers Network.

32. Any analysis, report, presentation, or summary regarding the products or services provided by, or the performance of, any supplier that is a member of the Preferred Suppliers Network.

33. All Documents and Communications regarding the Counterpoint "Aerostructures 2018" review of the aerostructures market, produced at SPIRIT000000344.

34. All reports, analyses, reviews, or surveys regarding the market for aerostructures or aircraft components, whether drafted or prepared by Spirit or by third-parties.

35. All reports, analyses, reviews, or surveys regarding the supply chain for aerostructures or aircraft components, whether drafted or prepared by Spirit or by third-parties.

36. Copies of all data retention policies in place between February 1, 2017 and the present.

Dated: February 15, 2019

Respectfully submitted,

/s/ Martin L. Seidel
F. James Robinson Jr. SC #11589
robinson@hitefanning.com
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Suite 950
Wichita, KS 67202
Telephone: 316.265.7741
Facsimile: 316.267.7803

Martin L. Seidel (admitted pro hac vice)
Matthew Freimuth (admitted pro hac vice)
Jonathan D. Waisnor (admitted pro hac vice)
mseidel@willkie.com
mfreimuth@willkie.com
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: 212.728.8000
Facsimile: 212.728.8111

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing *Plaintiff's Second Request for Production of Documents* was served via electronic mail on this 15th day of February, 2019 on:

Ann Marie Arcadi
T. Gregory Jackson
annmarie.arcadi@arcadijackson.com
ARCADI JACKSON, LLP
2911 Turtle Creek Blvd., Suite 450
Dallas, Texas 75219
Telephone: 241-865-6458

Gary L. Ayers
Jeff DeGraffenreid
gayers@foulston.com
jdegraffenreid@foulston.com
FOULSTON SIEFKIN, LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206
Telephone: 316-291-9530

*Counsel for Defendant*

                                                /s/ Jonathan D. Waisnor
                                                Jonathan D. Waisnor