**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**LARRY A. LAWSON,**

        **Plaintiff,**

**v.**

**SPIRIT AEROSYSTEMS, INC.,**

        **Defendant.**

Case No. 6:18-cv-01100-EFM-KGS

**MEMORANDUM OF LAW IN SUPPORT OF**
**LARRY A. LAWSON'S MOTION FOR ADDITIONAL DEPOSITIONS**

HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Suite 950
Wichita, KS 67202
Telephone: 316–265–7741
Facsimile: 316–267–7803

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: 212–728–8000
Facsimile: 212–728–8111

*Attorneys for Plaintiff Larry A. Lawson*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

ARGUMENT ................................................................................................................4

      I.      The Depositions Lawson Seeks Are Not Unreasonably Cumulative Or
             Duplicative...............................................................................................5

      II.     The Information Lawson Seeks Through Additional Depositions Was Not
             Available Through Discovery....................................................................9

      III.    The Benefits Of The Requested Depositions Outweigh The Potential Burdens. ....9

CONCLUSION ..............................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                               **Page(s)**

*Byrd v. District of Columbia*, 259 F.R.D. 1 (D.D.C. 2009) ..............................................................5

*Couch v. Wan*, 2011 WL 4499976 (E.D. Cal. Sept. 27, 2011) ......................................................10

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
    2007 WL 3306496 (N.D. Cal. Nov. 6, 2007) ......................................................................5, 10

*Hickman v. Taylor*, 329 U.S. 495 (1947) .........................................................................................5

**Rules**                                                                                               **Page(s)**

Fed. R. Civ. P. 26(b)(2) ..............................................................................................................5, 6, 9

Fed. R. Civ. P. 30(a)(2) ....................................................................................................................5

Fed. R. Civ. P. 30 advisory committee's note to 1993 amendment .............................................4, 8

Fed. R. Civ. P. 30 advisory committee's note to 2000 amendment ................................................8

## PRELIMINARY STATEMENT

Lawson requests leave to take four additional depositions in this case, which are necessary for him to adequately probe Spirit's broad and unsubstantiated defense for its breach of his Retirement Agreement, namely that Arconic is engaged in the same "Business" as Spirit. Spirit is unwilling to consent to more than ten depositions.

To date, Spirit has not put forward any credible evidence of "specific products and services provided, marketed and sold" by both Spirit and Arconic, which is how the District Court defined the term Business. (ECF No. 25 at 16.) Instead, Spirit continues to assert that Lawson violated his non-compete based on wide-ranging assertions of "overlap" between it and Arconic, including actual and potential customers, equipment, supply chain dynamics, pricing considerations, and organizational capabilities, to name just a few. By framing its defense as a collection of discrete topics, Spirit has implicated many witnesses who possess relevant information. Spirit's initial disclosures identify at least 16 potential defense witnesses who may possess discoverable information on its overlap theory and other claims. Yet Spirit refuses to consent to more than ten depositions. Ten depositions are simply insufficient in a case of this size and scope. The court should therefore grant leave to conduct four additional depositions.

Lawson needs sufficient depositions to investigate each of the diverse areas of purported overlap between Spirit and Arconic and to support his affirmative arguments. Based on the current record, Lawson believes he will need to take the depositions of the 12 Spirit individuals listed below. Lawson also is seeking two 30(b)(6) depositions—of Arconic and Spirit, respectively. A total of 14 depositions would be more than fair.

Spirit has argued that any more than 10 depositions is disproportional to the needs of the case. Not so. The fact witnesses identified by Lawson possess non-duplicative information concerning Spirit's defenses. Each fact witness has unique personal knowledge concerning the

Retirement Agreement, Spirit's business, Arconic's business, Spirit's relationship with Arconic, or Spirit's decision to breach the Retirement Agreement.  And none of those depositions would be duplicative of the 30(b)(6) depositions of Spirit and Arconic.  Moreover, the additional deponents are all aligned with Spirit.  Spirit has access to whatever relevant information they possess, while Lawson can only obtain that information through depositions.

Finally, the benefits of the additional depositions far outweigh the burden of producing witnesses.  Additional depositions would vindicate Lawson's right to fully investigate his claims, gather relevant information, and prepare for trial and dispositive motions.  By contrast, the burden on Spirit of producing additional witnesses for single-day depositions is minimal given Spirit's size and the number of attorneys working on this matter.  In fact, for each of the four witnesses designated by Spirt for 30(b)(6) depositions who are also being sought in their personal capacity, Lawson has agreed to limit the time for the deposition to seven hours *total* per witness, further limiting the burden on Spirit.  To the extent any future discovery demonstrates that a different number of depositions are necessary—or if further discovery obviates the need for additional depositions—Lawson reserves the right to amend this request.

## **STATEMENT OF FACTS**

Lawson, Spirit's CEO from 2013 to 2016, is owed nearly $50 million in retirement benefits from Spirit.  Spirit defends its breach of Lawson's retirement agreement by asserting that Lawson violated a non-compete clause incorporated into that agreement by agreeing with non-party investment firms Elliott Associates, L.P. and Elliott International L.P. to serve as a candidate for CEO of non-party Arconic, Inc. ("Arconic").

Despite the Court's August 20, 2018 ruling that the "Business," as defined in the non-compete, refers to "specific products and services provided, marketed and sold" by Spirit, (ECF No. 25 at 16), Spirit has framed its defense in much broader terms.  For example, at the June 6,

2019 discovery conference, counsel for Spirit alleged that competition is merely "one piece" of the restrictive covenant at issue.  (Tr. of June 6, 2019 Oral Argument at 17.)  At the same conference, counsel for Spirit asserted that the non-compete "does not require that there be identical, head-to-head, competing parts with the same SKU number for the same plane."  (*Id.*) Instead, according to Spirit, "competition" may mean "two or more entities engaged in manufacturing, fabricating, maintaining, overhauling, modifying, marketing, assembling, or selling the same or similar products and/or services within the same industry or to the same or similar customers," and even "two or more entities who may purchase the same or similar products or services from the same or similar customers insofar as those entities may be competing on the price of purchasing such products or services."  (Spirit Responses and Objections to First Set of Interrogatories at 7-8.)  Moreover, Spirit has argued that its business overlaps with Arconic's merely because "both Spirit and Arconic possess the *ability* to market, manufacture, or sell the same products to *common customers or potential customers* who generally require products to be built to print or exact specifications."  (Spirit Mot. to Compel Arconic (ECF No. 140) at 5.)

To date, Spirit has offered only generic descriptions of possible overlaps between its business and Arconic's business.  Spirit's Answer does not identify which *specific* products or components allegedly overlap with Arconic's; instead, it lists a series of categories of aerospace products and components such as "fuselage," "flight critical parts," "wing ribs," "spoilers," "access doors," and "pylons."  (Answer (ECF No. 29) ¶ 8.)  Spirit also alleges that it and Arconic both "have an overlap of customers and potential customers in the aerospace business, including but not limited to Boeing, Airbus, and Rolls-Royce."  (*Id.*)  Spirit's document productions, interrogatory responses, and other disclosures have not identified any proof that it and Arconic make the same specific products or services that form the basis of its overlap defense.

In its Third Amended Initial Disclosures, attached hereto as Exhibit 1, Spirit identified 16 company witnesses with discoverable information that may be relevant to its defenses, principally the overlap defense. And in its responses to Lawson's second set of interrogatories, attached hereto as Exhibit 2, Spirit stated that it may rely on testimony from at least six of those witnesses, including its CEO. Lawson has determined that he likely will need to depose at least ten of these witnesses to adequately probe Spirit's defenses. Moreover, Spirit has produced documents indicating that two more employees likely possess unique, discoverable information relevant to the issue of whether Arconic is in the Business. The current record demonstrates that Lawson will likely need to depose 12 Spirit fact witnesses regarding Spirit's claims and defenses. Because 30(b)(6) depositions of both Spirit and Arconic also are necessary, Lawson needs to take a total of at least 14 depositions.[1] To the extent further discovery reveals that a different number of depositions are required, Lawson will amend this request.

## ARGUMENT

At the present time, Lawson needs a total of 14 depositions to adequately explore Spirit's defenses, particularly the assertion that Arconic and Spirit are both engaged in the "Business," as defined in the Retirement Agreement.[2] According to Spirit, this defense implicates numerous discrete topics, including actual, similar, or even potential products and services; actual and potential suppliers; supply chain dynamics; actual and potential customers; organizational capabilities; and equipment or manufacturing processes used by both parties that are generic to many aerospace manufacturers. Spirit identified at least 16 witnesses who may have knowledge

---

[1] For the purpose of the ten-deposition limit, each 30(b)(6) deposition counts as a single notice of deposition even when more than one person is designated to testify. Fed. R. Civ. P. 30 advisory committee's notes to 1993 amendment.

[2] This motion addresses the limits on the number of depositions of non-expert witnesses Lawson may take. Lawson assumes the Court will permit him to depose expert witnesses without those depositions counting against the total number of other depositions allowed.

of these issues, and Lawson has determined that at least 12 individuals possess unique, relevant information.  But Spirit refuses to consent to more than ten depositions.  Lawson must depose the 12 individuals listed below to adequately investigate Spirit's defense and his own case.  Lawson also must take 30(b)(6) depositions of Spirit and Arconic, resulting in 14 total depositions.  A total of 14 depositions would not be burdensome for Spirit—a company with $8 billion in revenues and many lawyers—and not disproportionate to this $50 million case.  The court should grant leave for Lawson to conduct these additional depositions.

The Court must grant leave for a party to take more than ten depositions when it is "consistent with Rule 26(b)(2)."  Fed. R. Civ. P. 30(a)(2).  Rule 26 allows for additional discovery unless the Court decides that "(1) the discovery sought is cumulative or duplicative, or can better be obtained from some other source; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; and (3) the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).  The Supreme Court has held that these discovery rules must be given "broad and liberal treatment."  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  In cases involving complex or wide-ranging issues, courts routinely grant leave for a modest number of depositions exceeding the presumptive limit, *see e.g., Byrd v. District of Columbia*, 259 F.R.D. 1, 4-6 (D.D.C. 2009), particularly when the opposing party contributes to the complexity through its framing of the issues.  *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2007 WL 3306496, at *5 (N.D. Cal. Nov. 6, 2007) (granting additional depositions in part because the defendants' refusal to narrow the scope of the dispute).  Because Lawson's request is squarely within the bounds of Rule 26, the motion should be granted.

## I.   The Depositions Lawson Seeks Are Not Unreasonably Cumulative Or Duplicative.

Lawson's proposed depositions are not "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2).  Lawson requests additional depositions to gather sufficient evidence to disprove the assertion that Spirit and Arconic are in the same Business.

Spirit's Rule 26(a) Third Amended Initial Disclosures identified 16 Spirit employees, officers, or directors who it believes have discoverable knowledge about its affirmative defense, across numerous Spirit business units.  This does not include any other witnesses that Lawson learns about during discovery.  To give the court a sense of the scope of this case, Lawson's potential deponents can be grouped and counted as follows:

1.   **Rule 30(b)(6) Deposition of Arconic:**  A 30(b)(6) deposition of Arconic will allow Lawson to investigate Arconic's view of its competitors, the nature of Arconic's business, Arconic's relationship with Spirit, and whether any of Arconic's products or services overlapped with Spirit's during the relevant time period.  A copy of the 30(b)(6) notice served on Arconic is attached as Exhibit 3.

2.   **Rule 30(b)(6) Deposition of Spirit:**  Lawson noticed a 30(b)(6) deposition of Spirit listing 24 topics relevant to Spirit's claims and defenses.  A copy of the notice is attached hereto as Exhibit 4.  Spirit has designated the following witnesses to testify on the following topics:[3]

     a.   Wendy Crossman:  Topics 9, 12, and 13
     b.   Adam Gomez:  Topic 15
     c.   Samantha Marnick:  Topics 4, 8, 16, 17, 18, 19, and 20
     d.   Ron Rabe:  Topics 1, 2, 3, and 11

3.   **Tom Gentile, CEO, Spirit:**  Spirit listed Mr. Gentile as having information relevant to the case.  (Ex. 1 at Ex. A, page 1.)[4]  Spirit also indicated that it may rely on testimony from Mr. Gentile to support its defenses.  (Ex. 2 at page 3.)  Mr. Gentile was also personally involved in Spirit's decision to breach and in monitoring Elliott's proxy contest with Arconic, and he has knowledge of whether Arconic is a Spirit competitor and Spirit's relationship with Arconic.

4.   **Bob Johnson, Board Member, Spirit:**  Spirit listed Mr. Johnson as having information relevant to the case.  (Ex. 1 at Ex. A, page 1.)  Based on the documents received to date, Mr. Johnson was the board member most involved in

---

[3] Spirit has not yet designated a witness for topic numbers 5-7, 14, and 21-14 in Lawson's 30(b)(6) notice.

[4] Citations to "Ex." refer to the Exhibits of the Declaration of Jonathan D. Waisnor in Support of Lawson's Motion for Additional Depositions.

Spirit's decision to breach the Retirement Agreement and had conversations with Lawson or Elliott regarding Arconic.

5.  **Charles Chadwell, Board Member, Spirit:**  Spirit listed Mr. Chadwell as having information relevant to the case.  (Ex. 1 at Ex. A, page 1.)  Based on the documents received to date, Mr. Chadwell was involved in Spirit's decision to breach the Retirement Agreement and had conversations with Lawson or Elliott regarding Arconic separate and apart from Mr. Johnson.

6.  **Sam Marnick, EVP and Chief Administration Officer, Spirit:**  Spirit listed Ms. Marnick as having information relevant to the case.  (Ex. 1 at Ex. A, page 2-3.)  Ms. Marnick has knowledge of the compensation due to Lawson under the Retirement Agreement and Spirit's decision to breach the Retirement Agreement. Ms. Marnick has knowledge of compensation due to Lawson and the negotiation of the Employment and Retirement Agreements.  She was also involved in the decision to allow Lawson to consult for L3.

7.  **Duane Hawkins, SVP Boeing Programs, Defense Programs, Spirit:**  Spirit listed Mr. Hawkins as having information relevant to the case.  (Ex. 1 at Ex. A, page 2.)  Mr. Hawkins has knowledge of Spirit's key customer relationships and manufacturing capabilities.

8.  **Wendy Crossman, VP Strategic Sourcing, Spirit:**  Spirit listed Ms. Crossman as having information relevant to the case.  (Ex. 1 at Ex. A, page 1.)  Spirit also indicated that it may rely on testimony from Ms. Crossman to support its defenses.  (Ex. 2 at page 3.)  Ms. Crossman has knowledge of Spirit's supply chain, specific products and services, and RFIs that Spirit bid on.

9.  **Eric Hein, Senior Director Research and Technology, Spirit:**  Spirit listed Mr. Hein as having information relevant to the case.  (Ex. 1 at Ex. A, page 2.)  Spirit also indicated that it may rely on testimony from Mr. Hein to support its defenses. (Ex. 2 at page 3.)  Mr. Hein was responsible for negotiating a Joint Development Agreement with Arconic and has unique knowledge regarding the products, services, and capabilities of both companies.

10. **Kevin Matthies, SVP Global Fabrication, Spirit:**  Spirit listed Mr. Matthies as having information relevant to the case.  (Ex. 1 at Ex. A, page 3.)  Spirit also indicated that it may rely on testimony from Mr. Matthies to support its defenses. (Ex. 2 at page 3.)  Mr. Matthies has decision-making responsibility regarding Spirit's fabrication division and Spirit's ability to fabricate parts.

Lawson requests leave to conduct additional depositions of the witnesses listed below.

Two of those witnesses, Adam Gomez and Ron Rabe, have been designated to testify on certain

subjects as part of Lawson's 30(b)(6) deposition of Spirit.  Thus, Mr. Rabe and Mr. Gomez are

already scheduled to testify as part of the ten-deposition limit.  Lawson requests leave to notice

Mr. Rabe and Mr. Gomez for personal knowledge depositions as well, but has agreed to limit each

of their depositions to a single, seven-hour day, inclusive of 30(b)(6) and personal knowledge

testimony.  It is not burdensome for Spirit to produce these witnesses for personal knowledge

depositions to occur concurrently with the already scheduled 30(b)(6) depositions, as Lawson

would be entitled to one seven-hour 30(b)(6) deposition of each.[5]  Below are explanations why the

personal knowledge testimony of Mr. Rabe and Mr. Gomez is necessary:

11. **Ron Rabe, SVP Operations, Spirit:**  In its Third Amended Initial Disclosures, Spirit listed Mr. Rabe as having information relevant to this dispute.  (Ex. 1 at Ex. A, page 3.)  Spirit also indicated that it may rely on testimony from Mr. Rabe to support its defenses.  (Ex. 2 at page 3.)  Mr. Rabe has knowledge of Spirit's evaluation of whether to insource fabrication capabilities.

12. **Adam Gomez, Executive Director Strategic Initiatives, Spirit:**  In its Third Amended Initial Disclosures, listed Mr. Gomez as having information relevant to the case.  (Ex. 1 at Ex. A, page 1.)  Spirit also indicated that it may rely on testimony from Mr. Gomez to support its defenses.  (Ex. 2 at page 3.)  Mr. Gomez was in charge of Spirit's bid as part of the Boeing Control Surfaces Bidder Conference, which Spirit has asserted as one of the possible bases for its argument that it and Arconic are in the same "Business."

Finally, Lawson requests leave to conduct depositions of Jim Reed and J. Douglas Mapel

based on discovery indicating that they have non-duplicative, relevant information:

13. **Jim Reed, VP Global Supply Chain & Logistics, Spirit:**  Lawson has reviewed a document produced by Spirit, attached hereto as Exhibit 3, indicating that Mr. Reed was tasked with defining Spirit's competitors, including whether Arconic is one of them.  (Ex. 5 (SPIRIT000155858).)

14. **J. Douglas Mapel, Procurement Agent, Spirit:**  According to Spirit, Mr. Mapel is one of the two persons of Spirit with the most knowledge of Spirit's

---

[5] Spirit has designated four individuals, Sam Marnick, Wendy Crossman, Ron Rabe, and Adam Gomez, in response to Lawson's 30(b)(6) notice.  For purposes of the ten deposition cap, this counts as a single deposition even though Spirit designated multiple witnesses.  Fed. R. Civ. P. 30 advisory committee's note to 1993 amendment.  However, Lawson would be entitled to seven hours of tape time for each designated individual.  "For purposes of this [seven hour] durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition."  Fed. R. Civ. P. 30 advisory committee's note to 2000 amendment.

relationship with Arconic, an area in which the Court has granted discovery.
(Ex. 6 (SPIRIT000068565).)

The above lists reflect difficult choices Lawson has already made about which depositions to take, including the omission of several witnesses from Spirit's initial disclosures who have relevant information but, based on the information Lawson currently has, may be duplicative of other witnesses. Given the number of topics at issue, the requested depositions are neither unreasonably cumulative nor duplicative. Lawson needs a full and fair opportunity to gather facts and testimony to oppose Spirit's affirmative defense.

## II.   The Information Lawson Seeks Through Additional Depositions Was Not Available Through Discovery.

Spirit has sole possession of the information it will use to oppose Lawson's breach of contract claim. Spirit's document productions, interrogatory responses, and other disclosures have allowed Lawson to investigate certain aspects of Spirit's defense, but not the substance. The fact witnesses identified above have specific, unique information on the substance of Spirit's defense. Lawson has a right to discover this information in the hands of Spirit's witnesses, but he has no other way to obtain it except through additional depositions.

## III.   The Benefits Of The Requested Depositions Outweigh The Potential Burdens.

In weighing the burden and expense of the requested depositions against their benefit, the Court should consider that Lawson is requesting only a modest increase in the presumptive limit. Fed. R. Civ. P. 26(b)(2). To prove Spirit's liability, Lawson must address the relevant comparable products and services for Sprit and Arconic, and the likelihood of Arconic's competitive entry into the manufacture of major aerostructure assemblies for the original equipment manufacturers. It is critical to understand the market dynamics underlying these issues. The requested depositions are targeted to these issues and to ensure that Lawson can provide the Court with a complete picture for its decision on summary judgment and at trial. Thus, the "needs of the case," the "importance

of the issues at stake in the action," and "the importance of the discovery in resolving the issues" all favor additional depositions.[6]

In contrast, the burden of allowing a modest increase in the number of depositions is not high. Spirit's resources are adequate to handle the requested discovery. Seven attorneys already have appeared in this matter on behalf of Spirit, and more are likely working on the case. This group of attorneys is capable of defending the number of single-day depositions Lawson seeks.

To the extent discovery leads to the identification of additional deponents with non-duplicative information concerning Spirit's defenses—or if discovery reveals that no more than ten depositions are required—Lawson reserves the right to amend this request to reflect the needs of the case.[7] As the depositions proceed, Lawson will consider the deposition record and continually assess whether the remaining witness are needed and whether the topics for each remaining witness can be narrowed.

## **CONCLUSION**

For the foregoing reasons, the Court should grant leave for Lawson to take additional depositions in this case.

---

[6] Furthermore, because Spirit has designated four different individuals in response to Lawson's 30(b)(6) deposition notice, as a practical matter, it likely would need to produce more than ten witnesses for deposition even if Lawson is not granted leave to take more than 10 depositions.

[7] Although courts generally do not grant leave to expand the number of depositions until the moving party has exhausted ten depositions, *Couch v. Wan*, 2011 WL 4499976, at *1 (E.D. Cal. Sept. 27, 2011), Lawson is cognizant that the Court has already granted two extensions of the fact discovery deadline in this case. Lawson further notes that the complexity and burden of disproving Spirit's broad overlap defense warrants departure from the "exhaustion rule." *Del Campo*, 2007 WL 3306496, at *5. To the extent the Court follows the exhaustion rule here, Lawson request permission to amend or withdraw this request for leave, as necessary, after exhausting ten depositions.

Dated: January 29, 2020

/s/ *F. James Robinson*

F. James Robinson, Jr. SC #11589
robinson@hitefanning.com
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Suite 950
Wichita, KS 67202
Telephone: 316–265–7741
Facsimile: 316–267–7803

Martin L. Seidel (*pro hac vice*)
Matthew S. Freimuth (*pro hac vice*)
Jonathan D. Waisnor (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: 212–728–8000
Facsimile: 212–728–8111

*Attorneys for Plaintiff Larry A. Lawson*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of January, 2020, I electronically filed the foregoing with the clerk of the court by using CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ *F. James Robinson Jr.*
F. James Robinson Jr. (SC #11589)