## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LARRY A. LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-1100-EFM-ADM |
| | ) | |
| SPIRIT AEROSYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff Larry A. Lawson's ("Lawson") Second Motion to Compel the Production of Documents. (ECF No. 182.) Lawson asks the court to compel defendant Spirit AeroSystems, Inc. ("Spirit") to produce documents responsive to Lawson's Third Requests for Production of Documents ("RFPs"), to produce documents that Lawson contends Spirit should have produced pursuant to the court's prior order on Lawson's first motion to compel (ECF No. 82, Mem. & Order Dated Apr. 26, 2019), and to order Spirit to conduct another search of electronically stored information ("ESI") using search terms and custodians selected by Lawson. Spirit opposes Lawson's motion, arguing it already produced the documents sought, or they do not exist, or they are not relevant and proportional to the needs of the case; that it already complied with the court's prior orders; and that an additional ESI search is unnecessary. For the reasons set forth below, Lawson's motion is denied.

## I. BACKGROUND

The background of this lawsuit is more thoroughly set forth in the court's Memorandum and Order on Spirit's motion to dismiss. *See Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM, 2018 WL 3973150, at *1-*4 (D. Kan. Aug. 20, 2018) [*Lawson I*]. Lawson is Spirit's former President and Chief Executive Officer. Spirit claims that, after he retired from Spirit, he breached

the non-compete provision in his Retirement Agreement ("Agreement") via his business dealings with Arconic, Inc. ("Arconic"). That Agreement prohibited him from serving in various capacities with any business that is "engaged, in whole or in part, in the Business, or any business that is competitive with the Business or any portion thereof." *Id.* at *2, *7. The Agreement defines the term "Business" as follows:

> We are engaged in the manufacture, fabrication, maintenance, repair, overhaul, and modification of aerostructures and aircraft components, and market and sell our products and services to customers throughout the world (. . . the "*Business*").

*Id.* at *2, *7 (emphasis in original). Spirit originally argued that "Business" should be broadly construed to encompass other aircraft component manufacturers, including Arconic. *Id.* at *7. But the court rejected this interpretation and held that the term "Business" means "the *specific* products and services provided, marketed, or sold by Spirit." *Id.* at *8 (emphasis in original).

In March 2019, Lawson filed a motion to compel Spirit to produce certain documents relating to Spirit's "Business." Specifically, Lawson sought: (1) Spirit's contracts with its customers Boeing and Airbus; (2) Spirit's antitrust regulatory filings relating to its planned acquisition of Asco Industries ("Asco"); and documents related to (3) aspects of Spirit's business that Spirit alleges overlap with Arconic's business and (4) Spirit's relationship with Arconic. (ECF No. 56.) The court conducted a hearing on the motion on April 23, 2019. After consultation with the parties, the court granted Lawson's motion in part and denied it in part. As to category (1), the court ordered Spirit to produce the portions of the Boeing and Airbus contracts (or amendments, addenda, exhibits, schedules, data compilations, or lists) that relate to Spirit's deliverables under the contracts. *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2019 WL 1877159, at *2 (D. Kan. Apr. 26, 2019) [*Lawson II*]. As to category (2), the court ordered Spirit to produce its antitrust filings relating to "Spirit's business and market/marketing positioning, including the

index(es) for these filings, the '4(c) documents,' and related white papers." *Id.* at *3. And, as to categories (3) and (4), the court ordered Spirit to produce documents relating to the products, processes, equipment and certifications that Spirit contends overlaps with Arconic, as well as documents relating to Spirit and Arconic's relationship, to the extent that they would be captured by the ESI search protocol imposed by the court. *Id.* at *2-*3. This ESI protocol evolved as the case progressed, became the subject of further discovery conferences and court orders, and took several months to complete. (*See, e.g.*, ECF Nos. 87-88, 127-128, and 168-169.)

Lawson has now filed a second motion to compel. Lawson seeks two categories of documents based on his Third RFPs: (1) so-called "win/loss data," and (2) documents relating to a former Spirit officer who later served on Arconic's board. Lawson also contends that Spirit did not produce all documents required under the court's prior order relating to Spirit's customer contracts with Boeing and Airbus, as well as certain antitrust filings. Finally, Lawson asks the court to order Spirit to conduct further ESI searches of custodians identified by Lawson using search terms selected by Lawson because, according to him, Spirit did not conduct a reasonable search for communications relating to the negotiation of Lawson's Employment and Retirement Agreements, compensation owed to Lawson under those agreements, and Lawson's alleged breach of those agreements.

## II.    LEGAL STANDARD

FED. R. CIV. P. 26(b)(1) defines the scope of discovery. Under the rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is "construed broadly to encompass any

matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change discovery's scope but clarified it, and therefore *Oppenheimer* still applies).

When a responding party fails to make a disclosure or permit discovery, Fed. R. Civ. P. 37(a) permits the discovering party to file a motion to compel. The party seeking discovery bears the initial burden to establish relevance, but it does not bear the burden to address all proportionality considerations. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 380-81 (D.N.M. 2018) (discussing the effect of the 2015 amendment on the party seeking discovery); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (stating the moving party bears the initial burden to demonstrate relevance); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."); Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2015 amendment (noting that the amendment "does not place on the party seeking discovery the burden of addressing all proportionality considerations" and that "the parties' responsibilities [on a discovery motion] would remain the same as they have been").

Relevance is often apparent on the face of the request. *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652-53 (D. Kan. 2006). When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections. *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D.

Kan. 2014) (holding the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this *low* burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request." (emphasis supplied)).  The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004).  Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id.* at 670-71.

III.  **LAWSON'S THIRD SET OF RFPs**

Lawson seeks to compel two categories of documents from his Third RFPs: (1) "win/loss data," *i.e.* documents showing whether Spirit and Arconic were in competition to sell products to the same customers; and (2) documents relating to Ulrich Schmidt, a former Spirit officer who later served on Arconic's board.  As set forth below, this aspect of Lawson's motion is denied on both procedural and substantive grounds because it is untimely and without merit.

A.  **Lawson's Motion as to the Third RFPs is Untimely**

This court's local rules require any motion to compel discovery to be "filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing such motion for good cause.  Otherwise, the objection to the default, response, answer, or objection is deemed waived."  D. KAN. RULE 37.1(b).  The rationale behind this rule is to "ensure the court can address discovery disputes while they are still fresh, and in turn expedite litigation."  *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, No. 12-2350-SAC-KGS, 2015 WL 13047860, at *5 (D. Kan. Mar. 31, 2015) (quotation omitted).

Spirit served responses to Lawson's Third RFPs on August 1, 2019, stating that it would not produce any responsive documents. (ECF No. 182-2, at 57 (RFP No. 6) and 64 (RFP No. 18).) The thirty-day deadline for Lawson to file a motion to compel production of these documents therefore expired on September 3, 2019.[1] Lawson did not file the current motion until November 27, 2019, which was well beyond the thirty-day deadline.

Lawson has not demonstrated good cause to warrant extending that deadline. The court previously ordered that it would expect any party filing a motion to compel beyond this thirty-day deadline to demonstrate good cause for the late filing by setting forth the party's diligence in attempting to resolve the discovery dispute at issue. (ECF No. 77.) Lawson attempts to show diligence by blaming Spirit for ignoring Lawson's attempts to meet and confer. (ECF No. 183, at 2.) But at the hearing on April 23, 2019, the court told the parties that anytime they were having discovery problems—specifically, including "troubles meeting and conferring"—they should email the undersigned's chambers to request a discovery conference so the court could help them work through whatever issues they were having. (ECF No. 182-2, at 163-164.)

Although the court appreciates that ongoing efforts to meet and confer might justify a reasonable extension of the thirty-day deadline under some circumstances, the facts here do not demonstrate that Lawson was diligent in attempting to resolve the discovery disputes as to these particular RFPs. Lawson first sent Spirit a letter raising its concerns as to these RFPs (among a laundry list of other issues) on August 14 and sent follow-up emails on September 20 and 30 requesting a response to the August 14 letter. (ECF No. 182-2, at 67-70, 88-90, and 97-99.) Spirit eventually responded on November 7 and, during a meet and confer on November 13, refused to

---

[1] Thirty days later would have been August 31, 2019, which is a Saturday. The next court business day would have been September 3, 2019.

budge from its original position.  (ECF No. 183, at 2.)  In other words, it took Lawson more than three months to confirm that Spirit objections meant what they said, which is that Spirit would not be producing responsive documents.  Meanwhile, the court conducted discovery conferences on September 17 and October 30 to address a number of other ongoing discovery issues.  (ECF Nos. 127-128 and 153.)  Yet Lawson did not first bring these RFPs to the court's attention until a discovery conference on November 8.  (ECF Nos. 168-169.)  This record demonstrates that Lawson allowed Spirit's alleged failure to meet and confer about these RFPs to languish in the midst of more pressing discovery problems.  In other words, Lawson apparently did not consider Spirit's responses to these RFPs to be important enough to bring to the court's attention sooner. This is insufficient to demonstrate that Lawson was diligent in attempting to resolve the discovery disputes as to these particular RFPs.  This aspect of Lawson's motion is therefore untimely.

### B.    Any Marginal Relevance of the Win/Loss Data is Not Proportional to the Needs of the Case

Lawson's Third RFP No. 6 seeks, for a five-year period, "[a]ll win/loss data or other similar Documents regarding the products, parts, components, or assemblies listed in Paragraph 8 of Spirit's Answer or in your response to Interrogatories 1 or 2 of Plaintiff's First Set of Interrogatories."  (ECF No. 182-2, at 57.)  The parties describe this "win/loss data" as documents showing whether Spirit won or lost bids to manufacture the products that Spirit contends are also manufactured by Arconic.  (*See* ECF No. 183, at 4; ECF No. 194, at 3.)  Lawson contends that these documents will show "whether Spirit ever bid against Arconic" and are "relevant to whether Spirit and Arconic are in the same 'Business.'"  (ECF No. 183, at 7.)  Spirit, on the other hand, says that Lawson's argument mischaracterizes the nature of the dispute as one involving head-to-head competition, rather than one involving whether Spirit and Arconic are both in the same "Business."  (ECF No. 194, at 4 n.10.)

This RFP seeks documents that are not tailored to the issues in this case. The central issue in this case is whether Arconic "manufacture[s] the same types of aircraft components that Spirit does." *Lawson I*, 2018 WL 3973150, at *7. This RFP is facially overbroad in that it is not even limited to win/loss data as between Spirit and Arconic. Instead, it encompasses documents showing whether Spirit won or lost bids against any industry competitor with respect to the identified aerostructures and aircraft components, which is irrelevant to the issue of whether Spirit and Arconic both make those same components. But even if this RFP were limited to bids that Spirit won or lost versus Arconic, which would bear on the issue of "Business" overlap, *id.* at *8 ("'the Business' refers to the *specific* products and services provided, marketed, or sold by Spirit at the time of contracting"), that issue is too narrow. After all, the court did not determine that Spirit and Arconic must sell the same product to the same customer to be in the same "Business" or that they must bid against each other to be in the same "Business." Lawson presumably wants to point to the *absence* of such documents to show that Spirit and Arconic were not in the same "Business." (ECF No. 196, at 3-4 ("If Spirit never competed against Arconic . . . , then this absence of competition is itself evidence that Arconic does not in fact make those products . . . .").) However, that logic is flawed. Spirit and Arconic could have both sold the same types of components to different competitors, in which case they would be in the same "Business" despite the absence of such win/loss documents.

Given the marginal relevance of this win/loss data, the pivotal issue for discovery purposes is whether the requested documents are proportional to the needs of the case. To make this determination, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The party resisting discovery on proportionality grounds still bears the burden to support its objections. Fed. R. Civ. P. 26(b)(1) advisory committee notes to the 2015 amendments ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties . . . ."); *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-CV-1094-JTM-TJJ, 2017 WL 4770702, at *4 (D. Kan. Oct. 19, 2017) ("The party resisting discovery bears the burden to support its objections based upon proportionality[.]"). The practical effect of the rule is that both parties must typically provide information pertinent to the proportionality analysis. *See In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 565 (D. Ariz. 2016); Fed. R. Civ. P. 26(b)(1) advisory committee notes to the 2015 amendment ("The parties and the court have a collective responsibility to consider the proportionality of discovery and consider it in resolving discovery disputes.").

Spirit contends that the only way to find these documents would be through the ESI protocol and technology assisted review ("TAR") process. Lawson insists that Spirit should be forced to locate such documents outside of the ESI/TAR process. (ECF No. 183.) Lawson contends that, while he was Spirit's CEO, Spirit's Business Development Department kept this win/loss data and "reported it when competitions occurred." (ECF No. 182-1 ¶ 2.) But Lawson left Spirit years ago. Spirit explains that the Business Development Department no longer exists in the way that it was structured and staffed during Lawson's tenure with Spirit. Spirit attempted a targeted search for this win/loss data, and no central repository exists. (ECF No. 194, at 4.) Spirit therefore contends that such documents are not proportional to the needs of the case because such win/loss data "is simply not needed (let alone important) to determine whether Spirit and Arconic were both in the 'Business' during the relevant time frame." (*Id.*)

On balance, the court agrees with Spirit.  Determining whether Spirit and Arconic ever engaged in head-to-head competition to sell the same components to the same customers is not necessary to resolving the issues in this case.  And although Spirit is the party with superior access to this information, it would be in Spirit's best interests to produce such documents because they would presumably show that Spirit and Arconic were in the same "Business."  Conversely, the absence of such documents, which is presumably why Lawson wants them (as discussed above), does not conclusively prove that Spirit and Arconic were *not* in the same "Business."  The burden and expense of this proposed discovery is significant.  The ESI/TAR process has been so costly and time-consuming that it is the subject of a pending motion to shift hundreds of thousands of dollars in costs.  (*See* ECF No. 133.)  Even Lawson does not contend that it would be worth the time and expense to search for these documents through the ESI/TAR process.  To the contrary, Lawson argues only that "Spirit must search for and produce responsive documents independently of the TAR Protocol."  (ECF No. 183, at 4.)  But, as discussed above, that is not a feasible way to locate these documents.  Accordingly, the court finds that the win/loss data is not proportional to the needs of the case.  The court therefore denies this aspect of Lawson's motion on those grounds.

C.      **Schmidt Documents**

Lawson's Third RFP No. 18 seeks "[a]ll Documents and Communications relating to Ulrich R. Schmidt's service on or candidacy for Arconic's board of directors."  (ECF No. 182-2, at 64.)  Schmidt served as Spirit's Chief Financial Officer from 2005-2009, and his non-compete expired in 2011.  (ECF No. 194, at 5.)  It was not until 2016 that he began serving on the Board of Directors of Alcoa, Inc., and he transitioned Arconic's board in late 2016.  (*Id.*)  Lawson now asks the court to compel Spirit to produce documents responsive to this RFP, as well as documents related to Schmidt's service on the board of one of Arconic competitors, Precision Castparts Corp.

("PCC"). (*See* ECF No. 183, at 1.) Lawson contends these documents are relevant to show the scope of Spirit's "Business." (*Id.* at 6.)

These documents are not relevant. The court previously told the parties during a discovery conference that "documents relating to Spirit's enforcement of other restrictive covenants [are] completely irrelevant." (ECF No. 182-2, at 323.) The documents Lawson seeks here are even further afield because they are also too attenuated in time. Schmidt left Spirit in 2009 and his non-compete expired in 2011. Schmidt's service on Arconic's board began approximately five years after his non-compete expired. By that time, Schmidt was free to serve anywhere he pleased, without regard to whether a company was in the same "Business" as Spirit. Documents relating to Schmidt's service on PCC's board are not relevant for the same reasons, and Lawson also is not entitled to them because he never served an RFP seeking those documents. *See Cont'l Cas. Co. v. Multiservice Corp.*, No. 06-2256-CM-JPO, 2008 WL 73345, at *8 (D. Kan. Jan. 7, 2008) (denying a motion to compel when the moving party had failed to serve a formal discovery request). Accordingly, this aspect of Lawson's motion is denied.

## IV.     COMPLIANCE WITH THE COURT'S APRIL 26 ORDER

### A.     Boeing and Airbus Contracts

The court previously ordered Spirit to produce "the portions of [the Boeing and Airbus] contracts (or amendments, addenda, exhibits, schedules, data compilations, or lists) that relate to Spirit's deliverables to Boeing and Airbus." *Lawson II*, 2019 WL 1877159, at *2. Lawson now contends that Spirit did not comply with the court's order because, according to Lawson, the court "allowed Spirit to redact pricing information *only*." (*See* ECF No. 183, at 6 (emphasis in original).) Lawson's argument misconstrues the court's order. The court stated that Spirit only needed to produce the portions of the contracts showing deliverables. The court considered argument from

the parties on this very issue at the April 23 hearing on Lawson's first motion to compel. (ECF No. 182-2, at 182-99.) Significant portions of those contracts are already publicly available through EDGAR. (*See id.* at 185.) And the court ordered Spirit to supplement that publicly available information with those portions of the contracts showing deliverables, with pricing information from those portions of the contracts redacted. (*Id.* at 196-97.) The court explained that it understood the relevance of discovering the deliverables under the contracts because it bears on the issue of ascertaining Spirit's "Business," but that the court was "not persuaded that there's a lot more than what's available in the public record, plus those deliverables, that's relevant to the dispute." (*Id.* at 198.)

Spirit represents that it complied with the court's order and there is nothing further to compel. (ECF No. 194, at 6.) Specifically, Spirit produced the portions of the Boeing and Airbus contracts showing contract deliverables, and it also produced portions of supply contracts showing deliverables to two other customers, Rolls-Royce and Mitsubishi Regional Jet. (*Id.*) Spirit is also confirming whether supply contracts with two additional customers, Gulfstream and Sikorsky, exist and, if so, it will request consent from Gulfstream and Sikorsky to produce the portions of those contracts showing deliverables. (*Id.* at 6 n.17.) Lawson does not dispute that Spirit produced the portions of those contracts reflecting the deliverables. Lawson's motion is therefore denied to the extent that he seeks to compel Spirit to comply with the court's prior order because Spirit already complied with it.

Lawson's arguments are more properly characterized as focusing on other aspects of the supply contracts that go beyond what the court previously ordered. Specifically, Lawson wants portions of the contracts that show the "'Main Functions' of the products Spirit manufactures for Airbus" because Spirit contends that these "show[] what these products are used for and whether

they are the same as or similar to products that Arconic makes." (ECF No. 183, at 6.) Lawson also wants portions of the contracts that show "whether Spirit is an exclusive supplier" for certain products and the duration of the contracts because, according to Lawson, "Arconic necessarily must supply different products than those Spirit manufactures" if Spirit has an exclusive contract. (*Id.* at 7.) Looking at the substance of the relief sought, Lawson is asking the court to reconsider its prior order compelling Spirit to produce only portions of the supply contracts regarding deliverables. Thus, this aspect of Lawson's motion is a motion to reconsider the court's order following the April 23 hearing. *Lawson II*, 2019 WL 1877159, at *2.

As a motion to reconsider, Lawson's motion is denied as untimely. A motion to reconsider a non-dispositive order must be filed within fourteen days after the subject order unless the court extends the time. D. KAN. RULE 7.3(b). Lawson did not file the current motion within fourteen days after the April 23 hearing or the court's April 26 order memorializing its rulings from the hearing. And Lawson has not shown good cause sufficient to justify the court reconsidering this issue more than six months later. Lawson seems to suggest that the court should excuse the delay because Lawson had difficulty trying to get Spirit to meet and confer on these issues. (ECF No. 183, at 1-2.) But the court ordered Spirit to produce the portions of the supply contracts showing deliverables by May 7. *Lawson II*, 2019 WL 1877159, at *2. Lawson did not first raise the issue of alleged deficiencies in this production until more than two months later on July 10, (ECF No. 184, at 9), which was already well beyond the fourteen-day deadline set forth in D. KAN. RULE 7.3(b). It was not until another approximately four months later that Lawson first raised this issue with the court during a discovery conference on November 8. (ECF No. 169, at 2-3.) Lawson's delay of more than six months in asking the court to reconsider its April 26 order is not reasonable.

This aspect of Lawson's motion is also denied on the merits. A motion to reconsider a non-dispositive order "must be based on: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." D. KAN. RULE 7.3(b). At the April 23 hearing, the court told Lawson that, once he received the deliverable portions of the supply contracts from Spirit, if they were somehow insufficient for Lawson's purposes, the court was going to want "a more detailed showing that the information that's publicly available, combined with the information that Spirit is producing is, for some reason, inadequate." (ECF No. 182-2, at 197.) Lawson has not made that required showing. Instead, Lawson's reply brief argues only that the exclusivity clauses are relevant because if Spirit is the sole supplier of the products it sells, "Arconic *cannot* be in the Business of selling products for which Spirit is the exclusive seller." (ECF No. 196, at 4 (emphasis in original).) But, again, the court did not state that Spirit and Arconic must sell the same products *to the same customer* to be in the same "Business." Rather, this issue turns on whether a company "manufacture[s] the same types of aircraft components that Spirit does." *Lawson I*, 2018 WL 3973150, at *7. So these portions of the contract are not relevant or proportional to resolving the issues in the case. Spirit already produced the portions of the supply contracts showing deliverables to its customers, and the rest of the contracts are not important to resolving the issues in this case. Lawson therefore has not shown that reconsideration is warranted based on the availability of new evidence or the need to prevent manifest injustice.

### B. Antitrust Filings

The court previously ordered Spirit to produce antitrust filings relating to "Spirit's business and market/marketing positioning, including the index(es) for these filings, the '4(c) documents,' and related white papers." *Lawson II*, 2019 WL 1877159, at *2. Although Lawson now asks the

court to compel Spirit's full compliance with the April 26 order, he does not argue that Spirit failed to produce any of these documents. Instead, Lawson contends that Spirit refused to produce various antitrust filings that he requested after reviewing the index of Spirit's European Commission ("EC") filings. (ECF No. 183, at 7.) Lawson now asks the court to compel production of (1) the EC's Requests for Information to Spirit and Spirit's Supplementary Submission to the EC; (2) Spirit's September 17, 2018 Form CO; and filings related to (3) Spirit's relationship with Boeing and Airbus; (4) Spirit's supply chain; and (5) Arconic CEO Klaus Kleinfeld ("Kleinfeld"). (*Id.* at 7-8.) He also asks the court to order Spirit to produce an index of antitrust filings submitted to the Department of Justice ("DOJ") or, if an index does not exist, to create one for production. (*Id.* at 8.) Finally, Lawson seeks the DOJ's Voluntary Request for Information to Spirit, as well as Spirit's responses. (*Id.*)

Spirit represents that most of the documents Lawson seeks do not exist. Before Lawson filed the instant motion, Spirit represented to the court that the DOJ never made a Voluntary Request for Information to Spirit. (*See* ECF No. 182-2, at 114.) Spirit also stated that it did not have an index of DOJ filings similar to the index it had previously produced for EC filings. (*Id.*) And Spirit now explains that the documents Lawson seeks relating to Kleinfeld do not exist; the documents Lawson noted in the EC index titled "Talking points for discussion with Klaus" refer to a different person. (ECF No. 194, at 8.) The court cannot compel Spirit to produce documents that do not exist. The court therefore denies those aspects of Lawson's motion.

As to the remaining categories of documents Lawson seeks relating to antitrust filings, the court denies Lawson's motion as both untimely and without merit.

### 1.      Lawson's Motion as to the Antitrust Documents is Untimely

As discussed above, a motion to compel discovery must be "filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing such motion for good cause.  Otherwise, the objection to the default, response, answer, or objection is deemed waived."  D. KAN. RULE 37.1(b).  Lawson stated at the April 23 hearing on his first motion to compel that he would review the indexes Spirit produced to determine whether to seek additional filings.  (*See* ECF No. 182-2, at 203.)  Spirit produced the EC index to Lawson on June 18.  (*See* ECF No. 184, at 8.)  Lawson reviewed the index and first requested additional documents on July 10.  (*See id.* at 9.)  Later that month, Lawson followed-up and asked Spirit to produce the requested documents by July 29.  (ECF No. 182-2, at 48.)  When Spirit did not do so, Lawson was on notice that the parties had a dispute and should have filed a motion to compel within thirty days thereafter, or by August 28.  *See Scott v. Raudin McCormick, Inc.*, No. 08-4045-EFM-KGS, 2010 WL 11565526, at *2 (D. Kan. Jan. 28, 2010) ("Judges in this district have consistently found that the beginning of the thirty-day period is triggered 'when specific information first leading to the dispute is discovered.'").

Instead, Lawson did not first raise this issue with the court until months later.  And, again, Lawson has not demonstrated good cause for this delay.  Lawson initially requested the antitrust documents on July 10 (in addition to a number of other, non-antitrust documents) and sent follow-up correspondence on July 24, August 27, September 13, and September 30.  (*See* ECF No. 182-2, at 97.)  Spirit did not respond to Lawson regarding the requested filings until November 7.  (ECF No. 183, at 2.)  Although Spirit agreed to produce four additional antitrust filings at that time, Spirit refused to produce most of the documents Lawson sought on the grounds that they were "highly sensitive, confidential, belonging to a third-party, irrelevant and/or do not fall within the

Court's April 26th Order." (ECF No. 182-2, at 114.) Again, Lawson's efforts do not demonstrate diligence. Lawson did not request a discovery conference with the court in August, and did not bring this issue to the court's attention during the discovery conferences on September 17 or October 30. Instead, he raised the issue for the first time in a discovery conference on November 8. (ECF No. 168-169.) Like the Third RFPs discussed above, Lawson let this discovery issue languish for months while he tended to other matters that he apparently considered to be more important. Lawson was not diligent in attempting to resolve any disputes regarding the additional antitrust documents. The court therefore denies this aspect of Lawson's motion as untimely.

### 2. Any Marginal Relevance of the Additional Antitrust Documents is Not Proportional to the Needs of the Case

The court also denies the motion on substantive grounds. Lawson seeks (1) the EC's Requests for Information to Spirit and Spirit's Supplementary Submission to the EC; (2) Spirit's September 17, 2018 Form CO; and filings related to (3) Spirit's relationship with Boeing and Airbus; and (4) Spirit's supply chain. Lawson contends that the documents in category (1) are necessary for him to determine the relevancy of documents listed in the EC index only as responses to Requests for Information or as annexes to the Supplementary Submission. (ECF No. 183, at 7.) Lawson argues the Form CO is relevant because it contains representations about Spirit's competitive market and products. (*Id.*) Lawson argues that the antitrust filings relating to Airbus and Boeing are relevant because they are customers that Spirit contends are shared with Arconic and generate most of Spirit's revenue. (*Id.* at 8.) Finally, Lawson argues that the supply chain filings are relevant because, according to Lawson, Arconic is Spirit's supplier rather than a competitor. (*Id.*)

In response, Spirit contends the EC's Requests for Information are irrelevant and, because they are tailored to the Asco acquisition, "cannot be produced without confidentiality concerns."

(ECF No. 194, at 7.) Similarly, Spirit represents that its Supplementary Submission to the EC relates to an Asco entity and contains Asco confidential information. (*Id.*) With respect to the Form CO, Spirit represents that it produced the operative Form CO, along with relevant annexes, that superseded the document Lawson now seeks. (*Id.*) Spirit also objects to producing antitrust filings relating to its customers and supply chain, arguing they are not relevant to the issue of whether Spirit and Arconic are in the same "Business." (*Id.* at 7-8.)

During the April 23 hearing on Lawson's first motion to compel, Lawson explained that he was seeking antitrust documents containing Spirit's representations as to "its relevant products and services markets." (ECF No. 182-2, at 45.) These documents, which are relevant and proportional to the needs of the case, have been produced. The additional documents Lawson now seeks appear to be only marginally relevant, at best. The EC's Requests for Production themselves presumably would not contain any representations from Spirit bearing on the "Business," and Spirit states that its Supplementary Submission relates to an Asco entity, not Spirit. (ECF No. 194, at 7.) Lawson already has the operative Form CO and relevant annexes, and he does not explain how the outdated Form CO would contain additional relevant information that is not included in the documents he already has. Documents relating to Spirit's supply chain are also of marginal relevance. Spirit does not dispute that Arconic is one of its suppliers. (*Id.*) Further, merely because Arconic is a supplier for Spirit does not preclude Arconic from also being in the same "Business" as Spirit. And documents relating to Spirit's relationship with Boeing and Airbus—to the extent that they contain information on the products and services Spirit provides to those companies that would be important to the issue of Spirit's "Business"—would be duplicative of documents Spirit has already produced.

Given the marginal relevance of these documents above and beyond what Spirit has already produced, these additional antitrust filings that Lawson belatedly seeks are not proportional to the needs of the case. None of these additional antitrust filings are necessary to resolve the key issue of whether Spirit and Arconic are in the same "Business." The burden and expense of producing these unnecessary documents would outweigh any potential benefit. The court therefore also declines to compel Spirit to produce the additional antitrust documents on this basis.

## V.     LAWSON'S REQUESTED ESI SEARCH

Lawson claims that Spirit did not conduct a reasonable and thorough search for documents relating to the negotiation of Lawson's Employment and Retirement Agreements, compensation Spirit may owe to Lawson, and the alleged breach of Lawson's Retirement Agreement. (ECF No. 183, at 8.) He contends that Spirit's previous efforts to produce documents on these subjects were inadequate because Spirit did not search emails of five board members who were listed on its Rule 26 initial disclosures. (*Id.*) Lawson also possesses certain emails that Spirit did not produce back to Lawson, which he believes is evidence of Spirit's inadequate production efforts. (*See id.* at 9.) Lawson therefore asks the court to require Spirit to conduct an ESI search for these documents using his proposed custodians, search terms, and date ranges. (*See* ECF No. 182-2, at 8-9.)

Spirit explains that the board members Lawson identifies are not Spirit employees, and they do not have Spirit email accounts. (ECF No. 194, at 8.) To capture communications with these board members, Spirit has already searched the emails of employees most likely to have relevant communications, and Spirit produced those responsive documents. (*Id.*) Spirit also searched a software platform it uses to provide information to board members and produced relevant documents from this source. (*Id.*) In other words, Spirit has already searched for and produced documents in its possession, custody, and control.

Lawson has not cited any authority that actually supports his argument that a company must produce documents from a non-employee's personal email account. Lawson first cites *Robinson v. City of Arkansas City, Kansas*, No. 10-1431-JAR-GLR, 2012 WL 603576 (D. Kan. Feb. 24, 2012), in a misleading fashion. Lawson tries to imply that *Robinson* involved a defendant's failure to search directors' emails by altering a quotation from the case as follows: "Given [their] primary role in the events leading to this litigation, the failure to search [the directors' emails] is inexcusable and inexplicable." (ECF No. 183, at 9.) But the *Robinson* case does not discuss directors or board members at all. *Robinson* is an employment case where the court found the defendant's failure to search the computers and devices of the plaintiff's supervisor (named Baugher) was "inexcusable and inexplicable." 2012 WL 603576, at *17. Baugher was one of the defendant's employees, and the computers and devices were in the defendant's possession. *See id.* at *1. Lawson also relies on *Starlight International Inc. v. Herlihy*, 186 F.R.D. 626 (D. Kan. 1999), to argue that the court ordered a defendant to produce documents in its director's possession. (ECF No. 183, at 9.) But the director in that case was not an outside director; rather, he was the sole owner, officer, and director of entities involved in a joint venture, and the court found the documents were under his and his companies' joint control. *Starlight*, 186 F.R.D. at 634, 635. Neither of these cases support Lawson's contention that Spirit must search and produce documents from its outside directors' personal email accounts.

With respect to the emails Lawson cites as evidence of Spirit's inadequate searching efforts, Spirit states that these documents either do not pertain to the issues in this lawsuit (despite Lawson's contentions otherwise), have already been produced to Lawson, or could not be located after a reasonable and diligent search. (ECF No. 194, at 9.) For example, Lawson points to a June 2016 email between him and an officer of Spirit in which they discussed the number of shares

owed to Lawson. (ECF No. 183, at 9.) Spirit searched for this specific email but could not locate it. (ECF No. 194, at 9.) As Spirit points out, different custodians may have different practices when it comes to saving email. The court cannot find that Spirit's search for Lawson-related documents was inadequate merely because Spirit has not re-produced to Lawson every single email in Lawson's possession involving Spirit's employees.

Despite Spirit's efforts, Lawson now asks the court to compel Spirit to conduct additional ESI searches using his proposed custodians, search terms, and date ranges. Lawson contends that his proposed searches are designed to elicit documents relating to the negotiation and discussion of the alleged breach of Lawson's Agreement, as well as compensation Spirit owes to Lawson. (ECF No. 183, at 8.) Many of the documents Lawson seeks are only marginally relevant to the issues in this case, if at all. For example, Lawson seeks documents from directors' personal email accounts because he contends they used those accounts "to discuss relevant issues." (*Id.* at 9.) However, there is no dispute that Spirit viewed Lawson's actions with respect to Arconic as a breach of his Agreement. Discussions between board members about whether Lawson's involvement with Arconic constituted a breach of the Agreement does not change this fact.

But even if the documents Lawson seeks were relevant, the additional ESI searches are not proportional to the needs of the case. As discussed above, the parties have already engaged in protracted efforts to search ESI. The court first established the ESI protocol in April of 2019. The court granted Lawson free rein to select custodians and search terms on any topics. *See Lawson II*, 2019 WL 1877159, at *2-*3. If Lawson wanted the searches he now wants to be performed on his selected custodians, he should have submitted his requests to Spirit in accordance with the ESI protocol. But he did not. Instead, he now wants different searches to be performed on different custodians (*see* ECF No. 136-8, at 4), without regard to the efforts Spirit has already undertaken.

As discussed above, Spirit has already filed a motion to shift the hundreds of thousands of dollars in costs it has incurred via the ESI/TAR process. (*See* ECF No. 133.) Further ESI searching seems particularly unnecessary where Lawson has not identified any true deficiency with Spirit search for documents on Lawson-specific issues. Spirit has "conducted numerous custodian interviews with employees it identified as most likely to have relevant documents, harvested ESI (including emails and other data) and other documents from those custodians, and conducted linear document reviews and/or performed targeted searching of such data for responsive documents." (ECF No. 194, at 8-9.) It has produced "approximately 24,000 documents and 175,000 pages in 24 productions." (*Id.* at 2.) Although Spirit is the party with greater access its employees' emails, the burden and expense to Spirit in conducting additional ESI searches is great, and the likely benefits of any such additional ESI searches appears to be minimal, as Spirit has already engaged in extensive efforts to search for and produce Lawson-specific documents. It would be unnecessarily duplicative to require Spirit to conduct additional ESI searches for documents it already searched for. Therefore, the court also denies this aspect of Lawson's motion because his proposed additional ESI searches are not proportional to the needs of the case.

**IT IS THEREFORE ORDERED** that plaintiff Larry A. Lawson's Second Motion to Compel the Production of Documents (ECF No. 182) is denied.

**IT IS SO ORDERED.**

Dated January 29, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge