# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| LARRY A. LAWSON, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 18-1100-EFM-ADM |
| SPIRIT AEROSYSTEMS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff Larry A. Lawson's ("Lawson") Motion to Compel the Production of Clawed Back Documents. (ECF No. 231.) Lawson asks the court to compel defendant Spirit AeroSystems, Inc. ("Spirit") to re-produce seven documents that Spirit inadvertently produced. Spirit clawed back the documents and re-produced three of them with redactions. Spirit contends the documents and redactions at issue are protected by the attorney-client privilege whereas Lawson contends they are not. The court finds that Spirit has established the subject documents and redactions are privileged. Lawson's motion is therefore denied.

## I. BACKGROUND

The background of this lawsuit is more thoroughly set forth in this court's prior orders, familiarity with which is presumed. *See generally, e.g.*, *Lawson v. Spirit AeroSystems, Inc.*, 410 F. Supp. 3d 1195 (D. Kan. 2019); *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM, 2018 WL 3973150, at *1-*4 (D. Kan. Aug. 20, 2018). Highly summarized, Lawson is Spirit's former chief executive officer who retired on July 31, 2016. His Retirement Agreement contained non-compete obligations for two years, until July 31, 2018. In early 2017, Lawson engaged in business dealings with non-party investment firms Elliott Associates, L.P. and Elliott International, L.P. (collectively, "Elliott") to provide consulting services in connection with a proxy contest Elliott

launched to replace five board members of Arconic, Inc. ("Arconic"). When Spirit learned about this, Spirit notified Lawson that his involvement with Arconic constituted a breach of his non-compete, and Spirit stopped paying Lawson and demanded that he repay what the company had already paid him under the Retirement Agreement. Lawson disputes that he breached the non-compete. He filed this lawsuit seeking to recover what he believes Spirit owes him.

Seven documents are at issue on Lawson's current motion to compel. Spirit initially produced these documents and then clawed them back pursuant to Paragraph 12 of the Protective Order.[1] Spirit ultimately withheld four of the documents and re-produced three of them with selected text redacted. Lawson now asks the court to compel Spirit to re-produce these seven documents. (*See* ECF No. 232, at 2-3.) Spirit opposes Lawson's motion, arguing the withheld documents and redactions are protected by the attorney-client privilege. As directed by the court, Spirit submitted the documents for *in camera* review concurrently with filing its opposition brief.

## II. LEGAL STANDARD

Because this is a diversity case, state law governs attorney-client privilege. FED. R. EVID. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *see also Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998) ("[S]tate law supplies the rule of decision on privilege in diversity cases."). In Kansas, the attorney-client privilege is codified at KAN. STAT. ANN. § 60-426. Under the statute, with few exceptions, "communications found by the judge to have been between [a] lawyer and his or her client in the course of that relationship and in professional confidence, are privileged." *State v. Gonzalez*, 234 P.3d 1, 10 (Kan. 2010). The term "communication" includes "advice given

---

[1] The Protective Order was originally entered as ECF No. 41 and has since been amended. (*See* ECF No. 236.)

by the attorney in the course of representing the client and . . . disclosures of the client to a representative, associate or employee of the attorney incidental to the professional relationship." KAN. STAT. ANN. § 60-426(c)(2). The party asserting attorney-client privilege bears the burden to establish that it applies. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010); *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 693 (Kan. 2000). This burden includes showing the privilege has not been waived. *See Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).

III. **DISCUSSION**

Lawson's overarching theory is that all of the communications at issue involve attorneys acting in a business capacity, not a legal capacity. (ECF No. 232, at 2.) In support, Lawson cites *In re Syngenta AG MIR 162 Corn Litigation* for the proposition that "where a communication contains both legal advice and business advice, attorney-client protection only applies if the legal advice predominates over the business advice; the privilege does not apply where legal advice is merely incidental to business advice." No. 14-md-2591-JWL, 2017 WL 1106257, at *7 (D. Kan. Mar. 24, 2017). The court agrees with Lawson that this is a correct statement of the law. However, the court disagrees with Lawson as to how that law applies to the communications at issue.

B. **SPIRIT000045087, SPIRIT000047240-41, SPIRIT000047239 and SPIRIT000142333**

SPIRIT000045087, SPIRIT000047240-41, SPIRIT000047239, and SPIRIT000142333 are emails between Spirit's in-house counsel Jeff DeGraffenreid and Spirit employees, with a copy to Spirit's outside counsel at the Foulston Siefkin law firm. Lawson argues these emails are not privileged because they relate to an investigation of "the potential business (not legal) impact on Spirit if [Lawson] were to become CEO of Arconic." (ECF No. 232, at 2.) Spirit contends that

3

the emails involve counsel collecting information for the purpose of rendering legal advice. (ECF No. 230, at 2, 3.)

The timing of these emails is important. The events that led to this lawsuit began in January of 2017, when Elliott identified Lawson as a potential candidate for Arconic's board of directors or its CEO. *See Lawson*, 410 F. Supp. 3d at 1201. On January 10, Lawson alerted Spirit about his proposed involvement with Arconic, and Spirit expressed concern about potential overlap. *Id.* Conversations between Elliott's counsel and Spirit's counsel ensued between January 19 and January 29. *Id.* On January 31, Elliott engaged Lawson as a consultant, agreed to indemnify him against any claim by Spirit that the arrangement was a breach of his Retirement Agreement, and issued a press release announcing the arrangement. *Id.* at 1202-03. On February 2, Spirit notified Lawson that his involvement with Arconic constituted a breach of the Retirement Agreement and that Spirit would cease making payments to him and terminate his right to continued vesting in Spirit's shares. *Id.* On February 3, Elliott agreed to assume Lawson's defense of Spirit's claim against him. *Id.* On February 21, Lawson retained counsel to represent him, at Elliott's expense, in connection with the dispute with Spirit. *Id.*

After reviewing the subject documents *in camera* and taking into account the timing of these emails, the court finds that Spirit has met its burden to establish privilege—specifically, that legal advice predominated over business advice. The subject emails are dated February 9 and 10, 2017. This was in the midst of the events that took place in February of 2017, when the parties were staking out their positions with respect to the Retirement Agreement and gearing up for potential litigation. These emails were only approximately one week after Spirit notified Lawson of his alleged breach and Elliott agreed to indemnify and defend Lawson against Spirit's claim. And they were just days before Lawson formally retained counsel. The emails consist of

confidential communications between attorney and client made for the purpose providing legal advice with respect to potential litigation relating to Lawson's involvement with Arconic. Lawson's motion is denied with respect to these documents.

### C. Redactions on SPIRIT000045188-89

SPIRIT000045188-89 is an email from Amie Emerson, a Director of Business Management at Spirit, to Thomas C. Gentile III, Spirit's President and CEO, containing talking points for an upcoming phone call with Bob Johnson, Spirit's Chairman of the Board. No attorneys are copied on the email. Lawson argues this email is not privileged because no attorneys are copied and "there [is no] evidence that it reflects legal advice or that it was prepared at the request of counsel." (ECF No. 232, at 3.) Spirit re-produced this document to Lawson and redacted selected bullet points related to an RFI, an insurance claim, and Arconic. Spirit contends these redactions discuss legal matters unrelated to the litigation, as well as "legal strategy regarding Lawson and Elliott's attempt to install Lawson at Arconic and the claims at issue in this litigation." (ECF No. 230, at 3.)

Communications between non-attorneys may be privileged in certain circumstances. *See United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995) (communications with non-attorneys made for the purpose of assisting an attorney in rendering advice to the client may be privileged). "Management should be able to discuss amongst themselves the legal advice given to them as agents of the corporation with an expectation of privilege." *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000) (applying federal common law[2] and finding interoffice

---

[2] Courts in this District have often recognized that "no real conflict between federal and Kansas law regarding the attorney-client privilege [exists,] . . . whether the Court applies federal or Kansas law generally makes no difference in determining whether attorney-client privilege applies." *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 619 (D. Kan. 2014) (alterations in original).

memoranda relaying legal advice to operational employees privileged); *see also Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc*., 63 F. Supp. 3d 558, 567 (E.D.N.C. 2014) (noting that privileged documents "may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately" (quotation omitted)); *Apsley v. Boeing Co.*, No. 05-1368-MLB-KMH, 2008 WL 5211001, at *1 (D. Kan. Dec. 9, 2008) ("[T]he attorney-client privilege is not lost merely because an employee conveys the legal communication to another employee for action."). Privilege may still be waived, however, if legal advice is discussed outside the group of employees "who have a need to know in the scope of their corporate responsibilities." *In re Vioxx Prod. Liab. Litig.*, 501 F. Supp. 2d 789, 796 (E.D. La. 2007); *see also Williams v. Sprint/United Mgmt. Co*., 238 F.R.D. 633, 641-43 (D. Kan. 2006) (discussing the "need to know" test).

After carefully reviewing the redacted text *in camera*, the court finds that Spirit's redacted bullet points relating to Arconic are appropriate. This "talking points" email is dated February 23, 2017—again, in the midst of when the parties were staking out their positions with respect to the Retirement Agreement and considering the possibility of litigation. The email is between management employees with a need to know and contains a discussion of legal advice relating to the events in February of 2017 that precipitated this lawsuit. The talking points were provided so that Spirit's President and CEO could update Spirit's Chairman of the Board regarding potentially significant litigation for the company. It was more in the nature of sharing legal advice rather than business advice. As to the other redacted bullet points (relating to the RFI and the insurance claim), the record lacks sufficient information for the court to evaluate whether they were properly redacted as privileged, but those redactions are not relevant to the claims and defenses in this

lawsuit. The court will therefore not require Spirit to re-produce this document in unredacted form. Lawson's motion is denied with respect to this document.

### D. Redactions on SPIRIT000045280-81 and SPIRIT000045282

Lastly, SPIRIT000045280-81 and SPIRIT000045282 consist of an email thread initiated by Mr. Gentile to four Spirit employees, including Spirit's General Counsel Stacy Cozad, followed by subsequent communications between Mr. Gentile and Ron Rabe. Mr. Gentile's initial email includes the words "Confidential – Prepared at the Request of Counsel." Lawson contends that the redacted information is not privileged because it consists of "Spirit businesspeople recount[ing] a non-privileged conversation with a third party regarding Elliott's proxy fight with Arconic." (ECF No. 232, at 3.) Spirit re-produced this document with only two lines of Mr. Gentile's initial email redacted. Spirit argues its redactions are appropriate because Mr. Gentile was "provid[ing] information regarding Arconic for the purpose of facilitating the rendition of legal advice related to the claims at issue in this litigation." (ECF No. 230, at 3.)

After carefully reviewing the subject redactions *in camera*, the court finds they are appropriate. This email thread is dated May 24, 2018. This was approximately two months after Lawson filed this lawsuit on March 28, 2018. The first-listed email recipient is Spirit's General Counsel. Mr. Gentile's redacted comment appears to have been made predominantly for the purpose of facilitating the rendition of legal advice regarding this lawsuit, rather than routine business advice. Lawson's motion is therefore denied with respect to these redactions.

**IT IS THEREFORE ORDERED** that plaintiff Larry A. Lawson's Motion to Compel the Production of Clawed Back Documents (ECF No. 231) is denied.

**IT IS SO ORDERED.**

Dated February 12, 2020, at Topeka, Kansas.

                                                      s/ Angel D. Mitchell
                                                    Angel D. Mitchell
                                                    U.S. Magistrate Judge