IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LARRY A. LAWSON, )
)
        Plaintiff, )
)
v. )   Case No. 18-1100-EFM-ADM
)
SPIRIT AEROSYSTEMS, INC., )
)
        Defendant. )

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff Larry A. Lawson's ("Lawson") Motion for Additional Depositions. (ECF No. 249.) Lawson seeks leave to take more than ten depositions pursuant to Federal Rule of Civil Procedure 30(a)(2). Defendant Spirit AeroSystems, Inc. ("Spirit") opposes the motion, arguing Lawson has not shown that additional depositions are warranted. The court agrees with Spirit. As discussed below, the record before the court establishes that Lawson's proposed depositions are unreasonably cumulative and duplicative, and not proportional to the needs of the case. Lawson's motion is therefore denied. However, out of an abundance of caution given the magnitude of the case, the court will deny the motion without prejudice to be renewed if depositions testimony reveals that other witnesses have unique knowledge that would be important to resolving the disputed issues at stake in this action.

**I.    BACKGROUND**

The background of this lawsuit is more thoroughly set forth in this court's prior orders, familiarity with which is presumed. *See generally, e.g.*, *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 472295, at *1 (D. Kan. Jan. 29, 2020); *Lawson v. Spirit AeroSystems, Inc.*, 410 F. Supp. 3d 1195, 1200-04 (D. Kan. 2019); *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM, 2019 WL 1877159, at *1 (D. Kan. Apr. 26, 2019); *Lawson v. Spirit*

*AeroSystems, Inc.*, No. 18-1100-EFM, 2018 WL 3973150, at *1-*4 (D. Kan. Aug. 20, 2018). Briefly summarized, Lawson is Spirit's former chief executive officer. He retired on July 31, 2016. His Retirement Agreement contained non-compete obligations for two years, until July 31, 2018. In early 2017, he engaged in business dealings with non-party investment firms Elliott Associates, L.P. and Elliott International, L.P. (collectively, "Elliott") to provide consulting services in connection with a proxy contest that Elliott launched to replace five board members of Arconic, Inc. ("Arconic"). When Spirit learned about this, Spirit notified Lawson that his involvement with Arconic constituted a breach of his non-compete. Spirit stopped paying Lawson and demanded that he repay what Spirit had already paid him under the Retirement Agreement. Lawson disputes that he breached the non-compete.

Thus, the disputed issues in this case largely involve interpreting and applying the non-compete provision in Lawson's Retirement Agreement to competition (if any) between Spirit and Arconic. The non-compete provision prohibited Lawson from being involved with "any business that is competitive with the Business or any portion thereof." *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2018 WL 3973150, at *2 (D. Kan. Aug. 20, 2018). The Retirement Agreement defined "Business" as follows:

> We [Spirit] are engaged in the manufacture, fabrication, maintenance, repair, overhaul, and modification of aerostructures and aircraft components, and market and sell our products and services to customers throughout the world ( . . . the *"Business"*).

*Id.* (emphasis in original).

Lawson's theory of the case focuses on its allegations that Spirit is a tier-one manufacturer of aerostructures and aircraft components (*i.e.*, it builds and sells large structures and components like fuselage, propulsion, and wing systems) whereas Arconic is a tier-three or tier-four manufacturer of lightweight engineered metal components that end up in airplanes (*e.g.*, small

2

fasteners, connectors, bolts, engine components, fan blades, etc.) that are used by tier-one suppliers. *Id.* at *7-*9. Lawson therefore contends that Spirit and Arconic are not in the same "Business" because they do not provide, market, or sell the same "*specific* products and services." *Id.* (emphasis in original). Furthermore, Lawson contends that Spirit and Arconic do not regard each other as competitors in their SEC filings or otherwise. *Id.*

Spirit does not seem to dispute its market positioning vis-à-vis Arconic—*i.e.*, that Spirit is a tier-one supplier whereas Arconic makes and sells smaller aerostructures and aircraft components. In fact, Arconic is one of Spirit's suppliers. Spirit instead relies on the business overlap between Spirit and Arconic in light of the non-compete language prohibiting Lawson from being involved with "*any business that is competitive* with the Business *or any portion thereof*" (emphasis added) and defining "Business" to include "manufacture, fabrication, repair, overhaul, and modification of aerostructures and aircraft components." *See generally, e.g.*, *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM, 2020 WL 243598, at *1 (D. Kan. Jan. 16, 2020) (discussing Spirit's motion to compel Arconic to comply with its subpoena). Spirit contends that it and Arconic both manufactured, fabricated, maintained, repaired, overhauled, modified, marketed and/or sold the same or similar aerostructures and aircraft components; marketed similar relevant machining capabilities; competed for employees; committed capital and other resources for research and development; maintained relationships with, submitted proposals or bids to, and contracted with the same or similar customers; and pursued strategic initiatives to try to expand their respective market share. (ECF No. 281-1, at 6-8.) Spirit and Arconic negotiated and competed for favorable terms and conditions in their contracts with each other, and Arconic sought to expand its aerospace business via its relationship with Spirit by extracting more of the aerostructure and aircraft components business from Spirit for itself (*i.e.*, attempting to move up

3

the value chain). (*Id.*) Based on these contentions, Lawson characterizes Spirit as focusing on Spirit and Arconic's overlap in "actual and potential customers, equipment, supply chain dynamics, pricing considerations, and organizational capabilities, to name just a few." (ECF No. 250, at 4.)

Lawson now asks the court to grant him leave to take additional depositions beyond the ten-deposition limit imposed by the Federal Rules. He contends that more depositions are necessary to explore Spirit's claim that Arconic and Spirit are in the same "Business"—namely, actual, similar, or even potential products and services; actual and potential suppliers; supply chain dynamics; actual and potential customers; organization capabilities; and equipment and manufacturing processes used by both parties. (*Id.* at 7.)

Spirit opposes Lawson's motion. Spirit argues that Lawson does not need to depose some of these witnesses, they have only marginally relevant knowledge (at best), and their depositions would be unreasonably cumulative of the testimony of other witnesses. According to Spirit, the witnesses are "unlikely to have significant non-cumulative discoverable information." (ECF No. 276, at 2.) Spirit also argues that Lawson's motion should be denied because Lawson did not first exhaust the ten depositions to which he is entitled before first seeking leave to take additional depositions. (*Id.* at 10-11.)

**I. LAWSON'S MOTION IS NOT PREMATURE**

The court will first address Spirit's argument that Lawson's motion is premature because he must first exhaust the ten depositions presumptively allowed under Rule 30(a) before he seeks leave to take additional depositions. Some courts have adopted an exhaustion rule, but this is by no means settled law. *See Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc.*, No. 2:17-CV-01515-KJM-AC, 2018 WL 5993585, at *2 (E.D. Cal. Nov. 6, 2018) (noting that "some [courts] do not

apply or adopt the exhaustion rule at all, while others deviate from it only where there is good cause, warranted by the complexity of the case"); *C & C Jewelry Mfg., Inc. v. West*, No. C09-01303 JF HRL, 2011 WL 767839, at *2 (N.D. Cal. Feb. 28, 2011) ("While some courts require a party to exhaust the 10–deposition limit before seeking to take more, that is certainly not true in every case.").

The court declines to categorically adopt this exhaustion rule. Nothing in the plain language of Rule 30(a) requires a party to take the first ten depositions before seeking leave to exceed that limit. The ten-deposition limit was added to Rule 30(a) to "assure judicial review under the standards stated in Rule [26(b)(1) and Rule] 26(b)(2) before any side will be allowed to take more than ten depositions in a case without agreement of the other parties." FED. R. CIV. P. 30(a)(2)(A) advisory committee's note to the 1993 amendment. Therefore, the undersigned believes the better practice is to allow a party to present the issue to the court once a dispute over the number of depositions is sufficiently crystalized and the parties have complied with the applicable meet-and-confer requirements. In a given case, the dispute may not be sufficiently developed until the ten-deposition limit has been exhausted. But the court sees no reason to categorically require unnecessary delay in bringing the issue to the court for resolution. The court should aim to facilitate the "just, speedy, and inexpensive determination" of this action. FED. R. CIV. P. 1. Addressing the issue proactively allows a party to make informed choices about its litigation strategy and which witnesses it will ultimately depose. *See Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C-01-21151JWPVT, 2007 WL 3306496, at *6 (N.D. Cal. Nov. 6, 2007) (finding that "it would be prejudicial to require [parties] to choose the . . . ten depositions to take before they know whether they will be granted more").

Here, the parties have fulfilled the meet-and-confer requirements regarding their dispute over the number of depositions Lawson may take. They have reached an impasse, and the record is sufficiently developed for the court to decide the issues presented. Accordingly, the court will not deny Lawson's motion solely on the basis that he did not first exhaust the ten-deposition limit.

## II. LAWSON HAS NOT SHOWN THAT MORE THAN TEN DEPOSITIONS ARE NEEDED

Rule 30(a)(2)(A)(i) presumptively limits each side to ten depositions. A party may exceed this limit only by stipulation or with leave of the court. *See* FED. R. CIV. P. 30(a)(2)(A). On a motion to exceed leave to take more than ten depositions, the court "must grant leave to the extent consistent with Rule 26(b)(1) and (2)." *Id.*

### A. Description of the Depositions at Issue

Here, Lawson seeks to take fourteen fact witness depositions, properly counted as follows: Rule 30(b)(6) depositions of (1) Spirit and (2) Arconic, and individual depositions of Spirit employees and board members (3) Sam Marnick, (4) Wendy Crossman, (5) Ron Rabe, (6) Adam Gomez, (7) Duane Hawkins, (8) Eric Hein, (9) Kevin Matthies, (10) Jim Reed, (11) J. Douglas Mapel, (12) Thomas C. Gentile III, (13) Bob Johnson, and (14) Charles Chadwell. In order to understand the parties' areas of disagreement, it is first necessary to understand the nature of these witnesses, including the scope of Spirit's Rule 30(b)(6) designees.

Spirit disclosed Crossman, Gomez, Hawkins, Hein, and Matthies as potential witnesses regarding Spirit's business regarding the manufacture and fabrication or aerostructures and aircraft components, and the potential for overlap with Arconic's business, as well as competitive concerns about Arconic. (ECF No. 250-1, at 9.) Spirit identified Crossman, Gomez, Rabe, Hein, Matthies, and Gentile in response to an interrogatory from Lawson, as witnesses to provide testimony that Spirit and Arconic were in the same "Business" during the relevant time period. (*Id.* at 18.)

6

Following are additional details about the anticipated subject matter of Spirit's witnesses' testimony:

- Wendy Crossman, VP Strategic Sourcing. In addition to the above, Spirit disclosed Crossman as a potential witness regarding Spirit's sourcing and supply chain for products relevant to this dispute. (*Id.* at 9.) Spirit has agreed to produce her both individually and as a Rule 30(b)(6) designee for Topics 9 (Arconic's supplier relationship with Spirit), 12 (Spirit's contractual relationships with Arconic, suppliers, and customers), and 13 (Spirit's suppliers of fasteners, bolts, or other products similar to those it buys from Arconic).

- Adam Gomez, Executive Director, Strategic Initiatives. In addition to the above, Spirit disclosed Gomez as a potential witness regarding Spirit's provision of products to customers and Spirit's business development initiatives. (*Id.*) Spirit has agreed to produce him as a Rule 30(b)(6) designee for Topic 15 (Spirit's participation in Boeing bidder conferences and its knowledge of Arconic's participation in same).

- Ron Rabe, SVP Operations. Spirit identified Rabe in response to an interrogatory from Lawson as set forth above. In addition, Spirit disclosed Rabe as a potential witness regarding Spirit's sourcing and supply chain for relevant products. (*Id.* at 11.) Spirit has agreed to produce him as a Rule 30(b)(6) designee for Topics 1 (Arconic's engagement in the Business, or any competitive business), 2 (overlap between Spirit and Arconic), 3 (competition between Spirit and Arconic), and 11 (Spirit's alternative sources, fabrication of, insourcing, or manufacturers of products made and sold by Arconic).

- Duane Hawkins, SVP Boeing Programs, Defense Programs. Spirit disclosed Hawkins as a potential witness as set forth above. Spirit has agreed to produce him for a deposition in his individual capacity.

- Eric Hein, Senior Director Research & Technology. In addition to the above, Spirit also disclosed Hein as a potential witness regarding potential joint collaboration with Arconic regarding development. (*Id.* at 10.) Spirit has agreed to produce him for a deposition in his individual capacity.

- Kevin Matthies, SVP Global Fabrication. Spirit disclosed Matthies as a potential witness and in response to an interrogatory from Lawson as set forth above. Spirit has agreed to produce him for a deposition in his individual capacity.

- Samantha Marnick, EVP and Chief Administrative Officer. Spirit disclosed Marnick as a potential witness regarding Lawson's employment relationship with Spirit and related agreements; Lawson's departure from employment with Spirit; Lawson's and Elliott's requests to Spirit that Lawson be released from the restrictive covenants; Spirit's determination that Lawson violated the restrictive covenants; and competitive concerns regarding Arconic. (*Id.* at 10-11.) Spirit has agreed to produce her both individually and as a Rule 30(b)(6) designee for Topics 4 (competition between Spirit

7

and L3), 8 (Spirit's identification of competitors in its SEC filings), 16 (cash compensation or stock awards due to Lawson), 17 (Spirit's decision to terminate payments of shares or vesting to Lawson under the Retirement Agreement), 18 (same, not to resume payments and vesting after Lawson was not appointed Arconic's CEO), 19 (Lawson's performance-based stock), and 20 (Spirit's achievement of those performance targets).

- <u>Spirit's President and CEO Tom Gentile and Spirit Board Members Charles Chadwell and Robert Johnson</u>. Spirit disclosed each of these individuals as potential witnesses regarding Lawson's and Elliott's requests to Spirit that Lawson be released from his restrictive covenants; Spirit's determination that Lawson's involvement with Arconic and Elliott violated the restrictive covenants; and competitive concerns regarding Arconic. (*Id.* at 9-10.) Lawson has agreed to produce one person out of this group for deposition, but not all three.

Lawson contends that these witnesses all have non-duplicative information and unique knowledge. Spirit disputes this and contends that Rabe, Gomez, Reed, Mapel, Gentile, Johnson, and Chadwell are cumulative and duplicative of each other and/or other individual or Rule 30(b)(6) witnesses.

**B.    The Additional Depositions are Unreasonably Cumulative and Duplicative**

According to Rule 26(b)(2), the court "*must* limit the frequency or extent of discovery" where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i) (emphasis added). "Thus, in certain circumstances, if one discovery request seeks information duplicative of another, the Court must limit the discovery even if both are relevant requests." *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2015 WL 3742929, at *3 (D. Kan. June 15, 2015) (quotation omitted) (denying motion to compel deposition that would be cumulative of prior Rule 30(b)(6) topics).

**1.    Rabe and Gomez**

As set forth above, Spirit has already agreed to produce Rabe and Gomez as Rule 30(b)(6) designees. Lawson also seeks to depose them in their individual capacities, reasoning that they

8

are "already scheduled to testify as part of the ten-deposition limit" because Spirit designated them to testify on certain Rule 30(b)(6) topics. (ECF No. 250, at 10-11.) Lawson wants to depose them in their individual capacities because, according to Lawson, Rabe "has knowledge of Spirit's evaluation of whether to insource fabrication capabilities" and Gomez "was in charge of Spirit's bid as part of the Boeing Control Surfaces Bidder Conference, which Spirit has asserted as one of the possible bases for its argument that it and Arconic are in the same 'Business.'" (*Id.* at 11.) Lawson reasons that he has agreed to "limit each of their depositions to a single, seven-hour day." (*Id.*) Lawson therefore seems to suggest that their individual depositions should not count toward the ten-deposition limit. The court disagrees.

Lawson first notified Spirit on November 4, 2019, that he wanted to depose Rabe and Gomez in their individual capacities. Partly because of this, Spirit later designated them to testify as Rule 30(b)(6) designees on certain topics. (ECF No. 276, at 8-9; ECF No. 250, at 9.) Spirit correctly points out that the depositions of Rabe and Gomez in their individual capacities must count towards the ten-deposition limit, regardless of whether they are already testifying as Rule 30(b)(6) witnesses. (*See* ECF No. 276, at 9.) Individual and corporate representative depositions "serve distinct purposes, impose different obligations on [a party], and involve different ramifications." *See Commodity Futures Trading Comm'n v. Midland Rare Coin Exch. Inc.*, No. 97-7422-CIV, 1999 WL 35148749, at *3 (S.D. Fla. July 30, 1999). A deposition of an individual is designed to elicit personal knowledge whereas a corporate representative must "testify about information known or reasonably available to the organization." FED. R. CIV. P. 30(b)(6). An individual-capacity deposition of a Rule 30(b)(6) designee therefore counts as a separate deposition under Rule 30(a). *See, e.g.*, *See, e.g.*, *X One, Inc. v. Uber Techs.*, No. 16-cv-06050-LHK, 2019 WL 2207645, at *2 (N.D. Cal. May 22, 2019) (denying leave to take individual

depositions of Rule 30(b)(6) designees that would exceed ten-deposition limit); *State Farm Mutual Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 232-33 (E.D. Pa. 2008) (refusing individual-capacity deposition of Rule 30(b)(6) designee).

Spirit further argues that Rabe's and Gomez's testimony in their individual capacities would be "unreasonably cumulative, duplicative, irrelevant . . . and . . . not proportional to the needs of the case." (ECF No. 276, at 9.) Spirit is already designating Rabe to provide Rule 30(b)(6) testimony on "Spirit's uses, alternative sources, fabrication of, insourcing, or manufacture of products made, manufactured, or sold by Arconic," and Gomez to provide Rule 30(b)(6) testimony on "[t]he extent of Spirit's participation in any Boeing Control Surfaces Bidder Conference — or any other Boeing Bidder Conference — post-dating June 1, 2016." (ECF No. 250, at 9; ECF No. 250-1, at 72-73.) Lawson argues that he needs individual depositions of these witnesses on the exact same topics. (*See* ECF No. 250, at 11.) He does not specify any testimony he believes these witnesses could provide in their individual capacities that would not be duplicative of their testimony as corporate representatives. The court therefore agrees that the individual depositions of Rabe and Gomez are cumulative and duplicative of their anticipated Rule 30(b)(6) testimony. *See, e.g.*, *X One, Inc.*, 2019 WL 2207645, at *2 (denying leave to take individual depositions of Rule 30(b)(6) designees because plaintiff did not articulate "what non-duplicative discovery it seeks from deposing these witnesses in their individual capacities"); *State Farm Mutual Auto. Ins. Co.*, 254 F.R.D. at 232-33 (same, where defendants did not show good cause for individual-capacity deposition).

### 2. Reed and Mapel

Lawson also seeks to depose Jim Reed and J. Douglas Mapel. Lawson says he wants to take these depositions because Reed and Mapel's names appear in documents produced by Spirit.

10

More specifically, Lawson reasons that he "reviewed a document produced by Spirit . . . indicating that Mr. Reed was tasked with defining Spirit's competitors, including whether Arconic is one of them." (ECF No. 250, at 11.) And Lawson reasons that Mapel "is one of the two persons of [sic] Spirit with the most knowledge of Spirit's relationship with Arconic." (*Id.* at 11-12.) In support, Lawson cites a single email chain involving Mapel, Crossman, and others. (*Id.*)

Spirit opposes these depositions because it argues that Reed and Mapel have only "marginally relevant information that would be unreasonably cumulative and duplicative of information already available to Lawson from other witnesses, and their depositions are not proportional to the needs of this case." (ECF No. 276, at 4.) Neither Reed nor Mapel were listed on Spirit's Rule 26(a)(1)(A) initial disclosures as having discoverable information that Spirit may use to support its defenses in this litigation. (*Id.* at 5, 7.) Neither party suggested Reed or Mapel as an ESI custodian. Reed is the custodian of only two documents produced in this litigation (totaling 11 pages), and Mapel is the custodian of zero documents. (*Id.*) Spirit argues the testimony Lawson seeks from Reed and Mapel about whether Arconic competes with Spirit and the relationship between the two companies is cumulative and duplicative of testimony from other sources. Specifically, Spirit is already designating Crossman and Rabe as Rule 30(b)(6) designees on these topics. (*See* ECF No. 250, at 9; ECF No. 250-1, at 71-73.) Lawson also intends to depose Crossman in her individual capacity. (ECF No. 250, at 10.)

The court agrees with Spirit. Lawson's view of the documents he cites seems overinflated. The document he cites in support of his request to depose Reed contains a single row on a multiple-page spreadsheet that lists Reed's name in a single cell under a broad category for "Competitor Analysis." (ECF No. 251, at 4.) The spreadsheet indicates that various companies (including Arconic) would be considered in the competitor analysis; the "Key Points" were margins, R&D

11

investment, and growth compared to peer set; and it states that no review was done last year and that J. Reed would "define who are [Spirit's] competitors" in this context. (*Id.*) But, as explained above, Spirit is already producing multiple witnesses, including Rule 30(b)(6) designees Crossman and Rabe, to testify about the competitive landscape between Spirit and Arconic. The fact that another person somewhere in Spirit was at one time involved in assessing some aspect of this competitive landscape is unsurprising. It is certainly insufficient to warrant additional depositions. Similarly, the email Lawson cites involving Mapel is unremarkable. It is an email thread involving Crossman that reveals Mapel was assigned certain projects involving Arconic in 2016, including coordinating payments to Arconic and forecasting Spirit's future demand for Arconic products. (*See id.* at 10.) But this document shows only that Mapel's relevant knowledge would likely be duplicative of that of Crossman, who, again, is already testifying about Arconic's role as a supplier to Spirit. As with Reed, it seems unsurprising that there would be additional employees within Spirit that would have knowledge about various aspects of its supplier relationship with Arconic, but that does not mean that Lawson needs to depose them all. Thus, Lawson has not shown that Reed and Mapel would provide testimony on subject matter that Crossman and Rabe are not already covering. Their depositions therefore appear to be unreasonably cumulative and duplicative.

### 3. Gentile, Johnson, and Chadwell

Lawson also states that he plans to depose Gentile, Johnson, and Chadwell under Rule 30(a). Lawson contends that Gentile was "personally involved in Spirit's decision to breach [the Retirement Agreement] and in monitoring Elliott's proxy contest with Arconic, and he has knowledge of whether Arconic is a Spirit competitor and Spirit's relationship with Arconic." (ECF No. 250, at 9.) Lawson argues that Johnson and Chadwell also have knowledge about "Spirit's

decision to breach the Retirement Agreement." (*Id.* at 9-10.) Lawson contends that each of these three individuals had conversations with Lawson or Elliott about Arconic. (*Id.*)

Spirit opposes Lawson's plan to depose all three of these witnesses.[1] Spirit points out that Lawson's reasons for deposing Gentile, Johnson, and Chadwell are similar (or identical) because Lawson contends that each "has knowledge regarding Lawson's allegation of 'Spirit's decision to breach' the Retirement Agreement and Spirit's relationship with Arconic." (ECF No. 276, at 9.) Spirit also argues that testimony on these subjects would be cumulative and duplicative of testimony that Spirit has designated corporate representatives to provide, as well as testimony from other individual witnesses. (*Id.*) Finally, Spirit contests the relevance of testimony regarding its alleged breach of the Retirement Agreement in light of the fact that intent is not an element in a breach of contract claim, and "there is no dispute that Spirit viewed Lawson's actions with respect to Arconic as a breach of his Agreement." (*Id.* at 10 (quoting *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 473295, at *10 (D. Kan. Jan. 29, 2020)).)

Again, the court agrees with Spirit. The court must examine "the necessity of all the depositions [taken] in reaching the prescribed limit" to determine whether additional depositions are warranted. *See Zenith Ins. Co. v. Texas Inst. for Surgery, L.L.P.*, No. 3:18-CV-182-D, 2018 WL 5084913, at *4 (N.D. Tex. Oct. 18, 2018) (quotation omitted). Spirit has already designated

---

[1] Spirit asks that the court "not permit Lawson to depose more than one of Messrs. Gentile, Johnson, or Chadwell." (ECF No. 276, at 11.) But requesting affirmative relief in a response brief is procedurally improper. *See* D. KAN. RULE 7.1(a) ("All motions . . . must be filed in writing with the clerk. A brief or memorandum must accompany all motions . . . ."). The court will therefore not grant Spirit the relief sought at this procedural juncture. But if, after reviewing this Memorandum and Order, Lawson nevertheless intends to proceed with more than one deposition from amongst Gentile, Johnson, and Chadwell, Spirit may file a motion for protective order and that motion will automatically stay those depositions pending the court's ruling on the motion. If and when Spirit files any such motion, Lawson's response shall be due within five business days and Spirit's reply brief shall be filed within three business days thereafter. Principal briefs shall not exceed seven pages, and Spirit's reply brief shall not exceed three pages.

13

Marnick to provide Rule 30(b)(6) testimony regarding Spirit's decision to terminate payments or vesting of shares due to Lawson under the Retirement Agreement, as well as Spirit's decision not to resume payments or vesting of shares allegedly due to Lawson after Arconic appointed someone else as CEO. (ECF No. 250-1, at 73.) Lawson also plans to depose Marnick in her individual capacity. (ECF No. 250, at 10.) And, as discussed above, Crossman and Rabe are already providing Rule 30(b)(6) testimony regarding whether Arconic competes with Spirit and the relationship between the two companies. The court also agrees that the subject matter of Gentile, Johnson, and Chadwell's anticipated testimony is of marginal (if any) relevance. Regardless of the views of various individuals within Spirit, it is undisputed that the corporation itself decided to stop making payments to Lawson under the Retirement Agreement. Lawson does not need multiple witnesses to testify as to this fact. Therefore, the testimony of Gentile, Johnson, and Chadwell would be unreasonably cumulative and duplicative with respect to each other, as well as with respect to other witnesses.

        **C.     Additional Depositions are Disproportionate to the Needs of the Case.**

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015

amendment and concluding that it did not change discovery's scope but clarified it, and therefore *Oppenheimer* still applies). In evaluating proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

The main thrust of Spirit's argument that the additional depositions are not proportional to the needs of the case is as discussed above—that is, the additional depositions seek information that is, at best, marginally relevant and would be unreasonably cumulative and duplicative of other deposition testimony that is already available to Lawson. As discussed above, the court agrees. Lawson therefore has not shown that the additional depositions he seeks are important to resolving the disputed issues in the case. Lawson suggests that wide-ranging discovery is necessary because Spirit has contributed to the complexity through its framing of the issues. (ECF No. 250, at 4-5; ECF No. 281, at 2 (arguing Spirit's interrogatory responses "implicate nearly every Spirit business unit").) But the court has carefully reviewed Spirit's interrogatory response that Lawson cites in search for a nexus between Lawson's broad-brush "complex issues" theme and the additional depositions he seeks. Ultimately, Lawson has not explained how any of these tangential depositions (*e.g.*, individual depositions of Rabe, Gomez, Mapel, Reed, and all three of Gentile, Johnson, and Chadwell) would bear on subject matter that is not already covered by other witnesses or Rule 30(b)(6) designees.

Lawson's main argument that the additional depositions are proportional to the needs of the case is that "Spirit's initial disclosures identify at least 16 potential defense witnesses" and that ten depositions are "simply insufficient in a case of this size and scope." (ECF No. 250, at 4, 7.)

But "[p]arties are not . . . entitled to depose every potential witness from the opposing side." *Cellcast Techs., LLC v. United States*, No. 15-1307C, 2016 WL 5335798, at *1 (Fed. Cl. Sept. 23, 2016). "The mere fact that more than ten individuals may have discoverable information in a case does not mean that taking more than ten depositions makes sense." *United States v. Goertz*, No. A-09-CA-179 LY, 2010 WL 2900309, at *1 (W.D. Tex. July 20, 2010). "[T]he purpose of the limitation in [Rule 30(a)] is to force counsel to think long and hard about who they want to depose and to depose only those who are really important." *San Francisco Health Plan v. McKesson Corp.*, 264 F.R.D. 20, 21 (D. Mass. 2010).

Lawson points out that approximately $50 million is at stake in this case, and that Spirit is a company worth $8 billion in annual revenues and it has many lawyers in this case. The amount in controversy and the parties' resources are certainly relevant to the proportionality analysis. However, they are not determinative. If they were, they would eradicate proportionality considerations in every case against high-profile litigation targets with substantial resources. Nevertheless, these are legitimate considerations under a proportionality analysis. Therefore, out of an abundance of caution given the amount at stake, Spirit's superior access to pertinent information to support its defenses, and Spirit's resources, the court will deny Lawson's motion without prejudice. Lawson may renew his motion for leave to exceed the ten-deposition limit if deposition testimony reveals that other witnesses have unique knowledge that would be important to resolving the disputed issues at stake in this action. Unless and until Lawson makes such a showing, the court finds that the burden or expense of the proposed discovery outweighs its likely benefit. It is therefore disproportionate to the needs of the case.

## IV. CONCLUSION

For the reasons set forth above, Lawson's motion to exceed the ten-deposition limit is denied without prejudice. In so ruling, the court wishes to make clear that it is not making any

determination as to which particular depositions Lawson may take. Lawson frames the dispute as though the individual depositions of Gomez, Rabe, Reed, and Mapel are the "extra" depositions beyond the ten-deposition limit. The court is not deciding the issue as such; rather, the court simply denies Lawson leave to exceed the ten-deposition limit. Lawson may decide which depositions to take so long as he does not exceed that limit. In selecting those depositions, Lawson should be mindful that, if he renews his motion at some point in the future, he will need to establish not only the necessity of the additional depositions requested but also "the necessity of all the depositions [taken] in reaching the prescribed limit." *Zenith Ins. Co.*, 2018 WL 5084913, at *4 (quotation omitted); *see also Madison v. Jack Link Assocs. Stage Lighting & Prods., Inc.*, 297 F.R.D. 532, 535 (S.D. Fla. 2013) ("Courts have construed Rule 30(a)(2)(A) . . . to require a party seeking leave of court to exceed the [ten]-deposition limitation to justify the necessity of each deposition *previously taken* without leave of court." (alterations and emphasis in original).) The rationale behind this requirement is to ensure that a party does not "circumvent the cap on depositions by exhausting the maximum allotted number to take those that she could not justify under the Rule [26(b)(1) and Rule] 26(b)(2) standards, and then seeking leave to exceed the limit in order to take depositions that she could substantiate." *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 483 (N.D. Tex. 2001). To require otherwise would thwart Rule 30(a)'s intended purpose, *i.e.* "to control discovery, with its attendant costs and potential for delay, [through] establishing a default limit on the number of depositions." *Id.*

**IT IS THEREFORE ORDERED** that plaintiff Larry A. Lawson's Motion for Additional Depositions (ECF No. 249) is denied without prejudice.

**IT IS SO ORDERED.**

Dated March 18, 2020, at Topeka, Kansas.

                                                  s/ Angel D. Mitchell
                                                  Angel D. Mitchell
                                                  U.S. Magistrate Judge