# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LARRY A. LAWSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-1100-EFM-ADM |
| | ) |
| SPIRIT AEROSYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Spirit AeroSystems, Inc.'s ("Spirit") Motion to Compel Production of Documents Listed on Lawson's Privilege Log. (ECF No. 260.) Spirit asks the court to compel plaintiff Larry A. Lawson ("Lawson") to produce: (1) emails between Lawson and third parties Elliott Associates, L.P. and Elliott International, L.P. (together, "Elliott") that Spirit believes reflect their arms-length negotiations, and (2) emails between Lawson and Elliott regarding a proxy contest Elliott launched to replace certain board members of Arconic, Inc. ("Arconic"). Spirit contends that these documents should have been produced under the parameters set forth in the court's Memorandum and Order dated October 8, 2019. (ECF No. 141.) As set forth below, Spirit's motion is granted in part and denied in part.

## I.  BACKGROUND

The current motion involves interpreting and applying the court's prior Memorandum and Order dated October 8, 2019, familiarity with which is presumed. *See Lawson v. Spirit AeroSystems, Inc.*, 410 F. Supp. 3d 1195 (D. Kan. 2019). In that order, the court established parameters regarding the applicability of Lawson and/or Elliott's claims of attorney-client privilege, work-product doctrine, and/or common-interest privilege, and the court directed Lawson and Elliott to produce documents consistent with the court's rulings. *See id.* at 1205-13.

Spirit now contends that Lawson is improperly withholding documents that should have been produced under the parameters outlined in the court's order. Specifically, Spirit asks the court to compel production of the following:

- Entries 35, 40-43, 47-50, 53, 60-61, 74-76, and 90-94 on Lawson's Privilege Log and Entry 47 on Lawson's Redaction Log, which Spirit contends are emails representing arms-length negotiations between Lawson and Elliott regarding the Consulting Agreement and Indemnification Agreement ("Negotiation Entries"); and

- Entries 51, 62-70, and 82-83 on the Privilege Log and Entries 32-35 and 55 on the Redaction Log, which Spirit contends are emails between Lawson, Elliott, and Elliott's counsel regarding the proxy contest ("Proxy Contest Entries").

(ECF No. 260, at 4-6.)

Lawson opposes Spirit's motion. Lawson argues the Negotiation Entries do not actually reflect arms-length negotiations and were properly withheld. (ECF No. 283, at 6.) With respect to the Proxy Contest Entries, Lawson argues those documents are not relevant to the issues in the case. Lawson also argues that Elliott authorized him to communicate with Elliott's counsel in furtherance of providing legal services to Elliott in connection with the proxy contest, and therefore the documents are privileged attorney-client communications. (*Id.* at 8.)

## II. NEGOTIATION ENTRIES

Spirit contends the "Negotiation Entries" should be produced because the court ruled the common-interest doctrine does not apply when the parties are engaged in arms-length bargaining. *Lawson*, 410 F. Supp. 3d at 1209-10. Spirit contends the subject documents "relate to negotiations between Lawson and Elliott over issues related to the agreements between the parties which governed Lawson's relationship with Elliott, *i.e.*, Elliott's financial obligations to Lawson and the scope of Lawson's work for Elliott under the agreement." (ECF No. 260, at 5.) Spirit contends the court "previously found that no privilege attaches to communications regarding negotiations." (*Id.*) But this is not an accurate characterization or interpretation of the court's prior order.

The court previously held that Elliott and its law firm Willkie Farr & Gallagher, LLP ("Willkie") waived attorney-client privilege with respect to communications involving Lawson between January 12 and February 12, 2017, *except* to the extent that some exception to non-waiver applies such as the common-interest doctrine. *Lawson*, 410 F. Supp. 3d at 1206-07. Lawson and Elliott argued that communications amongst them (and their attorneys) during that time period were protected by the common-interest doctrine. The court rejected this broad timeline, and instead determined the specific date when their legal interests became identical. *Id.* at 1209-10. In making that determination, the court rejected Lawson and Elliott's argument that they had a common legal interest in January because the record revealed that their respective counsel were still negotiating the terms of the Consulting Agreement and Indemnification Agreement and were engaged in "arms-length bargaining" during that time period. *Id.* Their legal interests did not become identical until February 3. By then, they had executed the Consulting Agreement and Indemnification Agreement on January 31, and, on February 3, Elliott assumed Lawson's defense regarding potential litigation with Spirit arising out of Lawson's Retirement Agreement. *Id.* So a common interest (as an exception to waiver of attorney-client privilege) arose as of February 3 with respect to communications amongst them relating to potential litigation with Spirit over Lawson's Retirement Agreement. *Id.*

Here, all of the Negotiation Entries are dated during the common-interest time period after February 3, when Elliott and Lawson had an identical legal interest with respect to potential litigation with Spirit over Lawson's Retirement Agreement. (*See* ECF No. 263, at 5-9, 25 (dating between February 8 and May 6, 2017).) The court therefore evaluates whether the subject communications were made in furtherance of the parties' common interest—*i.e.*, "in the course of a 'joint effort with respect to a common legal interest' and for the purpose of furthering that effort."

*Lawson*, 410 F. Supp. 3d at 1209 (citing *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007)). In other words, the court must determine whether the communications were in fact privileged and in furtherance of the parties' common legal interest with respect to potential litigation with Spirit over Lawson's Retirement Agreement.

Through this lens, the court has carefully reviewed the Negotiation Entries and the subject documents *in camera*. Negotiation Entries 35, 40-43, 74-76, and 90-94 and the redaction reflected on Redaction Log Entry 47 are not privileged because they do not involve legal advice being sought or rendered. The common-interest doctrine is not even implicated. Lawson characterizes this set of documents as "reflect[ing] conversations regarding the transmittal of previously agreed upon payments from Elliott to Lawson." (ECF No. 283, at 6.) The Negotiation Entries state that the documents reflect information necessary to render legal advice of Martin Seidel ("Seidel") regarding Elliott's financial obligations to Lawson. But these communications are nothing more than ministerial communications regarding payment logistics. Nothing in the record establishes any way in which these communications involving ministerial payment logistics facilitated the rendition of legal advice, and therefore these documents must be produced. In addition, the redaction from Redaction Log Entry 47 should be removed and this document should be re-produced without redactions for consistency because the redacted text has already been produced elsewhere.

Lawson describes Negotiation Entries 47-50, 53, and 60-61 as "discussions clarifying the already agreed upon terms of Lawson's engagement with Elliott." (ECF No. 283, at 6.) The Negotiation Entries describe these documents as relating to counsel's legal advice regarding the scope of Lawson's work for Elliott and providing information necessary for attorney Gillian Moldowan to render legal advice regarding an agreement relevant to potential litigation with Spirit

4

and proxy contest. The court finds these documents reflect privileged communications within the scope of and in furtherance of Elliott and Lawson's common legal interest. Accordingly, Spirit's motion to compel is denied with respect to these documents. However, the court will compel Lawson to produce Negotiation Entry 53 (his engagement letter with Willkie) for consistency because this document was produced previously.

## III.   PROXY CONTEST ENTRIES

Spirit argues the Proxy Contest Entries should be produced because the court previously held that communications between Elliott, Lawson, and Elliott's counsel regarding Elliott's proxy contest with Arconic are not privileged. (ECF No. 260, at 6.) Spirit correctly notes that Lawson did not establish that he was authorized to communicate with Elliott's attorneys regarding the proxy contest for the purpose of obtaining legal advice for Elliott. *See Lawson*, 410 F. Supp. 3d at 1206-07. The court also found that Lawson did not establish that he and Elliott shared an identical legal interest with respect to the proxy contest, such that privileged communications discussing those matters would be protected by the common-interest doctrine. *Id.* at 1211.

### A.   <u>Relevance</u>

Lawson contends this aspect of Spirit's motion should be denied because the Proxy Contest Entries are not relevant. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment to the Federal Rules); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change discovery's scope but clarified it, and therefore *Oppenheimer* still applies). When the

discovery sought appears relevant on its face, the party resisting discovery bears the burden to support its objections. *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.").

Here, the relevance of the Proxy Contest Entries is not facially apparent. Lawson argues these communications are not relevant because the information Lawson provided to Willkie in connection with Elliott's proxy filings (which have all been produced) does not bear on the scope of Lawson's work for Elliott or whether Elliott's involvement with Arconic was sufficient to trigger the non-compete provisions of Lawson's Retirement Agreement. (ECF No. 283, at 8.) According to Lawson, all he did was provide information and/or confirm the accuracy of disclosures in the proxy filings relating to his personal and professional background. (*Id.*) In response, Spirit argues "that factual information is relevant on a key issue in the case: that Lawson assisted Elliott regarding its investment in Arconic. Lawson's activities in connection with Elliott's proxy fight with Arconic constituted, at least in part, Lawson's breach of the Retirement Agreement." (ECF No. 286, at 3.)

The court agrees with both parties. Some aspects of these communications are relevant, but others are not. Spirit has not articulated any way in which Willkie's preparation of those proxy disclosures—separate and apart from Lawson providing input to support the proxy contest—is relevant. The court credits Lawson's explanation that the Proxy Contest Entries that involve

nothing more than Willkie's work on Elliott's proxy filing disclosures are not relevant. To that extent, the following Proxy Contest Entries are not relevant:

- Proxy Contest Entries 63, 65, 68

- The redactions on Redaction Log Entries 32, 33, 34, and 35

In addition, the portions of the email threads on Proxy Contest Entries 51 and 62 that are consistent with the redactions on Redaction Log Entries 32, 33, 34, and 35 are not relevant. These documents, redactions, and email excerpts all consist of communications amongst counsel and draft proxy disclosures on which Lawson provided no input (other than as reflected in the documents the court is ordering Lawson to produce, as set forth below). Spirit's motion with respect to these documents and redactions is therefore denied for lack of relevance.

However, the court credits Spirit's explanation that facts tending to show that Lawson assisted Elliott by supporting its proxy contest are relevant because they bear on the nature of Lawson's relationship with Arconic. This includes Lawson's efforts to support the proxy contest, such as providing feedback to Elliott's counsel to make sure the proxy filings accurately disclosed his personal and professional background. To that extent, the following Proxy Contest Entries are relevant:

- Proxy Contest Entries 51 and 62 (other than the redactions allowed, as set forth above), 64, 66, 67, 69, 82, and 83

- Proxy Contest Entry 70 and the redaction on Redaction Log Entry 55 are relevant, but for other reasons

The court will therefore consider the parties' arguments as to whether these remaining Proxy Contest Entries were properly withheld.

7

## B. Lawson's Belated Assertion That He Was Authorized to Seek Legal Advice

Lawson argues he properly withheld the Proxy Contest Entries because Elliott authorized him "to provide information to Elliott's lawyers for the lawyers' use in representing Elliott in the Arconic proxy contest." (ECF No. 283, at 8.) In support of this argument, Lawson submitted a declaration attached to his response brief that Elliott authorized him to "provide information to Willkie in order for Willkie to draft various proxy filings on Elliott's behalf" and he was "explicitly instructed . . . to provide the information requested by Willkie." (ECF No. 283-1 ¶ 4.) According to Lawson, he "understood that when [he] was providing information to counsel in connection with public filings that [he] was providing this information in connection with legal advice that they were rendering on behalf of [Elliott]." (*Id.* ¶ 5.) Lawson also now relies on a declaration from Seidel, a Willkie lawyer. Seidel explains that he was part of a team of Willkie lawyers representing Elliott with respect to the proxy contest. (ECF No. 283-2 ¶ 3.) He states that "Lawson was authorized by Elliott to provide information to Willkie" so that the firm could draft proxy filings, and that Seidel and other Willkie lawyers "communicated with Lawson for the purpose of obtaining information" for those filings. (*Id.* ¶¶ 6-7.)

Spirit correctly points out that the court "already ruled that Lawson failed to make a showing that he was a non-employee consultant authorized to speak with Elliott's attorneys to seek legal advice on behalf of Elliott." (ECF No. 286, at 3 (citing *Lawson*, 410 F. Supp. 3d at 1206-07).) The court agrees. Spirit previously moved to compel documents relating to the proxy contest, and Lawson had the burden to show that his communications with Willkie regarding that subject matter were privileged. *See Lawson*, 410 F. Supp. 3d at 1205-06. Lawson did not meet that burden. The court already ruled that he presented no evidence showing that he was authorized to communicate with Willkie for the purpose of seeking legal advice on Elliott's behalf regarding

8

the proxy contest, and he did not establish that proxy contest communications were protected under the common-interest doctrine. *Id.* at 1206-07, 1211. The court therefore ruled that proxy contest documents (separate and apart from communications in furtherance of the parties' common legal interest in potential litigation with Spirit over Lawson's Retirement Agreement[1]) must be produced. *See id.*

Lawson's belated attempt to establish privilege is essentially an argument that the court should reconsider its prior order. Lawson tries to disavow that this is what he is seeking. (*See* ECF No. 283, at 10 ("Lawson . . . does not seek reconsideration of the Court's October 8 Order on the proxy contest documents.").) This is undoubtedly because, viewed as such, the motion would be subject to denial on two grounds. For one, it would be untimely. *See* D. KAN. RULE 7.3(b) (motion to reconsider a non-dispositive order must be filed within 14 days after entry of the order, unless the court extends that time). Furthermore, it would be without merit because reconsideration cannot be based on "arguments or supporting facts that could have been presented originally." *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010). Lawson had the opportunity to submit the declarations that he now relies on previously, but he did not do so. The court therefore finds no basis to reconsider its prior ruling that communications between Lawson and Willkie regarding the proxy contest are not protected by the attorney-client privilege. *Lawson*, 410 F. Supp. 3d at 1206-07.

Accordingly, based on the Court's prior ruling, the court has carefully reviewed the documents that are relevant *in camera*. Lawson must produce the following documents:

- Proxy Contest Entries 51 and 62 (except Lawson may redact emails consistent with redactions in Entries 32-35 on the Redaction Log);

---

[1] Lawson does not argue the Proxy Contest Entries are covered by the common-interest doctrine or the joint-client privilege, even though they are all dated on or after February 21, 2017.

- Proxy Contest Entries 64, 66, 67, 69, 82, and 83; and

- Redacted Proxy Contest Entry 55, without redaction, because the communication does not involve legal advice.

Proxy Contest Entry 70 is privileged and subject to the common-interest doctrine, and so it is properly withheld.

**IT IS THEREFORE ORDERED** that defendant Spirit AeroSystems, Inc.'s Motion to Compel Production of Documents Listed on Lawson's Privilege Log (ECF No. 260) is granted in part and denied in part. Lawson must produce documents as set forth above by **April 6, 2020**.

**IT IS SO ORDERED.**

Dated March 30, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell<br>Angel D. Mitchell<br>U.S. Magistrate Judge