# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LARRY A. LAWSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 18-1100-EFM-ADM |
| SPIRIT AEROSYSTEMS, INC., | ) ) ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the court on plaintiff Larry A. Lawson's ("Lawson") Motion to Compel the Production of Non-Privileged Documents. (ECF No. 261.) Lawson asks the court to compel defendant Spirit AeroSystems, Inc. ("Spirit") to produce certain documents that Spirit has withheld or redacted as attorney-client privileged and/or protected by the work-product doctrine. These documents fall within the following categories:[1] (1) communications where counsel is copied but Lawson contends they do not involve legal advice; (2) communications between non-attorneys; and (3) communications between Spirit and two third parties, Arconic, Inc. ("Arconic") and Computershare Limited ("Computershare"). Lawson contends that none of these documents are privileged or work product, and that they were improperly withheld or redacted. For the reasons discussed below, Lawson's motion is granted in part and denied in part. It is granted to the extent that the court has reviewed the documents at issue *in camera*, and the court will order Spirit to remove certain redactions and produce selected documents as set forth below. It is otherwise denied.

---

[1] Lawson's motion also sought communications and materials relating to Spirit's "business review" of its relationship with Arconic, Inc. (*See* ECF No. 262, at 4.) Lawson's reply brief states that he is no longer pursing those documents. (ECF No. 293, at 2 n.1.) This aspect of Lawson's motion is therefore denied as moot.

## I. BACKGROUND

The background of this lawsuit is more thoroughly set forth in this court's prior orders, familiarity with which is presumed. Highly summarized, Lawson is Spirit's former chief executive officer who retired on July 31, 2016. His Retirement Agreement contained non-compete obligations for two years, until July 31, 2018. In early 2017, Lawson engaged in business dealings with non-party investment firms Elliott Associates, L.P. and Elliott International, L.P. (collectively, "Elliott") to provide consulting services in connection with a proxy contest Elliott launched to replace five board members of Arconic. When Spirit learned about this, Spirit notified Lawson that his involvement with Arconic constituted a breach of his non-compete. Spirit stopped paying Lawson and demanded that he repay what the company had already paid him under the Retirement Agreement. Lawson disputes that he breached the non-compete. He filed this lawsuit seeking to recover what he believes Spirit owes him.

Lawson now asks the court to compel production of the following documents, which he contends Spirit improperly withheld or redacted as attorney-client privileged and/or work product:

- Communications copying counsel that Lawson claims do not involve legal advice: PLID_000009, 70-79, 81, 194-195, 222, 223, 250-252, 254, 261-268, 424, 540, 541, 639, 660, 666, 667, 967, 968, 983-986, 1374, 1375, 1484-1490, 1521, 1531-1533, 1641, and 2074;

- Communications between non-attorneys: PLID_000051, 117-119, 172, 176, 177, 193, 202-206, 610, 662, 767, 768, 770, 917, 952-961, 965, 966, 969, 981, 982, 987-991, 1376-1380, 1434-1437, 1449, 1513-1530, 1537-1540, 1578-1584, 1606-1615, 1636, 1651, 1653, 1655, 1656, 1665, 1685-1688, 1700-1702, 1707-1709, 1731-1737, 1739, 1745, 1750, 1753, 1775, 1776, 1779, 1782, 1783, 1791-1794, 1840, 1841, 1867, 1894, 1895, 1922, 1923, 1935, 1936, 1938, 1942, 1950-1957, 1969-1974, 1977–1982, 1984, 1985, 1987, 1988, 1991, 1992, 1995, 2008-2010, 2016, 2017, 2029, 2030, 2048, 2052-2055, 2064, 2067, 2072, 2073, and 2075-2080; and

- Communications between Spirit and third parties Computershare and Arconic: PLID_000662, 917, 1950-53.

(ECF No. 262, at 8 n.4, 9 n.5, 10 n.7, 10-11 n.9.)

Spirit opposes Lawson's motion. Spirit argues the documents Lawson identifies were appropriately redacted or withheld as attorney-client privileged or protected by the work-product doctrine. (ECF No. 282, at 4.) Spirit also contends that Lawson did not fulfill his obligations to meet and confer over some of the documents he seeks and some of the issues raised in his motion. (*See id.* at 3, 8, 11.)

## II. THE PARTIES EFFORTS TO MEET AND CONFER

As an initial matter, the court addresses the parties' efforts to meet and confer regarding the documents at issue in Lawson's motion. Pursuant to D. Kan. Rule 37.2, the court will not entertain a discovery motion "unless the attorney for the moving party has conferred or has made a reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion." *See also* FED. R. CIV. P. 37(a)(1) (requiring a motion to compel discovery to include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery"). "A 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party." D. KAN. RULE 37.2. "It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so." *Id.* The purpose of the local rule is to "encourage resolving discovery disputes without judicial involvement." *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999). The court examines the quantity and the quality of contacts between counsel to determine whether the moving party's efforts to confer are reasonable. *See id.*

Spirit contends that the parties did not adequately meet and confer regarding Lawson's challenges to communications not involving counsel or those copying counsel that allegedly do not involve legal advice, and did not confer at all regarding Lawson's challenges to communications involving Arconic. (*See* ECF No. 282, at 3, 8.) The record before the court

reveals the parties' efforts to confer as reflected in a letter Lawson sent to Spirit on December 31, 2019, to which Spirit responded on January 8, 2020. (*See* ECF No. 282-1 ¶ 12, at 3; ECF No. 262-1, at 6-11, 13-19.) Lawson's initial letter raises challenges as to documents where no lawyer is included on the communication or a lawyer is not providing legal advice. (ECF No. 262-1, at 9-10.) Lawson also challenged Spirit's claim of work-product protection over certain communications between Spirit and Arconic, but not the communications at issue in this motion. (*See id.* at 6-7.) Spirit responded to Lawson's challenges and also agreed to produce the Arconic documents that he identified. (*Id.* at 16-17.)

The parties' efforts to meet and confer regarding these issues did not satisfy the requirements of D. Kan. Rule 37.2. However, considering the motion on the merits will further the "just, speedy, and inexpensive determination" of this action because the parties have genuine disputes about whether the subject documents should be produced, and this case is at an advanced stage with the close of fact discovery rapidly approaching. The court will therefore exercise its discretion and address the merits of Lawson's motion. *See Wahlcometroflex, Inc. v. Westar Energy, Inc.*, No. 11-4017-EFM-JPO, 2011 WL 13237554, at *2 (D. Kan. Aug. 22, 2011) (electing to address the merits of a motion to compel "despite the fact that neither the letter nor the spirit of the meet-and-confer rules were satisfied"); *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, No. 07-2319-CM-DJW, 2009 WL 722056, at *2 (D. Kan. March 18, 2009) (waiving non-compliance with duty to confer to avoid further delay of resolution of the matter).

### III. ANALYSIS

Turning to the substance of Lawson's motion, the court begins with the applicable legal standards. Because this is a diversity case, state law governs attorney-client privilege. FED. R. EVID. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which

state law supplies the rule of decision."); *see also Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998) ("[S]tate law supplies the rule of decision on privilege in diversity cases."). In Kansas,[2] the attorney-client privilege is codified at KAN. STAT. ANN. § 60-426. Under the statute, with few exceptions, "communications found by the judge to have been between [a] lawyer and his or her client in the course of that relationship and in professional confidence, are privileged." *State v. Gonzalez*, 234 P.3d 1, 10 (Kan. 2010). The term "communication" includes "advice given by the attorney in the course of representing the client and . . . disclosures of the client to a representative, associate or employee of the attorney incidental to the professional relationship." KAN. STAT. ANN. § 60-426(c)(2). The party asserting attorney-client privilege bears the burden to establish that it applies. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010); *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 693 (Kan. 2000). This burden includes showing the privilege has not been waived. *See Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).

The court analyzes work-product protection under Federal Rule of Civil Procedure 26(b)(3). *See Frontier Ref.*, 136 F.3d at 702 n.10 ("Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3) . . . ."). That rule provides that a party ordinarily "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3). Like the attorney-client privilege, the

---

[2] The court previously found that Kansas law governs privilege in this case. *See Lawson v. Spirit AeroSystems, Inc.*, 410 F. Supp. 3d 1195, 1205 (D. Kan. 2019).

party asserting work-product protection must make a "clear showing" that it applies. *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007).

A. **Communications Allegedly Not Involving Legal Advice**

The first category of documents Lawson challenges are those involving attorneys for which, according to Lawson, Spirit's privilege logs "do not show that the attorney gave legal advice in the message or after receiving the message." (ECF No. 262, at 10.)

Not all communications involving attorneys are privileged. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995) ("[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege."). To be privileged, communications must be confidential and involve requesting or giving legal advice. *See* KAN. STAT. ANN. § 60-426. Legal advice must predominate; attorney-client privilege does not attach if legal advice is incidental to business advice. *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005). Further, underlying facts do not become privileged merely because they are conveyed between attorney and client. *Grand Jury Proceedings*, 616 F.3d at 1182.

With these principles in mind, the court has carefully reviewed the documents Lawson challenges on this basis *in camera*. Spirit properly withheld most of these documents as privileged and/or work product.[3] The court will, however, require Spirit to produce documents as follows:

- PLID_000424. Spirit withheld this entire document as privileged, but only the last communication in the email chain—the one sent at 11:05 a.m. on February 17, 2017—seems to involve legal advice being sought or rendered. Spirit must produce this document but may redact that communication.

---

[3] PLID_000009 contains redactions for information that do not relate to legal advice. Spirit also claims the redactions are protected work product, but the record lacks sufficient information to establish this claim. But, because the information redacted in this document is not relevant, the court will not require Spirit to reproduce this document without redactions.

- PLID_000639. Spirit produced this document with two redactions for information it contends is privileged and work product. The redaction to the June 17, 2016, email is improper because the record does not establish that the redacted information involves legal advice being sought or rendered or that the document was prepared (in 2016) in anticipation of litigation. Spirit must re-produce this document without redacting a portion of the 2016 email, but Spirit may redact the second email in the chain dated in 2018.

### B. Communications Between Non-Attorneys

The next category of documents Lawson challenges are communications between non-attorneys. Communications between non-attorneys may be privileged in certain circumstances. *See United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995) (communications with non-attorneys made for the purpose of assisting an attorney in rendering advice to the client may be privileged). "Management should be able to discuss amongst themselves the legal advice given to them as agents of the corporation with an expectation of privilege." *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000) (applying federal common law and finding interoffice memoranda relaying legal advice to operational employees privileged); *see also Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc.*, 63 F. Supp. 3d 558, 567 (E.D.N.C. 2014) (noting that privileged documents "may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately" (quotation omitted)); *Apsley v. Boeing Co.*, No. 05-1368-MLB-KMH, 2008 WL 5211001, at *1 (D. Kan. Dec. 9, 2008) ("[T]he attorney-client privilege is not lost merely because an employee conveys the legal communication to another employee for action."). Privilege may still be waived, however, if legal advice is discussed outside the group of employees "who have a need to know in the scope of their corporate responsibilities." *In re Vioxx Prod. Liab. Litig.*, 501 F. Supp. 2d 789, 796 (E.D. La. 2007); *see also Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 641-43 (D. Kan. 2006) (discussing the "need to know" test).

With these principles in mind, the court has carefully reviewed the documents Lawson challenges on this basis *in camera*. Spirit properly withheld most of these documents as privileged and/or work-product.[4] The court will, however, require Spirit to produce documents as follows:

- PLID_000965. Spirit withheld this email chain based on privilege and work product. The first four emails in this chain are not privileged or work product. Spirit must produce this document, but it may redact the communications sent at 10:34 a.m., 11:23 a.m., and 11:54 a.m. on October 9, 2017.

- PLID_001707, 1840, and 1894. Spirit withheld these documents based on attorney-client privilege, but these email chains do not discuss legal advice or provide information to counsel necessary to render legal advice. Spirit must produce these documents.

- PLID_001935 and 1936. Spirit redacted information from these documents based on attorney-client privilege. The record does not establish the redacted information was communicated to counsel in order to facilitate the rendition of legal advice other than the last sentence of the email at 7:47 a.m. on March 28, 2015. Spirit must therefore re-produce these documents and reduce the redaction to only the last sentence of that email.

**C.     Communications with Third Parties**

Lastly, Lawson seeks to compel isolated communications with two third parties. Generally, attorney-client privilege is waived when a client communicates with his or her attorney in the presence of a third party or voluntarily discloses privileged communications. *See State ex rel. Stovall v. Meneley*, 22 P.3d 124, 141-42 (Kan. 2001). Disclosing documents protected by the work-product doctrine to third parties "does not necessarily waive work-product protection." *Pipeline Prods., Inc. v. Madison Cos.*, No. 15-4890-KHV-ADM, 2019 WL 2106111, at *3 (D. Kan. May 14, 2019). Courts generally consider instead "whether the voluntarily disclosure was 'to an adversary or a conduit to an adversary[.]'" *Id.* (alteration in original). "[O]nly disclosures

---

[4] PLID_000952 and 954, and PLID_001969, 1971, and 1973 contain redactions for information that do not relate to legal advice. Spirit also claims work-product protection for PLID_000952, but the record lacks sufficient information to establish this claim. But, because the information redacted in these documents is not relevant to the claims or defenses in this lawsuit, the court will not require Spirit to reproduce these documents without redactions.

that are 'inconsistent with the adversary system' are deemed to waive work-product protection." *Id.* (quoting 2 EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 1286 (6th ed. 2017)). The party claiming waiver of work-product protection has the burden to establish waiver. *Johnson*, 191 F.R.D. at 643.

### 1. Computershare Communications

Spirit withheld two communications involving Computershare, a third party, based on attorney-client privilege and work product. (ECF No. 265, at 21, 26.) PLID_000662 is a March 2017 email chain involving Arnold & Porter Kaye Scholer LLP ("Arnold & Porter"), a law firm that "represented Spirit in, among other things, securities matters, including by preparing proxy statement filings for the Securities and Exchange Commission, and matters related to executive compensation and executive employment agreements." (*Id.* at 7 n.27.) After Arnold & Porter sent Spirit questions about Lawson's stock options, Spirit forwarded the inquiry to Computershare to get answers. Computershare is a vendor that Spirit uses to record and track Spirit stock options. (ECF No. 282, at 7.) PLID_000917 is an August 2017 email chain in which the same Spirit employee provided feedback to Computershare about Lawson's stock options.

Lawson argues these documents should be produced because Spirit has not established that Computershare was authorized to consult with Spirit's attorneys for the purpose of securing legal advice on Spirit's behalf. (ECF No. 262, at 8-9.) Spirit opposes, arguing that "communications involving a third-party are privileged where the communications were with the third-party agent of the client and those communications were necessary for the attorney to render sound and informed legal advice or were for the purpose of communicating counsel's legal advice to its agents." (ECF No. 282, at 7.) Spirit argues the Computershare communications are privileged

because they involve seeking information from Computershare to answer a question from counsel, or Spirit relaying instructions from counsel to Computershare. (*Id.*)

The court agrees with Spirit. "When disclosure to a third party is necessary for the client to obtain informed legal advice, courts have recognized exceptions to the rule that disclosure waives the attorney-client privilege." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991). For example, where a third party is an agent of the client, including that third party on a communication "will not destroy the attorney-client privilege." *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL-JPO, 2017 WL 2555834, at *6 (D. Kan. June 13, 2017); *see also Roe v. Catholic Health Initiatives Colo.*, 281 F.R.D. 632, 637 (D. Colo. 2012) ("The attorney-client privilege can extend to communications between representatives of the client or between the client and a representative of the client, if the communication was made in confidence for the primary purpose of obtaining legal advice."). Here, the record reflects that the communications with Computershare were necessary to facilitate Arnold & Porter's legal work for Spirit. They are therefore privileged.

Spirit also contends that the Computershare communications are protected by the work-product doctrine. PLID_000917 reflects Spirit's in-house counsel's legal advice and instruction and, in light of the date of these communications (August 9, 2017), appears to have been created in anticipation of litigation with Lawson. Lawson has not established that work-product protection was waived, as there is no indication in the record that Computershare was adverse to Spirit. To the contrary, as discussed above, Computershare is one of Spirit's vendors. As such, this document is also properly withheld as work product.

Lawson's motion is therefore denied with respect to these documents.

## 2. Arconic Communications

Lawson argues Spirit improperly redacted communications with Arconic as privileged. (ECF No. 262, at 9.) The documents Lawson identifies, PLID_001950-53, are all versions of the same email chain. Spirit's response states that it inadvertently redacted a communication between Spirit and Arconic—the initial email in the chain—in PLID_001950, 1951, and 1953. (ECF No. 282, at 8.) Spirit explains that it is re-producing these documents to mirror the redactions in PLID_001952. (*Id.* at 8 n.29.) PLID_001952 does not include the inadvertent redaction, but instead only has redactions for subsequent communications (not involving Arconic) between a Spirit employee and in-house counsel, as well as communications that Spirit contends consist of sharing that attorney's advice. (*Id.* at 8.) Therefore, the court denies Lawson's motion as moot with respect to the communications between Spirit and Arconic.

However, Lawson also challenges PLID_001950-53 on the grounds that Spirit improperly redacted communications not involving a lawyer. The court has carefully reviewed the remaining redactions *in camera* and finds that Spirit's redactions are proper.

The court has also reviewed PLID_001954-57, which are documents Spirit withheld as privileged, because they are versions of the same email chain as PLID_001950-53. Lawson challenges these documents on the basis that they are communications not involving a lawyer and were therefore improperly withheld. For consistency, the court orders Spirit to produce these documents, but Spirit may make redactions consistent with PLID_001952.

## IV. FURTHER *IN CAMERA* REVIEW

Lawson asks that the court order additional *in camera* review of Spirit's privilege logs if the court "determines that a significant portion of the documents that Spirit withheld or redacted

as privileged are not actually privileged." (ECF No. 262, at 13.) The court has found the opposite. No further *in camera* review is warranted at this time.

**IT IS THEREFORE ORDERED** that plaintiff Larry A. Lawson's Motion to Compel the Production of Non-Privileged Documents (ECF No. 261) is granted in part and denied in part. Spirit must produce the documents listed in Part III of this Memorandum and Order by **April 9, 2020**.

**IT IS SO ORDERED.**

Dated April 2, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge