## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LARRY A. LAWSON,                                    )
                                                    )
                            Plaintiff,              )
                                                    )
              v.                                    )          Case No. 18-1100-EFM-ADM
                                                    )
SPIRIT AEROSYSTEMS, INC.,                           )
                                                    )
                            Defendant.              )

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the court on defendant Spirit AeroSystems, Inc.'s ("Spirit") Motion for Protective Order and/or Motion to Quash.  (ECF No. 300.)  Plaintiff Larry A. Lawson ("Lawson") seeks to depose Thomas Gentile ("Gentile"), Spirit's President and CEO, and Robert Johnson ("Johnson"), Chairman of Spirit's Board of Directors.  Spirit asks that the court issue an order allowing Lawson to depose only one of these individuals.[1]  Spirit also asks that the court limit the deposition allowed "(i) to topics relevant to this dispute; (ii) to topics that are not cumulative or duplicative of testimony covered by other individual or 30(b)(6) witnesses; and (iii) to no more than four (4) hours on the record."  (*Id.* at 2.)  For the reasons discussed below, Spirit's motion is granted in part and denied in part.  The court will grant a protective order allowing Lawson seven hours total for these depositions, to be potentially divided between them as set forth below, depending on whether Spirit wishes to preserve the right to use Johnson as a witness in this case.  Spirit's motion is otherwise denied.

---

[1] Lawson also originally wanted to depose Charles Chadwell ("Chadwell"), a member of Spirit's Board of Directors.  Spirit's motion asks the court to limit Lawson to deposing either Gentile, Johnson, or Chadwell.  (ECF No. 300, at 2.)  Lawson's response states that he no longer seeks to depose Chadwell.  (ECF No. 309, at 4 n.1.)  Spirit's motion is therefore denied as moot with respect to Chadwell.

## I.      BACKGROUND

The background of this lawsuit is more thoroughly set forth in this court's prior orders, familiarity with which is presumed.  Highly summarized, Lawson is Spirit's former chief executive officer who retired on July 31, 2016.   His Retirement Agreement contained non-compete obligations for two years, until July 31, 2018.  In early 2017, Lawson engaged in business dealings with non-party investment firms Elliott Associates, L.P. and Elliott International, L.P. (collectively, "Elliott") to provide consulting services in connection with a proxy contest Elliott launched to replace five board members of Arconic, Inc. ("Arconic").  When Spirit learned about this, Spirit notified Lawson that his involvement with Arconic constituted a breach of his non-compete.   Spirit stopped paying Lawson and demanded that he repay what the company had already paid him under the Retirement Agreement.  Lawson disputes that he breached the non-compete.  He filed this lawsuit seeking to recover what he believes Spirit owes him.

Lawson previously filed a motion seeking leave to exceed the ten-deposition limit set forth in Fed. R. Civ. P. 30(a).  (*See* ECF No. 249.)  At that time, Lawson sought to take depositions of fourteen fact witnesses.  The court denied the motion and, in doing so, expressed no opinion as to which of the fourteen witnesses Lawson could depose so long as he did not exceed the ten-deposition limit.  *See Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 1285359, at *9 (D. Kan. Mar. 18, 2020).  But, in deciding whether Lawson had shown that more than ten depositions were warranted, the court addressed the parties' dispute over the necessity of Lawson deposing all three of Gentile, Johnson, and Chadwell.  *Id.* at *7.  Lawson contended that Gentile's deposition was necessary because he was "personally involved in Spirit's decision to breach [the Retirement Agreement] and in monitoring Elliott's proxy contest with Arconic, and he has knowledge of whether Arconic is a Spirit competitor and Spirit's relationship with Arconic."

*Id.* Lawson also argued that Johnson and Chadwell had knowledge about "Spirit's decision to breach the Retirement Agreement," and that Gentile, Johnson, and Chadwell all had conversations with Lawson or Elliott about Arconic. *Id.* On the record presented, the court found that "the testimony of Gentile, Johnson, and Chadwell would be unreasonably cumulative and duplicative with respect to each other, as well as with respect to other witnesses." *Id.* Spirit had already designated other witnesses to provide Rule 30(b)(6) testimony on Spirit's decisions with respect to payments to Lawson and vesting of his shares, whether Arconic competes with Spirit, and Spirit and Arconic's relationship. *Id.* The court also pointed out that the parties do not dispute that Spirit stopped making payments to Lawson under the Retirement Agreement, so it was unnecessary to have multiple witnesses testify to that fact. *Id.*

In response to Lawson's motion, Spirit had requested that the court "not permit Lawson to depose more than one of Messrs. Gentile, Johnson, or Chadwell." *Id.* at *7 n.1. But the court denied Spirit's request for relief at that procedural juncture because Spirit made the request in a response brief, which was improper. *Id.* Also, as explained above, in denying Lawson's motion to take more than ten depositions, the court did not make any determination as to which of the fourteen witnesses Lawson could depose. The court therefore granted Spirit leave to file a motion for a protective order if Lawson continued to seek the depositions of Gentile, Johnson, and Chadwell. *Id.*

After Lawson received the court's order denying him leave to exceed the ten-deposition limit, he informed Spirit that he still intended to depose all three of Gentile, Johnson, and Chadwell. (ECF No. 301-1, at 3.[2]) Spirit therefore filed the instant motion, asking the court to allow Lawson

---

[2] Lawson stated that he would be willing to forgo deposing Chadwell if Spirit would make both Gentile and Johnson available for depositions. (ECF No. 301-1, at 3.) But, as noted *supra*,

to depose only one of those individuals for four hours and to require that the deposition cover only non-cumulative/non-duplicative topics that are relevant to this dispute.  (*See* ECF No. 300, at 2.) Spirit argues that the depositions Lawson seeks are "cumulative and duplicative of one another and/or other individual and 30(b)(6) witness testimony, and/or are irrelevant to this dispute."  (*Id.* at 3.)  Spirit also argues that "Lawson's attempt to seek testimony from . . . these witnesses is annoying, oppressive, unduly burdensome, and causes unnecessary expenses."  (*Id.*)

In response, Lawson contends that he should be allowed to depose both Gentile and Johnson because they are percipient fact witnesses who directly interacted with Lawson concerning the contracts at issue and were directly involved in Spirit's decisions with respect to those contracts.  (ECF No. 309, at 4.)  According to Lawson, other witnesses have "at best second-hand knowledge of the matters in dispute."  (*Id.*)  Lawson also argues that "Spirit cannot be permitted to shield two witnesses it will likely call at trial."[3]  (*Id.*)

## II.   LEGAL STANDARDS

The court may grant a protective order to limit discovery under Rule 26(c)(1).  Under that rule, the court may, for good cause, issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  "The 'good cause' standard of Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise."  *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (internal quotation marks omitted).  "Rule 26(c) confers broad discretion on the trial court to decide when

---

after Spirit filed the current motion, Lawson took the position in his response that he no longer seeks to depose Chadwell.  (ECF No. 309, at 4 n.1.)

[3] Lawson also briefly argues that Spirit's motion should be denied for failing to adequately meet and confer.  (ECF No. 309, at 10.)  But this motion is related to Lawson's Motion for Additional Depositions, which was filed after the parties reached an impasse on various deposition-related issues, including the one that is now again before the court.  The court will therefore not deny Spirit's motion for failure to meet and confer.

a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).  In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery.  FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change discovery's scope but clarified it, and therefore *Oppenheimer* still applies).  In evaluating proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

Rule 26(b)(2)(C) requires that the court "limit the frequency or extent of discovery" if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  This rule incorporates the Rule 26(b)(1) proportionality standard, which the court should always

consider in resolving discovery disputes.  FED. R. CIV. P. 26 advisory committee's notes to the 2015 amendment (court has a "responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes"); *see, e.g.*, *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010) ("Fed. R. Civ. P. 26(b)(2)(C) cautions that all permissible discovery must be measured against the yardstick of proportionality.").

## III.    ANALYSIS

Lawson seeks to depose Gentile and Johnson, both of whom Spirit listed as witnesses in its Rule 26(a)(1) initial disclosures.  (ECF No. 309, at 6.)  Spirit states that it may rely on Gentile's testimony at trial.  (*Id.*)  Lawson contends that Gentile has personal knowledge of Spirit's "Business," Spirit's competitive concerns regarding Arconic, Lawson's request for a waiver with respect to his noncompete obligations, and the proxy contest between Elliott and Arconic.  (*Id.* at 8-9.)  He argues that Gentile has unique, non-duplicative knowledge on these subjects and points to a conversation Gentile had with Arconic's CEO, which Lawson believes concerned him, as well as Gentile's direct correspondence with Elliott.  (*Id.* at 9.)  Lawson also states that Gentile directed Spirit's efforts to expand its third-party fabrication business, which Spirit contends overlapped with Arconic's business.  (*Id.*)  Lawson argues that it would be less burdensome to depose Gentile regarding these efforts than each of the Spirit employees whom he directed.  (*Id.*)

Lawson seeks to depose Johnson about conversations he had with or about Lawson, as well as the actions of two committees Johnson was a member of: Spirit's Compensation Committee and Corporate Governance and Nominating Committee.  (*Id.* at 6.)  Lawson states that Johnson was involved in negotiating Lawson's Employment Agreement and Retirement Agreement and communicated with Lawson about these agreements.  (*Id.* at 7-8.)  Lawson contends that testimony about these topics is relevant to the meaning of his noncompete and what activities he could

participate in after he retired from Spirit.  (*Id.*)  Lawson also states that testimony regarding the committees' discussions is "crucial to this case because [the committees] approved Lawson's Employment and Retirement Agreements, enhanced severance package, and Spirit's decision to terminate payments."  (*Id.* at 7.)  In addition, Lawson believes that such testimony is relevant to showing that "[Spirit's] Board knew that Spirit and Arconic are not in the same Business and its decision to breach [Lawson's Retirement Agreement] was . . . an effort to save money by not paying Lawson what he was due."  (*Id.* at 8.)  Lawson argues that deposing Johnson is less burdensome than seeking to depose separate directors from each committee.  (*Id.* at 7.)

Spirit argues that a protective order is necessary primarily based on the arguments it made in opposing Lawson's motion for additional depositions.  *See Lawson*, 2020 WL 1285359, at *7. Spirit contends that testimony from both Gentile and Johnson would be "cumulative and duplicative of other individual and 30(b)(6) witnesses and each other."  (ECF No. 301, at 5.)  Spirit points out that Ron Rabe is already set to provide Rule 30(b)(6) testimony regarding Spirit and Arconic's relationship and whether Arconic is in the same "Business," as well as testimony in his individual capacity.  (*Id.* at 5-6.)  Lawson has also already deposed Wendy Crossman on Spirit's relationship with Arconic under Rule 30(b)(6) and in her individual capacity.  (*Id.* at 6.)

Spirit further argues that Gentile's and Johnson's testimony regarding conversations with Lawson, conversations with Elliott, and "'Spirit's decision to breach' the Retirement Agreement" is irrelevant, as well as cumulative and duplicative.  (*Id.* at 7-8.)  Spirit states that testimony on the terms of a written agreement is unnecessary, and testimony regarding discussions outside of written terms is irrelevant because Lawson has not argued his Retirement Agreement is ambiguous.  (ECF No. 328, at 2-3.)  Spirit also again reiterates—as the court has previously recognized—that the intent of the party who allegedly breached a contract is irrelevant to a breach

of contract claim.  (ECF No. 301, at 7.)  And Spirit points out that Samantha Marnick will be

providing Rule 30(b)(6) testimony on topics relating to Spirit's decisions with respect to payments

and vesting of shares under the Retirement Agreement, as well as testifying in her individual

capacity.  (*Id.*)

     Spirit characterizes Gentile's and Johnson's depositions as "apex depositions."  (*Id.* at 4.)

Under the "apex doctrine," courts may "provide[] some protection from depositions to high-level

executives and government officials."  *Tierra Blanca Ranch High Country Youth Program v.*

*Gonzales*, 329 F.R.D. 694, 696 (D.N.M. 2019), *objections overruled*, No. 215CV00850KRSGBW,

2019 WL 1487241 (D.N.M. Apr. 4, 2019).  "The doctrine recognizes that depositions of high-level

officers severely burden those officers and the entities they represent, and that adversaries might

use this severe burden to their unfair advantage."  *Id.* (quoting *United States ex rel. Galmines v.*

*Novartis Pharm. Corp.*, No. CV 06-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015)).

     The Tenth Circuit has not addressed the apex doctrine, but district courts within the Tenth

Circuit have adopted different versions of the doctrine.  *See id.*  Some courts do not apply any

special test for apex depositions but do consider factors that may be applicable when the deponent

is a high-level executive.  *See Van Den Eng v. Coleman Co.*, No. 05-MC-109-WEB-DWB, 2005

WL 3776352, at *2 (D. Kan. Oct. 21, 2005).  Other district courts may

> protect a high level corporate executive from the burdens of a
> deposition when any of the following circumstances exist: (1) the
> executive has no unique personal knowledge of the matter in
> dispute; (2) the information sought from the executive can be
> obtained from another witness; (3) the information sought from the
> executive can be obtained through an alternative discovery method;
> or (4) sitting for the deposition is a severe hardship for the executive
> in light of his obligations to his company.

*Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-CV-01528-REB-KLM, 2011 WL 2535067, at

*1 (D. Colo. June 27, 2011); *see also Tierra Blanca*, 329 F.R.D. at 697 (adopting the *Naylor*

approach to the apex doctrine).  Under this approach, the party "seeking to depose an executive bears an initial burden of making some showing that the executive has 'unique personal knowledge' of some relevant issues," after which "the burden shifts to the executive to demonstrate by evidence that he in fact has no unique personal knowledge or that there exists one of the other three circumstances under which requiring him to sit for a deposition is inappropriate." *Tierra Blanca*, 329 F.R.D. at 697-98 (quoting *Naylor*, 2011 WL 2535067, at *1-*2).

The court does not find it necessary to determine whether the apex doctrine should apply and, if so, which variation of that doctrine.  Suffice it to say that the principles discussed by courts analyzing the apex doctrine are useful to determining whether a protective order is appropriate here.  It is undisputed that both Gentile and Johnson are high-level executives who also have personal knowledge about certain issues in the case.  But, as Spirit points out, much of the information Lawson seeks from Gentile and Johnson will be obtained through other witnesses, particularly Rule 30(b)(6) witnesses who have been designated on Spirit's behalf to provide institutional knowledge.  Lawson argues that Gentile and Johnson have unique knowledge on certain topics—mainly, negotiating Lawson's agreements with Spirit, conversations regarding Lawson's potential service on Arconic's board, and discussions of Spirit's board committees relating to Lawson.  But these topics are tangential to the parties' dispute.  The parties' negotiations resulted in written agreements, and Lawson has not claimed those agreements are ambiguous such that extrinsic evidence is required to interpret them.  And, as the court has stated several times before, it is undisputed that Spirit, as a corporation, took the position that Lawson's actions with respect to Arconic constituted a breach of his noncompete.  The views of specific individuals on that topic are of "marginal (if any) relevance." *Lawson*, 2020 WL 1285359, at *7.

Ultimately, the court finds that Spirit has demonstrated that an order limiting Lawson from conducting full depositions of both Gentile and Johnson is warranted. Depositions of these high-level executives inherently involve more burden to Spirit than if they were regular employees. And much of the information Lawson seeks from Gentile and Johnson is unreasonably cumulative, duplicative, and/or of marginal relevance. Under these circumstances, where the depositions at issue have little apparent utility with respect to the claims and defenses in this litigation and appear to be largely duplicative of subject matter that will be covered by other Spirit Rule 30(b)(6) designees and witnesses, these depositions risk being unnecessarily burdensome and harassing. However, this is not a case in which Lawson unilaterally decided to depose these high-level executives out of the blue. After all, Spirit disclosed both Gentile and Johnson as witnesses it may use to support its claims or defenses, and Spirit named Gentile as a witness from whom it will seek or provide testimony regarding its assertion that Spirit and Arconic were in the same "Business." (ECF No. 315, at 17, 60-61.) The court will therefore allow Lawson seven hours total for these depositions, to be potentially divided between them as set forth below, depending on whether Spirit wishes to preserve the right to use Johnson as a witness in this case.

Spirit also asks that the court limit the deposition(s) "(i) to topics relevant to this dispute; (ii) to topics that are not cumulative or duplicative of testimony covered by other individual or 30(b)(6) witnesses; and (iii) to no more than four (4) hours on the record."  (ECF No. 300, at 2.) Relevance is not an appropriate deposition objection. *See* FED. R. CIV. P. 32(d)(3)(A) (stating that an objection to testimony's relevance "is not waived by a failure to make the objection before or during the deposition"); *see also Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("It is inappropriate to instruct a witness not to answer a question on the basis of relevance."); *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 700 (S.D. Fla. 1999)

("It is arguable whether objections based on relevancy should even be made during the deposition. . . . [I]f counsel feels that he must make a relevancy objection, the objection should briefly be made for the record, and the deposition should continue with the testimony being taken subject to the objection."); *Kingston v. Nelson*, No. 2:04-CV-00156-DB-PMW, 2007 WL 2985046, at *6 (D. Utah Oct. 11, 2007) ("[R]elevance is an issue to be determined by the court when evidence is sought to be admitted, not by the parties during a deposition."). The court will therefore not impose a relevance limitation. But, if Lawson strays too far afield from the subject matter of this dispute such that it appears the deposition is being used for an improper purpose, Spirit may move to terminate the deposition. FED. R. CIV. P. 30(d)(3)(A) (providing that a party "may move to terminate or limit [a deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party").

The court also will not limit the scope of the deposition(s) to "topics that are not cumulative or duplicative." Generally, a party is entitled to explore a fact witness's knowledge within the bounds of the Federal Rules. The generically worded limitation Spirit requests would, as a practical matter, be too difficult for the court to parse through and enforce. The time limitation the court is imposing should provide sufficient protection against unreasonably cumulative and duplicative discovery. *See, e.g.*, *In re Engle Cases*, No. 309CV10000J32JBT, 2012 WL 12905600, at *2 (M.D. Fla. Apr. 25, 2012) (adopting time limits for depositions to prevent cumulative and duplicative discovery).

As discussed above, the court is allowing Lawson seven hours of deposition time total, and therefore Spirit's request to limit any deposition to four hours is denied. However, the court will order that the seven hours of deposition time be divided (if at all) as follows. First, Spirit shall promptly notify Lawson whether Spirit wishes to preserve the right to use Johnson as a witness in

this case—*e.g.*, whether on summary judgment or at trial.  If Spirit *does not* preserve the right to use Johnson as a witness, then Lawson may depose Gentile only.  If Spirit *does* preserve the right to use Johnson as a witness, then Lawson may depose both Gentile and Johnson.  But, either way, Lawson is limited to a collective total of seven hours of deposition time for the reasons stated above.  The court will allow Lawson latitude to depose both because these are high-level executives and, to the extent Spirit may call them as trial witnesses, as a practical matter Lawson needs to be able to depose them in advance in order to prepare to cross-examine them at trial effectively and efficiently.  Allowing Lawson to depose them will therefore streamline the presentation of the evidence at trial and facilitate the "just, speedy, and inexpensive" determination of this action.  FED. R. CIV. P. 1.  If Lawson elects to depose both witnesses, Lawson shall notify Spirit at least five business days in advance of the first of these depositions as to how Lawson will allot the time between them.

**IT IS THEREFORE ORDERED** that defendant Spirit AeroSystems, Inc.'s Motion for Protective Order and/or Motion to Quash (ECF No. 300) is granted in part and denied in part as detailed herein.

**IT IS SO ORDERED.**

Dated April 16, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge