IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LARRY A. LAWSON,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**SPIRIT AEROSYSTEMS, INC.,**<br><br>        **Defendant.** | Case No. 6:18-cv-01100-EFM-ADM |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
APPLICATION FOR TAR EXPENSES**

## **MEMORANDUM**

In connection with e-Discovery in this case, Spirit collected, processed, and hosted 1,757,727 files belonging to ten Spirit executives selected by Lawson, ran multiple rounds of search terms proposed by Lawson, conducted three sampling exercises, and conferred with Lawson and the Court numerous times.[1] Knowing that the responsiveness of the data at issue was likely to be between only 0.5% to 15%,[2] the TAR process would cost hundreds of thousands of dollars, costs ultimately could be shifted to Lawson, and that Spirit had and would continue to proceed with discovery outside the TAR process, Lawson nevertheless directed Spirit to begin its TAR of 322,425 documents (the "TAR Data Set") in late September 2019. (Dkt.136-15 at 1) The Court ordered document production to be substantially completed by December 6, 2019. (Dkt. 169) To complete TAR of 322,425 documents in just over two months as required by the Court, Spirit increased its document review team by expanding the number of contract reviewers at Legility, and enlisting additional attorneys with Foulston Siekin and Arcadi Jackson to conduct a second level document review and manage the TAR process.

At the Court's invitation (Dkt. 128), Spirit filed its Motion to Shift Costs (Dkt. 133) in October 2019. The Court determined that "good cause warrants allocating the TAR expenses to Lawson to protect Spirit from undue burden and expense." (Dkt. 372 at 20) The Court granted Spirit's Motion to Shift Costs in full, but did not determine a specific dollar amount that Lawson would be required to pay to Spirit. (Dkt. 372 at 45) The Court noted the numerous ways in which Lawson's conduct frustrated and prolonged the e-Discovery and TAR process, and forced Spirit

---

[1] *See* Dkt. 240 at 1-2. Spirit also spent hundreds of thousands of dollars in document discovery activities completely outside of the sampling exercises and TAR process. *See* Declaration of Ann Marie Arcadi ("Arcadi Dec.") submitted herewith at ¶ 29. Additionally, Spirit spent approximately $140,000 in connection with three sampling exercises that preceded TAR (*see* Dkt. 134 at 2), but Spirit is not at this time seeking reimbursement for the same.
[2] S*ee* Dkt. 134 at 1.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF APPLICATION FOR TAR EXPENSES - Page 1**

to incur unnecessary expense.[3] And, in previously denying Lawson's Motion to Compel (Dkt. 226), the Court stated that Lawson's "lack of reasonableness throughout the pendency of this case borders on the abusive." (Dkt. 335 at 18)

As required by the Order, on June 25, Spirit served a detailed notice informing Lawson of the TAR-related fees and expenses Spirit incurred and is seeking from him.[4] On June 30, Lawson responded and requested documentation supporting these amounts.[5] The parties telephonically conferred on July 2, but were unable to reach an agreement.[6] On July 3, Lawson filed a Motion to Reconsider the Order (Dkt. 382), despite not conferring with Spirit's counsel regarding the same.[7] Also on July 3, Spirit provided Lawson with the requested documentation to support its TAR-related fees and expenses, and provided an updated calculation of the amount it seeks.[8] Specifically, Spirit provided Lawson with approximately **240 pages** of redacted invoices and statements from Arcadi Jackson, Foulston Siefkin, and Legility, containing detailed descriptions of the work performed and substantiating the amounts Spirit seeks from Lawson.[9]

Lawson responded to this detailed information on July 7, asking for yet more information relating to the TAR process (including the number of documents reviewed by Spirit's first level review team, the number of documents reviewed by Spirit's second level review team, whether

---

[3] *See, e.g.,* Dkt. at 372 at 37 ("[Lawson] unilaterally selected five custodians Spirit had never identified as key ESI custodians and who apparently did not have enough relevant documents to even warrant deposing them. And he continued to pursue unnecessarily broad search terms despite the court's admonition at the April 2019 hearing."); 41 ("And, Lawson prolonged the TAR when Spirit wanted to cease review at a 65% recall rate but Lawson insisted that Spirit continue to an 80% recall rate. All of this drove up TAR expenses."); 44 ("On September 17, the court warned Lawson that it was inclined to allow the parties to proceed with TAR with Lawson bearing the TAR costs."); 45 ("Because Lawson is the party that wanted to proceed with the TAR process at a point in time when it was disproportional to the needs of the case, the court will allocate the TAR expenses to Lawson to protect Spirit from undue burden and expense.").
[4] *See* Exhibit 1 to the Declaration of Ann Marie Arcadi, submitted herewith ("Arcadi Dec.").
[5] *See* Exhibit 2 to the Arcadi Dec.
[6] *See* Arcadi Dec. at ¶ 8.
[7] The Court denied Lawson's Motion to Reconsider on July 6, 2020 (Dkt. 383).
[8] *See* Exhibit. 3 to the Arcadi Dec.
[9] *See id.*

**DEFENDANT'S MEMORANDUM IN SUPPORT OF APPLICATION FOR TAR EXPENSES - Page 2**

any higher levels of review were performed, and if so, how many documents were reviewed in such higher levels).[10] Lawson also suggested that the parties seek an extension of the briefing schedule and continue to meet and confer regarding this issue.[11] Spirit declined Lawson's request for further details or an extension of the briefing schedule, in part, because Spirit had already fully complied with the Court's directives in the Order (and then some) by conferring with Lawson's counsel by phone and letter and by spending a significant amount of time preparing over two hundred pages of redacted invoices for Lawson's review.[12] The evening of July 9, Lawson sent Spirt another letter, claiming that he does "not believe the expenses that Spirit is requesting are reasonable."[13] To date, Lawson has not offered to pay a single dollar to Spirit in connection with the TAR-related expenses. Spirit accordingly seeks relief from the Court as contemplated by the Order.

A.   The Hourly Rates of Spirit's Counsel are Reasonable[14]

When evaluating hourly rates, a court often begins by determining "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time."[15] The hourly rate should be based on the lawyers' skill and experience in the relevant practice area, and the "quality of the lawyer's performance in the case should also be considered in placing a value on his or her services." *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983). In considering other attorneys' rates, a court should do so "in light of the rates charged

---

[10] *See* Exhibit 4 to the Arcadi Dec.
[11] *See* Exhibit 4 and Exhibit 5 to the Arcadi Dec.
[12] Additionally, the information requested by Lawson would likely cause Spirit to incur additional fees and engage in tangential and unnecessary "discovery."
[13] *See* Exhibit 6 to the Arcadi Dec.
[14] Spirit incorporates by reference herein the Arcadi Dec. and the Declaration of Jeff DeGraffenreid ("DeGraffenreid Dec."), submitted herewith.
[15] *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 404 F. Supp.2d 1281, 1286 (D. Kan. 2005) (quoting *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998)).

by other attorneys with comparable skill, experience, and reputation in the locations in which [the moving attorneys] practice." *Swisher v. United States*, 262 F. Supp. 2d 1203, 1212 (D. Kan. 2003).

The hourly rates for attorneys and staff in Dallas, Texas with skills, experience, and reputations comparable to those of the relevant Arcadi Jackson attorneys and staff are between $500-$750 for Partners, $300-600 for Associates and Of Counsel, and $150-$250 for Paralegals.[16] The hourly rates for attorneys in Kansas and Sedgwick County with skills, experience, and reputations comparable to those of the relevant Foulston Siefkin attorneys are between $150-$350 per hour for associates and $250-$650 per hour for partners.[17] The fees charged by Arcadi Jackson and Foulston Siefkin, as set forth in the Arcadi Dec. and DeGraffenreid Dec.,[18] are reasonable when compared with rates for attorneys and staff with similar experience and qualifications, and are "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Theno*, 404 F. Supp. at 1286.

The reasonableness of the rates of Spirit's counsel is also supported by other facts, including the importance of the litigation to Spirit and the complexity of and amount in controversy in the case—after all, this is a case brought by Spirit's former CEO, who seeks tens of millions of dollars in damage, and involves a violation of the restrictive covenant within his Retirement Agreement. The quality of Spirit's counsel's performance is reflected in the repeated victories in motion practice obtained by Spirit's counsel.[19] The reasonableness of the rates is also evidence by

---

[16] Arcadi Dec. at ¶ 17.
[17] DeGraffenreid Dec. at ¶ 9.
[18] *See* DeGraffenreid Dec. at ¶¶ 8-9; Arcadi Dec. at ¶¶ 14-17.
[19] *See, e.g.,* Dkt. 372 (granting Spirit's motion to shift costs); Dkt. 367 (granting Spirit's motion to compel full compliance and denying Arconic's motion to quash); Dkt. 335 (denying Lawson's motion to compel re additional TAR); Dkt. 296 (denying Lawson's motion for additional depositions); Dkt. 284 (denying Lawson's motion to compel clawed back documents); Dkt. 254 (denying Lawson's second motion to compel); *see also Ramos*, 713 F.2d at 555 (stating the quality of counsel's performance is relevant the value of his services).

**DEFENDANT'S MEMORANDUM IN SUPPORT OF APPLICATION FOR TAR EXPENSES - Page 4**

Spirit's agreement to pay them.[20]

B.  Lawson Should Be Required to Compensate Spirit for TAR-Related Fees Paid to Arcadi Jackson

Spirit has paid Arcadi Jackson $172,871.50 in TAR-related fees, as follows:[21]

| Description | Expenses Incurred by Spirit |
|---|---|
| Arcadi Jackson's TAR-related fees | $116,440.50 |
| Arcadi Jackson's fees in connection with the Motion to Shift Costs and Reply | $32,821.00 |
| Arcadi Jackson's fees in connection with response to "Motion to Compel the Production of Responsive Documents" (Dkt. 226) | $16,205.50 |
| 50% of Arcadi Jackson's fees in connection with response to "Motion to Compel the Production of Non-Privileged Documents" (Dkt 261) | $7,404.50 |
| **TOTAL** | **$172,871.50** |

Spirit paid Arcadi Jackson $116,440.50 in fees for its attorneys to provide a second-level review of TAR documents prior to production and associated activities. Spirit also paid Arcadi Jackson $32,821.00 in connection with preparing the Motion to Shift Costs and Reply in Support, and $23,601.00 in connection with Spirit's Responses to two TAR-related motions filed by Lawson (Dkt. 226 and Dkt. 261). All of these costs directly relate to and were caused by Lawson's insistence on moving forward with the TAR process despite knowing in advance that the expected responsiveness rate likely would be in the low single digits, the cost would be substantial and could

---

[20] *Cintas Corp. v. Perry*, 494 F. Supp. 2d 907, 908 (N.D. Ill. 2007), *aff'd,* 517 F.3d 459 (7th Cir. 2008). Finally, the hourly rates charged to Spirit are comparable to those awarded previously in this District. *See Hapka v. Carecentrix, Inc.*, Case No. 2:16-cv- 02372-KGG (D. Kan. Feb. 15, 2018) (finding $645-$865/hour for partners and $375-$475/hour for associates reasonable for complex litigation in the Kansas City area); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017) (hourly rate of $600 of was reasonable); *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) (concluding New York and San Francisco counsel's higher rates than typical in the forum location, Denver, were reasonable); *Reazin v.Blue Cross & Blue Shield of Kansas, Inc.*, 663 F. Supp. 1360, 1453-54 (D. Kan. 1987)); *see also* Arcadi Dec. at ¶ 16; DeGraffenreid Dec. at ¶ 7.

[21] Redacted copies of Arcadi Jackson's invoices for the TAR-related fees for which Spirit seeks reimbursement from Lawson are attached as Exhibit C to <u>Exhibit 3</u> of the Arcadi Dec.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF APPLICATION FOR TAR EXPENSES - Page 5**

be shifted by the Court to him. Lawson should be ordered to pay Spirt for the $172,871.50 that Spirit paid to Arcadi Jackson in connection with TAR.

C.      Lawson Should Be Required to Compensate Spirit for TAR-Related Fees Paid to Foulston Siefkin

Spirit has paid Foulston Siefkin $163,556.00 in TAR-related fees, as follows:[22]

| Description | Expenses Incurred by Spirit |
|---|---|
| Foulston Siefkin's TAR-related fees | $109,217.26 |
| Foulston Siefkin's fees in connection with the Motion to Shift Costs and Reply | $5,654.69 |
| Foulston Siefkin's fees in connection with the TAR privilege log | $42,481.25 |
| Foulston Siefkin's fees in Dec 2019-Jan 2020 in connection with related briefing | $6,202.80 |
| **TOTAL** | **$163,556.00** |

Spirit paid Foulston Siefkin $109,217.26 for its attorneys to provide a second-level review of TAR documents prior to production and associated activities. Spirit also paid Foulston Siefkin $42,481.25 in connection with preparation of the TAR privilege log, $5,654.69 in connection with preparing the Motion to Shift Costs and Reply in Support, and $6,202.80 in connection with Spirit's Responses to two TAR-related motions filed by Lawson (Dkts. 226 & 261). All of these costs directly relate to and were caused by Lawson's insistence on moving forward with the TAR process despite knowing in advance that the expected responsiveness rate would be in the low single digits, and the costs would be substantial and could be shifted by the Court to him. Lawson should be ordered to pay Spirit for the $163,556.00 paid to Foulston in connection with TAR.

D.      Lawson Should Be Required to Compensate Spirit for TAR-Related Fees Paid to Legility[23]

---

[22] Redacted copies of Foulston Siefkin's invoices for the TAR-related fees for which Spirit seeks reimbursement from Lawson are attached as Exhibit B to Exhibit 3 of the Arcadi Dec.

[23] Spirit incorporates by reference herein the Declaration of Jeff Stoneking ("Stoneking Dec."), submitted herewith.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF APPLICATION FOR TAR EXPENSES - Page 6**

Spirit has paid (or will pay) Legility $455,272.71 in TAR-related fees, as follows:

| **Description** | **Expenses Incurred by Spirit** |
|---|---|
| Legility's TAR-related fees for document review team | $216,252.00 |
| Legility's TAR-related fees for data processing/hosting/user fees/near line data/productions (including hosting fees through December 2020)[24] | $171,999.15 |
| Legility's project management fees for TAR | $67,021.56 |
| **TOTAL** | **$455,272.71** |

Legility's TAR-related fees for its document review team totaled $216,252.00, which included work by Legility's managed review team members, team leads, and project managers, averaging $64 per hour.[25] Legility's project management fees for the TAR project were $67,021.56.[26] Legility's data processing, data hosting, user fees, near line data fees, and production fees for TAR-related data are $171,999.15.[27] These fees are **TAR-related only**, and are in addition to Legility's fees to Spirit for non-TAR related matters in this lawsuit.[28] These fees are reasonable and customary in the industry.[29]

E.   Lawson's Stated Reasons for Declining to Pay Spirit Lack Merit

---

[24] This amount includes Legility's TAR-related fees for data hosting through December 2020 (at the rate of $7,764.73 per month). *See* Stoneking Dec. at ¶ 14.

[25] *See* Stoneking Dec. at ¶¶ 8-9; *see also LaSelle v. Pub. Serv. Co. of Colorado*, 988 F. Supp. 1348, 1352 (D. Colo. 1997) (finding that contract attorneys' hourly rate of $90 to perform "routine legal duties" was reasonable); *United Supreme Council v. United Supreme Council of Ancient Accepted Scottish Rite for 33 Degree of Freemasonry*, No. 1:16-CV-1103, 2019 WL 3848784, at *2 (E.D. Va. Aug. 15, 2019) (finding that hourly rate of $80 an hour was reasonable for contract attorneys conducting document review); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 399 (S.D.N.Y. 2013) (finding that hourly rate of $200 for contract attorneys performing document review was reasonable).

[26] *See* Stoneking Dec. at ¶ 18.

[27] *See id.* at ¶¶ 14-15.

[28] *Id.*

[29] *See id.* at ¶ 20.

In his July 9 letter, Lawson provides several meritless reasons for his refusal to pay Spirit.[30] Lawson claims that counsel for Spirit's use of "block billing" and "unreasonably vague" time entries made it difficult to determine whether the time billed was reasonable or related to TAR.[31] However, the vast majority of attorney time for which Spirit seeks compensation from Lawson was simply not block billed, as is evident from the invoices of Arcadi Jackson and Foulston Siekfin.[32] Indeed, the vast majority, if not all, of the TAR document review time was not block billed.[33] Regardless, block billing itself does not warrant reduction or denial of fees.[34] Moreover, Lawson cannot decline to pay Spirit simply because he personally believes certain time entries are "vague" or "unreasonable." Additionally, Spirit's counsel reviewed every time entry for which Spirit seeks reimbursement from Lawson, and identified as proper for seeking reimbursement only those entries or **portions of entries** that related to TAR and are contemplated by the Order.[35]

Lawson also takes issue with "the pace" of Legility's TAR review, Legiliy's rates, and the use of "senior attorneys" in connection with TAR. This is a red herring. Lawson apparently thinks that he, his e-Discovery vendor, or other unrelated lawsuits are the barometer of the appropriate pace of review of Spirit's documents in this lawsuit. There is no universal standard for the number of documents reviewed per hour. And, obviously, the pace of a document review depends on the types of documents being reviewed.[36]

Here, Lawson sought discovery regarding the most sensitive and confidential information belonging to Spirit, including but not limited to its customer contracts and customer relationships,

---

[30] Arcadi Dec., Exhibit 6.
[31] Arcadi Dec., Exhibit 6 at 1-2.
[32] *See* Arcadi Dec. at Exhibit C to Exhibit 3; DeGraffenreid Dec. at Exhibit 1.
[33] Aracdi Dec. at ¶ 27.
[34] *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000).
[35] Arcadi Dec. at ¶ 27; DeGraffenreid Dec. at ¶¶ 6-7.
[36] *See Brown v. Barnes & Noble, Inc.*, No. 116CV07333RAKHP, 2019 WL 7168146, at *3 (S.D.N.Y. Dec. 23, 2019) (observing that "the rate of review can vary considerably based on the complexity of the documents").

pending M&A transactions, communications and presentations to the Board of Directors, sales, purchases, and manufacturing information regarding numerous aerostructures and aircraft components, and bids, proposals, and competitive analyses. And, the 322,425 documents at issue, which were taken from the files of Spirit's most senior executives (including its CEO) per Lawson's selection, contained numerous lengthy presentations, multi-sheet Excel spreadsheets with sensitive financial data, technical data, specifications, and information, confidential information belonging to Spirit's customers and/or subject to non-disclosure agreements, and highly sensitive business and strategy information. Over 2,000 documents located through TAR were privileged, and therefore required a heightened privileged review, logging, and/or redaction. In addition to reviewing each page of each document for responsiveness, confidentiality, and privilege, Spirit's counsel was required to review each page of each document for information that could be subject to International Traffic in Arms Regulations ("ITAR").[37] In light of the custodians Lawson chose, the highly-sensitive nature of the documents Lawson sought, and the compressed time-frame within which Spirit was required to substantially complete TAR production, Spirit determined that utilizing attorneys most familiar with Spirit's documents, custodians, and business (including certain outside counsel who were most familiar with the case), would be the most efficient and cost-effective way to proceed with the second-level review of documents.[38]

Lawson also claims that Spirit would have incurred Legility's hosting and user fees regardless of TAR, therefore he should not have to pay for those expenses. Once again, Lawson is

---

[37] ITAR is a United States regulatory regime to restrict and control the export of defense and military related technologies to safeguard U.S. national security and further U.S. foreign policy objectives. Spirit was required to take reasonable steps to identify documents that may contain controlled data, and mark such documents accordingly prior to production. *See* Dkt. 236 at 7; *See* Arcadi Dec. at ¶ 20.

[38] *See* Arcadi Dec. at ¶ 20; DeGraffenreid Dec. at ¶ 11. As previously stated, attorneys from Arcadi Jackson and Foulston Siefkin only conducted a second-level review of TAR documents.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF APPLICATION FOR TAR EXPENSES - Page 9**

wrong. Legility's hosting fees **related to TAR only** are $7764.73 per month.[39] Spirit has also paid, and will continue to pay, significant additional sums per month to Legility in hosting fees for the non-TAR data that Legility is hosting in connection with this lawsuit.[40] Similarly, Spirit only seeks to be reimbursed for Legility's user fees that are **related to TAR only**.[41]

Lawson also seeks to unilaterally determine what is outside the scope of the Order. Spirit has interpreted the Order to encompass all expenses related to TAR and caused by Lawson's insistence on moving forward with TAR, and therefore seeks reimbursement of the same. Given the fact that Lawson has not offered to pay Spirit any amount at all, it appears that the Court is in the best position to determine the amount that Lawson should pay to Spirit.

F.  Lawson Should Be Required to Compensate Spirit for the Cost of This Application and Memorandum and Any Related Briefing

The Court's Order contemplated Spirit being compensated for further briefing on this matter, including the present Application and Memorandum and a potential Reply Brief. (Dkt. 372 at 46 (ordering Spirit to inform Lawson of the "dollar amount Spirit is requesting, including whatever expenses Spirit has already incurred and **estimates it will in cur in further briefing on this matter**") (emphasis added)). Spirt has incurred approximately $35,000 in fees relating to this issue since the Court issued its Order (including correspondence, conferences, review and redaction of invoices, and the present Application and Memorandum). Spirit respectfully requests that the Court order Lawson to pay Spirit for the same.

## CONCLUSION

Spirit asks the Court to Order Lawson to pay Spirit (i) costs and fees in the amount of $791,700.21 in connection with TAR as contemplated by the Order and (ii) all costs and fees

---

[39] Stoneking Dec. at ¶¶ 14-15.
[40] *See* Dkt. 135 at ¶ 17; *see also* Stoneking Dec. at ¶¶ 14-15.
[41] Stoneking Dec. at ¶¶ 14-15.

relating to this issue that have been incurred by Spirit since the Court issue the Order. Spirit also asks the Court for all such other and further relief that the Court deems appropriate.

*[signature page to follow]*

Date: July 10, 2020                              Respectfully submitted,

*/s/Jeff P. DeGraffenreid*
Jeff DeGraffenreid, KS #15694
jdegraffenreid@foulston.com
Gary L. Ayers, KS #10345
gayers@foulston.com
Charles McClellan #23692
cmcclellan@foulston.com
FOULSTON SIEFKIN, LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
Telephone: (316) 291-9530
Facsimile: (866) 346-1938

Ann Marie Arcadi (admitted *pro hac vice*)
annmarie.arcadi@arcadijackson.com
T. Gregory Jackson (admitted *pro hac vice*)
greg.jackson@arcadijackson.com
Seema Tendolkar (admitted *pro hac vice*)
seema.tendolkar@arcadijackson.com
John M. Farrell (admitted *pro hac vice*)
john.farrell@arcadijackson.com
ARCADI JACKSON, LLP
2911 Turtle Creek Blvd., Suite 800
Dallas, TX 75219
Telephone: 214.865.6458
Facsimile: 214.865.6522

*Attorneys for Defendant Spirit AeroSystems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July, 2020, I presented the foregoing to the Clerk of the Court by electronic transmission for filing with the Court, which will send notice of electronic filing to all counsel of record.

/s/ *Jeff P. DeGraffenreid*
Jeff P. DeGraffenreid
