**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| LARRY A. LAWSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 18-1100-EFM-ADM |
| | ) |
| SPIRIT AEROSYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

This matter comes before the court on defendant Spirit AeroSystems, Inc.'s ("Spirit") Renewed Application for TAR Expenses. (ECF 487.) After considering Spirit's Renewed Application and supporting materials, the court awards Spirit $94,407.25 in expenses incurred in connection with its July 10 fee application ("Original Application") and its Renewed Application for the reasons discussed in further detail below.

### I.   BACKGROUND

The court previously granted Spirit's motion to shift the expenses it incurred in connection with a technology-assisted review ("TAR") of approximately 322,000 documents to plaintiff Larry A. Lawson ("Lawson"). *See Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 3288058 (D. Kan. June 18, 2020). After the parties could not reach agreement regarding the amount of those expenses, Spirit filed the Original Application seeking the court's determination as to the amount. (ECF 385.) The court considered the record and awarded Spirit $754,029.46 in TAR expenses. *See Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 6343292 (D. Kan. Oct. 29, 2020). But because the court could not determine the reasonable expenses Spirit incurred in connection with the Original Application itself based on the record presented at that time, the court provisionally granted Spirit those expenses, ordered the parties to

confer regarding the amount, and directed Spirit to file a renewed application with the required fee detail if the parties could not reach agreement. *Id.* at *18. When the parties could not reach agreement regarding the amount, Spirit filed the current Renewed Application. (ECF 487.)

In the Renewed Application, Spirit seeks attorneys' fees incurred in connection with the Original Application—specifically, $75,136 in attorneys' fees paid to the Arcadi Jackson law firm, and $9,805.25 in attorneys' fees paid to the Foulston Siefkin law firm. Spirit also seeks $10,111 in attorneys' fees that will be paid to Arcadi Jackson incurred in connection with the Renewed Application, and $980 in attorneys' fees that will be paid to Foulston Siefkin. Lawson opposes Spirit's Renewed Application, arguing that many of Spirit's expenses are excessive, duplicative, and should be reduced by at least 50%. Lawson also contends that he should not be responsible for any expenses Spirit incurred after it filed the Original Application on July 10.

## II.     EXPENSES ALLOCATED TO LAWSON

To determine the appropriate amount of expenses to allocate to Lawson, the court must independently analyze the reasonableness of the expenses Spirit seeks. *Cf. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 562 (1986) ("[T]he benchmark for the awards under nearly all of these statutes is that the attorney's fee must be 'reasonable.'"), *supplemented*, 483 U.S. 711 (1987); *see also Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 9:17-CV-80495, 2018 WL 6843629, at *2 (S.D. Fla. Dec. 21, 2018) (stating the court would determine the reasonable and necessary costs for plaintiff to pay defendants pursuant to Rule 26(c)(1)(B)); *Flowserve US Inc. v. Optimux Controls, LLC*, No. 2:13-CV-1073, 2017 WL 1240205, at *2 (D. Utah Mar. 31, 2017) (analyzing whether the defendants' expenses incurred in responding to discovery, which the court allocated to plaintiff under Rule 26(c)(1)(B), were reasonable); *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 37-38 (D. Md. 2000) ("The

court is given great flexibility to . . . adjust the timing of discovery and apportion costs and burdens in a way that is fair and reasonable.").

With respect to attorneys' fees specifically, "[t]he proper procedure for determining a reasonable attorneys' fee is to arrive at a lodestar figure by multiplying the hours . . . counsel reasonably spent . . . by a reasonable hourly rate." *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) (analyzing the attorneys' fees awarded to a prevailing employment plaintiff); *accord Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998) (same, in a 42 U.S.C. § 1983 case); *see also, e.g., Flowserve US*, 2017 WL 1240205, at *2 (using the lodestar method to calculate an award of attorneys' fees pursuant to Rule 26(c)(1)(B)).

Spirit seeks attorneys' fees for work performed by Arcadi Jackson as follows:

| **EXPENSE DESCRIPTION** | **AMOUNT** |
| --- | --- |
| Fees for the Original Application | $75,136.00 |
| Fees for the Renewed Application | $10,111.00 |
| **TOTAL:** | **$85,247.00** |

(ECF 487, at 2, 4.)  And, Spirit seeks attorneys' fees for work performed by Foulston Siefkin as follows:

| **EXPENSE DESCRIPTION** | **AMOUNT** |
| --- | --- |
| Fees for the Original Application | $9,805.25 |
| Fees for the Renewed Application | $980.00 |
| **TOTAL:** | **$10,785.25** |

(*Id.* at 3.)

### A. Lawson's General Objections

Lawson contends that he should not be responsible for any expenses incurred by Spirit after it filed the Original Application on July 10. (ECF 489, at 3-4.)  He argues he had a due process right to challenge the fees Spirit sought in the Original Application and submitting an opposition

should not require him to pay for a reply brief. (*See id.*) Before a court may impose attorneys' fees on a party, "due process requires fair notice and an opportunity to be heard." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465–66 (10th Cir. 1988) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). Due process, however, does not preclude a court from awarding a party the expenses it incurred in preparing a fee application; rather, those expenses are generally compensable. *See Case*, 157 F.3d at 1255 (concluding "that the district court's complete denial of time spent preparing the fee request was an abuse of discretion"). And they include expenses associated with fully briefing the fee application. *See Fish v. Kobach*, No. 16-2105-JAR, 2018 WL 3647132, at *1 (D. Kan. Aug. 1, 2018) ("Plaintiffs also properly seek the fees they incurred drafting the fee application and reply."); *see also Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 4346965, at *7 (D. Kan. July 29, 2020) (awarding fees incurred in filing fee motion and reply brief), *objections overruled*, 2020 WL 6939748 (D. Kan. Nov. 25, 2020). It is therefore appropriate to allocate expenses incurred in connection with Spirit's reply in support of the Original Application to Lawson.

Lawson also contends that he should not be required to pay for Spirit's fees incurred in connection with the Renewed Application. First, he argues that "pay[ing] Spirit's fees incurred in the preparation of its attorney bills is unwarranted because Lawson's decisions to pursue TAR and to oppose Spirit's requests for cost shifting were substantially justified" under Federal Rule of Civil Procedure 37(a)(5). (ECF 489, at 4.) But the court already determined that Lawson's position was not substantially justified "for all the reasons set forth in the June 18 order." *Lawson*, 2020 WL 6343292, at *14. Furthermore, the district judge overruled Lawson's objections to the June 18 order, finding no error in the conclusion that "Lawson's persistence in pursuing the costly,

4

ineffective TAR was disproportional to the needs of the case." *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM, 2020 WL 6939752, at *6 (D. Kan. Nov. 24, 2020).

Second, Lawson also argues that Spirit's request for Renewed Application expenses should be denied because of Spirit's lack of supporting documentation. (ECF 489, at 4.) Inadequate documentation may serve as a basis to deny fees. *See Anderson v. Sec'y of Health & Human Servs.*, 80 F.3d 1500, 1506 (10th Cir. 1996) ("[A] district court may totally deny a claim when no contemporaneous records were kept."). But, here, Spirit's fee application is not without documentation. Spirit submitted the time entries for the Original Application, which represents the bulk of the fee application. Spirit did not submit time entries for the Renewed Application, but those would have been the most recent time entries that presumably would not yet have gone through the end-of-month billing process to generate monthly invoices. Generating a piecemeal partial-month invoice is generally impractical, and, in this case, would have reflected only a small portion of the overall fees sought. Under the circumstances, Spirit's documentation for this aspect of its fee request is adequate. Spirit submitted declarations under penalty of perjury that describe the tasks relating to the Renewed Application, identify the timekeepers who performed the work, and list those timekeepers' hours and rates in accordance with the court's prior order.[1] (*See* ECF 487-1 ¶ 9; ECF 487-2 ¶ 12.) This documentation provides sufficient information to evaluate the reasonableness of Spirit's requested fees. Therefore, Lawson's objection concerning the lack of documentation is overruled.

---

[1] The court stated that "[f]or the most recent expenses (*e.g.*, those incurred in preparing the renewed application), Spirit does not need to submit time entries but may instead rely on attorney declaration(s) explaining number of hours and hourly rates for each timekeeper." *Lawson*, 2020 WL 6343292, at *18.

**B.     Reasonable Time Expended**

The court now analyzes the fees Spirit seeks relating to the Original and Renewed Applications. To demonstrate reasonable time expended, the party seeking fees must submit "meticulous, contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks." *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000). Fee applicants should exercise billing judgment with respect to the number of hours worked and billed. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Billing judgment consists of winnowing hours actually expended down to hours reasonably expended. *Praseuth*, 406 F.3d at 1257. If an attorney's hours would not have been properly billed to a client, they "cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Case*, 157 F.3d at 1250.

Where the hours claimed by counsel include those that are "unnecessary, irrelevant and duplicative," the court may reduce the reasonable hours awarded. *Id.* (quoting *Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 956 (10th Cir. 1994)). A court is also "justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." *Id.* (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995)). But, the Tenth Circuit "has not established a rule mandating reduction or denial of a fee request if [a] party submits attorney-records which reflect block billing." *Cadena*, 224 F.3d at 1215.

The court is not required to "identify and justify each disallowed hour. Nor is [there] any requirement that district courts announce what hours are permitted for each legal task." *Case*, 157 F.3d at 1250 (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986)). The court may instead, for sufficient reasons, impose a "general reduction of hours claimed in

6

order to achieve what the court determines to be a reasonable number." *Id.* (quoting *Mares*, 801 F.2d at 1203). The court has discretion to determine how many hours a party should have expended on particular tasks. *See id.*

### 1. Original Application

Spirit's counsel spent 228.2 hours on activities for the Original Application, including reviewing and preparing invoices to submit to Lawson's counsel and the court, conferring with Lawson's counsel to try to reach an agreement on the amount of expenses, and drafting briefing and supporting declarations. Specifically, Arcadi Jackson partners Ann Marie Arcadi and Greg Jackson spent 28.4 and 2.6 hours, respectively, on Original Application activities, of counsel attorney Seema Tendolkar spent 64.6 hours, associate Lee Budner spent 69.4 hours, and paralegals Cynthia Partin and Lilia Garcia spent 9.4 and 15.8 hours, respectively. Foulston Siefkin partner Jeff DeGraffenreid spent 22.6 hours on these activities, and paralegal Jami Buck spent 15.4 hours.

Lawson objects to a number of these time entries as duplicative and/or excessive. The court already determined that Spirit's estimated Original Application expenses "appear[ed] to be a reasonable range because of the nature of the issues and the details involved with preparing the . . . application and replying to Lawson's response brief." *Lawson*, 2020 WL 6343292, at *18. Spirit's invoices substantiate the court's initial impression. Most of the attorney and paralegal time is reasonable and compensable, considering the conferral activities, the briefs' length and substance, the supporting materials, and the court-imposed briefing schedule and page limits. The court will, however, exclude Jackson's time for the same reasons discussed in the October 29 order—namely, that Arcadi and DeGraffenreid exercised primary supervisory roles in this litigation, and Jackson's time entries do not reflect that his work on these particular tasks was necessary. *See id.* at *14.

Lawson also objects to senior attorneys reviewing invoices. But Arcadi analyzed whether time entries should be included in Spirit's fee application and made downward adjustments where necessary. *See id.* at *11 (describing Arcadi's work on the invoices). Senior attorneys like Arcadi and DeGraffenreid are typically uniquely positioned to exercise their discretion on such issues because they have the professional experience, knowledge of client billing practices, and visibility over the litigation as a whole to evaluate the propriety of particular billing entries. The court is therefore unpersuaded by Lawson's argument that senior attorneys should not have performed such invoice-related tasks in connection with a fee application.

### 2.     Renewed Application

Spirit's counsel spent 28.3 hours on activities for the Renewed Application, including reviewing and preparing invoices to submit to Lawson's counsel and the court, conferring with Lawson's counsel to try to reach agreement on the amount of expenses, and drafting briefing and supporting declarations. Specifically, Arcadi spent 4.2 hours on Renewed Application activities, Tendolkar spent 11.1 hours, Budner spent 6.8 hours, and Garcia spent 2.7 hours. DeGraffenreid spent 2.5 hours on these activities, and Buck spent 1 hour.

Spirit did not submit invoices with specific time entries in support of its request for Renewed Application expenses. As directed by the court's prior order, however, Spirit provided declarations under penalty of perjury describing the tasks relating to the Renewed Application, identifying the timekeepers who performed the work, and listing those timekeepers' hours and rates. (*See* ECF 487-1 ¶ 9; ECF 487-2 ¶ 12.) These declarations are sufficient for the court to evaluate Spirit's request for expenses incurred in connection with the Renewed Application, as they appear to be summaries of contemporaneous time records. *See Hensley*, 461 U.S. at 437 n.12 (stating that counsel "is not required to record in great detail how each minute of his time was

expended. But at least counsel should identify the general subject matter of his time expenditures"); *see also Progressive Direct Ins. Co. v. Gerken*, No. CV 19-00864 KG/LF, 2020 WL 6047592, at *3 (D.N.M. Oct. 13, 2020) (noting that some courts hold that "[i]n lieu of contemporaneous time records, an applicant may submit summaries accompanied by affidavits stating that the summaries are accurate and based on contemporaneous time records" (alteration in original) (quotation omitted)).

The court has considered the conferral activities before submitting the Renewed Application, the briefs' length and substance, the supporting materials, and the court-imposed briefing schedule and page limits. The court finds that the attorney and paralegal time spent on the Renewed Application is reasonable and compensable. No reduction is warranted.

### 3. Total Reasonable Hours

In summary, the court finds that the following hours were reasonably spent by Spirit's attorneys and paralegals on the Original and Renewed Applications:

| TIMEKEEPER | HOURS |
|---|---|
| Ann Marie Arcadi (Partner, Arcadi Jackson) | 32.6 |
| Seema Tendolkar (Of Counsel, Arcadi Jackson) | 75.7 |
| Lee Budner (Associate, Arcadi Jackson) | 76.2 |
| Jeff DeGraffenreid (Partner, Foulston Siefkin) | 25.1 |
| Cynthia Partin (Paralegal, Arcadi Jackson) | 9.4 |
| Lilia Garcia (Paralegal, Arcadi Jackson) | 18.5 |
| Jami Buck (Paralegal, Foulston Siefkin) | 16.4 |
| **TOTAL:** | **253.9** |

### C. Reasonable Hourly Rate

The court turns next to the reasonable hourly rates for these timekeepers. Spirit requests the following rates for a Foulston Siefkin attorney in the firm's Wichita and office and a paralegal:

| NAME | POSITION | EXPERIENCE[2] | HOURLY RATE |
|---|---|---|---|
| Jeff DeGraffenreid | Partner | 28 years | $380 |
| Jami Buck | Paralegal | | $170 |

Spirit requests the following rates for Dallas-based Arcadi Jackson attorneys and paralegals:

| NAME | POSITION | EXPERIENCE | HOURLY RATE |
|---|---|---|---|
| Ann Marie Arcadi | Partner | 27 years | $625 |
| Seema Tendolkar | Of Counsel | 18 years | $415 |
| Lee Budner | Associate | 7 years | $350 |
| Cynthia Partin | Paralegal | 27 years | $185 |
| Lilia Garcia | Paralegal | | $185 |

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate of the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (internal quotations omitted); *see also Perdue v. Kenney*, 559 U.S. 542 (2010) (same). The relevant community is "the area in which the litigation occurs" or "the area in which the court sits." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983); *Case*, 157 F.3d at 1256. The party seeking fees "must provide evidence of the prevailing market rate for similar services by 'lawyers of reasonably comparable skill, experience, and reputation' in the relevant community." *Lippoldt*, 468 F.3d at 1224-25 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). An attorney's customary rate is relevant but not conclusive. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).

Spirit's requested rates are equal to or less than rates that the court has already approved. (*See* ECF 487, at 3 ("[T]his Court has already held . . . the . . . rates are reasonable.").) For the

---

[2] Spirit does not provide information on timekeepers' years of experience supporting the Renewed Application. If information on a timekeeper's experience was provided with the Original Application, the court includes it here.

reasons articulated in the court's October 29 order, these rates continue to be reasonable. *See Lawson*, 2020 WL 6343292, at *16-*17 (approving partner rates up to $625, a $415 of counsel rates, associate rates up to $350, and a $185 paralegal rate).

### D. Lodestar Calculation

In view of the above, following is the appropriate lodestar calculation[3]:

| TIMEKEEPER | HOURS | RATES | TOTAL |
|---|---|---|---|
| Ann Marie Arcadi | 32.6 | $625 | $20,375.00 |
| Seema Tendolkar | 75.7 | $415 | $31,415.50 |
| Lee Budner | 76.2 | $350 | $26,670.00 |
| Cynthia Partin | 9.4 | $185 | $1,739.00 |
| Lilia Garcia | 18.5 | $185 | $3,422.50 |
| Jeff DeGraffenreid | 25.1 | $380 | $8,345.75 |
| Jami Buck | 16.4 | $170 | $2,439.50 |
| | | **TOTAL:** | **$94,407.25** |

The lodestar amount is presumed to be a reasonable fee. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The court may adjust this lodestar amount based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See Brown v. Phillips Petro. Co*., 838 F.2d 451, 454-55 (10th Cir. 1988) (approving the *Johnson* factors to determine a reasonable fee in a common fund case). The lodestar analysis, however, remains the primary consideration when determining a reasonable fee and often subsumes the *Johnson* factors. *See Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1254 (D. Kan. 2017). Here, neither party expressly addresses the *Johnson* factors, and the court therefore finds no adjustment based on those factors is warranted.

---

[3] Foulston Siefkin's fees were discounted by 12.5%, therefore the court applies that discount to DeGraffenreid and Buck's totals.

**III.   CONCLUSION**

The court already provisionally granted Spirit its expenses reasonably incurred in preparing the Original Application, with the amount to be determined.  *Lawson*, 2020 WL 6343292, at *19. After reviewing the Renewed Application and supporting materials, the court finds that Spirit reasonably incurred $94,407.25 in attorneys' fees in connection with the Original and Renewed Applications.  Accordingly, the court allocates these expenses to Lawson.

**IT IS THEREFORE ORDERED** that defendant Spirit AeroSystems, Inc.'s Renewed Application for TAR Expenses (ECF 487) is granted in part and denied in part as set forth above.

**IT IS SO ORDERED.**

Dated December 28, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
