IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LARRY A. LAWSON,

                Plaintiff,

        vs.                                             Case No. 18-1100-EFM

SPIRIT AEROSYSTEMS, INC.,

                Defendant.

MEMORANDUM AND ORDER

Before the Court is Plaintiff Larry Lawson's Appeal from the Magistrate Judge's October 29, 2020 Order[1] fixing the amount of e-discovery expenses shifted to Plaintiff. The Court has separately affirmed the Magistrate Judge's June 18, 2020 decision to shift the expenses for technology-assisted review ("TAR").[2] The history of the parties' discovery efforts, including plaintiff's insistence on TAR, has been extensively explored

---

[1] Dkt. 465.

[2] *Lawson v. Spirit Aerosystems*, No. 18-1100-EFM-ADM, 2020 WL 3288058 (June 18, 2020) (Dkt. 372), *aff'd*, 2020 WL 6939752 (Nov. 24, 2020) (Dkt. 491).

both by the Magistrate Judge in her June 18 Order[3] and this Court's Order affirming that decision.[4] Those summaries are adopted herein. For the following reasons, the Court affirms the October 29 Order.

## 1. Legal Standard

Upon objection to a magistrate judge's order on a non-dispositive matter, the district court may modify or set aside any portion of the order that it finds to be "clearly erroneous or contrary to law."[5] To be clearly erroneous, a decision must strike the court as "more than possibly or even probably wrong."[6] Under the clearly erroneous standard, the district court must affirm the magistrate judge's order "unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"[7] For legal determinations, the district court "conducts an independent review and determines whether the magistrate judge ruling is contrary to law."[8] "Under this standard, the Court conducts a plenary review and may set aside the

---

[3] 2020 WL 3288058, at *3-8.

[4] 2020 WL 6939752, at *2-4.

[5] 28 U.S.C. § 636(b)(1)(A); *see also First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (citation omitted); Fed. R. Civ. P. 72(a).

[6] *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011) (citation omitted).

[7] *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[8] *In re Motor Fuel Temperature Sales Practices Litigation*, 707 F. Supp. 2d 1145, 1148 (D. Kan. 2010) (citations omitted), *interlocutory appeal dismissed*, 641 F.3d 470 (10th Cir. 2011)*, cert. denied*, 132 S. Ct. 1004 (2012).

magistrate judge decision if it applied an incorrect legal standard or failed to consider an element of the applicable standard."[9]

## 2. Procedural History

The Magistrate Judge granted the motion of Defendant Spirit Aerosystems to shift TAR costs to Lawson after finding that his electronic discovery tactics were particularly burdensome and disproportionate, that Spirit had already shouldered more than its share of discovery expenses, and that Lawson's pursuit of TAR occurred despite repeated warnings that the Magistrate Judge would eventually shift costs. By a separate Order on October 29, 2020, the Magistrate Judge awarded Spirit $754,029.46 in expenses.[10]

As noted earlier, Lawson appealed from both the June 18 Order (granting the motion to shift costs) and the October 29 Order (setting the amount of shifted costs). In the first appeal, Lawson argued that the Magistrate Judge should not have shifted costs because the evidence was relevant to prove an affirmative defense of Spirit, and because TAR ultimately produced some useful evidence. The Court rejected Lawson's first

---

[9] *Id.*

[10] In the October 29 Order, the Magistrate Judge provisionally granted Spirit's attorney fees in connection with preparing its July 10, 2020 fee application. But because the record was unclear, the Magistrate Judge directed the parties to meet and confer, and if necessary, for Spirit to file a renewed application. (Dkt. 465, at 39-40). On December 28, 2020, the Magistrate Judge granted Spirit a total of $94,407.25 in attorney fees in connection with the original and renewed fee applications. (Dkt. 498, at 11). The court rejected Lawson's arguments that the time entries were excessive and included work by senior attorneys.

argument, finding that the issue of business overlap was not solely an affirmative defense of Spirit. Rather, the business overlap issue was a central element of the case which both parties had an interest in resolving. Shifting of costs was appropriate because, "up until the Magistrate Judge's order, Spirit disproportionally carried the financial burden."[11]

The Court also rejected Lawson's argument that the costs should not be shifted because the TAR process did yield some relevant evidence. The meager results of TAR, however, did not warrant overturning the Magistrate Judge's decision to fairly allocate costs:

> The Court is not persuaded by this "ends justify the means" argument. Even though a costly and overly thorough electronic discovery process produces *some* fruit does not prove that the discovery was proportionate to the case. The Magistrate Judge did not order costs shifted based on the forecast of an entirely fruitless TAR search. Rather, the Judge simply decided—within her sound discretion—that what little fruit would come from the search did not justify Spirit solely bearing its financial burden.[12]

The court concluded by determining that the plaintiff had presented nothing to challenge the Magistrate Judge's decision to shift costs because "Lawson's persistence in pursuing the costly, ineffective TAR was disproportional to the needs of the case."[13]

In the present appeal, Lawson challenges the amount of costs imposed in the Magistrate Judge's Order Setting Award Amount on the Order Shifting Costs. He

---

[11] 2020 WL 6939752, at *5.

[12] *Id.* at *6 (emphasis in original).

[13] Id.

argues that the award is clearly erroneous because Spirit's e-discovery vendor, Legility, charged excessive fees. Specifically, he argues Legility (1) charged an excessive hourly rate, (2) reviewed documents too slowly, (3) charged for unnecessary confidentiality reviews, (4) included unnecessary management fees, and (5) presented expenses which were controverted by evidence from Jeffrey Grobart, the Associate Director of H5 Technologies, Lawson's e-discovery vendor. Lawson argues the Magistrate Judge also erred in calculating the amount of attorney fees to compensate Spirit's outside counsel, and that the award includes amounts outside the scope of the June 18 order and for time entries which were not clearly tied to the TAR process.

In addition to these arguments challenging the amount of the award, Lawson also challenges the shifting of costs itself. Lawson argues that shifting should not have occurred, noting that the general rule is against it,[14] and because the information he sought was "highly relevant" to the case.[15] These arguments were effectively resolved by the court's denial of the first appeal. As noted above and applying "the highly deferential standard of review," the court denied the appeal. That conclusion, rendered after Lawson launched the present appeal, remains appropriate.[16]

---

[14] Dkt. 486-1, at 5.

[15] *Id.*.

[16]  The June 18 Order expressly acknowledges the general rule cited by Lawson, but found that shifting of costs was appropriate under Rule 26(c), which allows shifting to compensate a party facing undue expenses. *See* 2020 WL 3288058, at *8-9 (citing *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003). The Magistrate Judge's determination that the relevant proportionality factors supported cost shifting was affirmed by this court, which agreed that Spirit had "disproportionally carried the financial burden." *See* 2020 WL 6939752, at *5. Similarly, shifting is not defeated by the fact that a few TAR

### 3. Legility's Expenses

The Magistrate Judge found that Spirit reasonably incurred $449,999.21 in expenses through Legility, its e-discovery vendor. This amount includes $215,428.50 for its document team's TAR expenses, $62,571.56 for project management fees, and $171,999.15 for data hosting and processing fees. Lawson challenges this award as erroneous, arguing that Legility's hourly rates are excessive, that the pace of was slow, and that the total was inflated by unnecessary coding for confidentiality and unsubstantiated management fees.[17]

Seventeen contract attorneys performed first-level review for Legility on the TAR data between September 2019 and January 2020, billing at a rate of $55 per hour. This assessment included reviewing the documents for responsiveness, privilege, and confidentiality. One attorney billed at $75 per hour, and the Legility Team Lead billed at $85 per hour. Substantial evidence supports the Magistrate Judge's conclusion that these fee rates are reasonable,[18] and the Magistrate Judge noted that the $55 per hour rate (used in the overwhelming number of instances) for document review was well

---

documents were subsequently cited in summary judgment pleadings. None of the documents was essential at summary judgment or trial, and more importantly, costs were shifted because the *proportion* of relevant documents produced by TAR was negligible. *See* 2020 WL 6939752, at *6 ("what little fruit would come from the search did not justify Spirit solely bearing its financial burden."

[17] Dkt. 486-1, at 10-17.

[18] Jeff Stoneking, a Senior Consultant of Legility, averred that the company "actively monitors competitive rate nationwide," and that its rates are "consistent with the market and are reasonable." (Dkt. 388-1, ¶ 20).

within range approved in recent cases.[19] The Magistrate Judge also accurately noted that this $55 per hour rate was well below the $80 per hour recognized as the median rate for privilege review by Grobart.[20]

The Magistrate Judge's conclusion that Legility reviewed the documents at a reasonable pace was neither clear error nor contrary to law. As noted above, the review addressed issues of responsiveness, privilege, and confidentiality. Further, many of the documents were complex in nature.[21] After noting that the range of approved paces varied considerably with document complexity, the Magistrate Judge found that the approximately 26 documents per hour of Legility was not unreasonable.[22] Further, the Magistrate Judge did not accept Spirit's review rate estimates at face value, but performed her own independent calculation to determine a rate which, as she noted, was not far from the 30 document per hour rate that Grobart stated was "typical" for complex commercial litigation.[23]

Lawson also argues that Legility's costs were inflated because it did not need to code the documents for confidentiality in light of the Agreed Protective Order.[24] The Protective Order does include restrictions on the use of materials received in

---

[19] Dkt. 465, at 10-11.

[20] Dkt. 394-1, ¶ 7.

[21] Dkt. 465 at 8-10, 25.

[22] *Id*. at 8-9.

[23] *Id*. at 9 (citing 394-1, ¶ 6 (Grobart Aff.).

[24] Dkt. 236.

discovery,[25] but these do not render the coding unnecessary. The Protective Order does not offer blanket restrictions on the use of all discovery materials; protection only exists for material explicitly designated as "CONFIDENTIAL."[26] And this designation can only be applied to information which a party "in good faith" believes actually "contains or reflects confidential, proprietary, and/or commercially sensitive information."[27] The Protective Order forced Spirit to conduct a good faith review of the TAR materials for confidentiality, and compensating the Defendant for the costs of confidentiality coding was appropriate.[28]

The Magistrate Judge did not err in providing compensation for Legility's project management fees. As previously noted, the data reviewed by Legility involved complex documents produced by or for Spirit's senior executives. Effectively managing and processing this huge amount of complex data required more than simply dumping it out in front of the individual reviewers. It required Legility to manage a large amount of electronic data, train the reviewers and coordinate their work, and evaluate and process the results. As the Magistrate Judge noted:

> It is common on a document review project of this type and magnitude to have active involvement by team leaders, project managers, and

---

[25] *Id*. at ¶¶ 3(a)-(f), 5(b).

[26] *Id*. at ¶¶ 1(j), 5(a).

[27] Id.

[28] Even if the Protective Order did not require a *pre-production* good faith confidential review, Spirit would have had to conduct a confidentiality review at some point. The costs of a subsequent review would still be compensable as a necessary expense resulting from the Plaintiff's insistence on the TAR process.

> technology support specialists to supervise and coordinate the workflow and to liaise with litigation counsel. Furthermore, time spent on metrics and reporting is both reasonable and compensable under the June 18 order. As discussed above, Legility gathered and analyzed metrics to evaluate the effectiveness of the TAR as it progressed as well as the quality of the dataset subject to review.[29]

And, contrary to Lawson's claim in the present appeal, the Magistrate Judge did not uncritically accept a conclusory summary of Legility's management expenses, but performed her own independent assessment of Legility's management expenses, including individual time entries for the company's invoices.[30]

Finally, the Court finds no error the Magistrate Judge's treatment of the Declaration by Jeffrey Grobart, who stated that his firm H5 Technologies could have performed the TAR review for $209,000.[31] But this figure is offered as a pure conclusion, and Grobart acknowledges it did does not include time for conducting a privilege review. The Magistrate Judge expressly considered Grobart's opinion and founding it unpersuasive for multiple reasons.[32] She also noted that Legility's review rate (which she estimated at 26 documents per hour) was close to the 30 documents per hour cited as "typical" by Grobart, and that the $55 per hour rate used by Legility for the great share of the reviews was not unreasonable given the $80 per hour cited by Grobart as

---

[29] Dkt. 465, at 13.

[30] *Id.*, at 15-17.

[31] Dkt. 394-1, ¶ 9.

[32] Dkt. 465 at 6-7 (agreeing with Stoneking that an alternative form of TAR (version 1.0) would not have generated the savings claimed by Grobart, and noting that H5 and Grobart did not timely recommend the use of TAR 1.0.

the median for privilege reviews.[33] Weighing conflicting evidence is an essential task of a fact finder, and Plaintiff has failed to show that the Magistrate Judge's assessment of Grobart's opinions as unpersuasive was clear error.

## 4. Outside Counsel's Fees

Spirit incurred substantial attorney fees as its outside counsel directed and monitored the TAR process, conducted second-level document reviews, prepared a privilege log, and ultimately briefed the motion to shift costs. The Magistrate Judge ultimately awarded Spirit $304,030.25 in attorney fees.[34]

Lawson argues the Magistrate Judge erred in shifting these fees because it is contrary to law allocating the burdens of discovery,[35] and because the outside counsel unnecessarily employed senior counsel for these activities.[36] The Court finds no error of law. The primary authority cited by Lawson states only the general rule of discovery that a subpoenaed party must bear its own costs for conducting privilege reviews,[37] and does not address shifting of costs under Rule 26(c).

---

[33] *Id.* at 9-10.

[34] Dkt. 465. at 38.

[35] Dkt. 486-1, at 15-16.

[36] Id. at 16-17.

[37] *Cahoo v. SAS Inst. Inc.*, No. 17-10657, 2019 WL 4139152, at *4 (E. D. Mich. Aug. 30, 2019)  (citing *US Bank Nat'l Ass'n v. PHL Variable Insurance*, No. 12-6811, 2012 WL 5395249, at *3 (S.D. N.Y. Nov. 5, 2012)). The remaining cases cited by Lawson are also not on point. For example, in *Cochran v. Caldera Medical, Inc.*, 2014 WL 1608664, at *2 (E.D. Pa. Apr. 22, 2014), the court imposed on defendant the costs of electronic

Nor is the award clearly erroneous or contrary to law because in includes some work by senior attorneys. Second level review was required because the electronic analysis and Legility's first level reviewers had coded a document as responsive. Second level review confirmed whether the document was responsive, and also reviewed the document for confidentiality, privilege, and compliance with International Traffic in Arms Regulations (ITAR). The Magistrate Judge did not uncritically accept the use of senior attorneys for second level review, but where appropriate excluded time sought or reduced the billing rate.[38] The Magistrate Judge did approve the use of senior attorneys for some second level review, reasoning that:

> the TAR documents came from senior executives, including the CEO, and contained confidential and sensitive information. Mid- and senior-level attorneys with experience and knowledge of the issues in the case were appropriately involved in the TAR to ensure that lower-level reviewers were correctly and uniformly coding documents for responsiveness, and also to make final decisions on privilege, confidentiality, and ITAR compliance. Spirit's litigation team, including the attorneys making litigation strategy decisions, would need to provide input on sensitive issues that may come up during document review and develop some level of familiarity with the general nature of the documents produced through the TAR.[39]

---

data retrieval and review because those expenses are "typically not subject to cost-sharing," and because the court determined that expense-shifting was not warranted under the version of Rule 26(b)(2)(C)(iii) then in effect. But Rule 26 was amended the following year to clarify that a court may shift expenses where necessary to protect a party from undue burden or expense. Magistrate Judge Mitchell's June 18 Order weighing those the Rule 26(c) factors and shifting expenses has been affirmed by this Court.

[38] Dkt. 465 at 26.

[39] *Id.* at 25 (record citation omitted).

Further, whether or not the attorneys conducting some document reviews are characterized as "senior," Plaintiff has failed to show that the actual rate charged for the second level review was unreasonable. Because the decision of the Magistrate Judge was not clearly erroneous, the award as to Spirit's outside counsel expenses is affirmed.

## 5. Additional Expenses

Lawson argues that the Magistrate Judge erroneously granted fees for data hosting and processing, and for the creation of a privilege log, because these were outside the scope of her earlier June 18 Order. The Court finds no error. The Magistrate Judge's earlier order contemplated that Spirit would recover "its actual expenses incurred in connection with the TAR process."[40] The Plaintiff has failed to show the fees were not actually incurred by the defendant in connection with TAR.

Substantial evidence supports the conclusion that the fees for hosting and processing were required by the demand for TAR data.[41] The Magistrate Judge rejected the Plaintiff's claim that Spirit would have incurred such fees anyway, pointing out that:

> Spirit does not request any expenses that it incurred before the TAR began. Rather, Spirit seeks expenses beginning September 30, 2019, when Spirit first processed the TAR dataset into Venio and Catalyst. Spirit could not have conducted the TAR without incurring these expenses, including

---

[40] Dkt. 372, at 45.

[41] Dkt. 465, at 18  *See* Dkt. 388-1 (Stoneking Aff.), ¶¶ 14-15.

the expenses for Catalyst user licenses for document reviewers. And the production-related fees were also necessarily incurred to complete Spirit's rolling production of TAR documents.[42]

The Magistrate Judge's analysis, coupled with the evidence submitted by Spirit, adequately support the decision to shift costs for hosting and processing TAR data.

With respect to the privilege log, the Magistrate Judge appropriately observed that "[o]nce Spirit was obliged to produce responsive documents from the TAR, it was equally obliged to create and produce a privilege log for any documents it withheld as privileged from its TAR production."[43] Plaintiff argues that Spirit would have had to have developed a privilege log anyway, but points to no evidence that this would have been necessary for the documents produced through TAR. The privilege log and the hosting and processing fees were directly associated with the unnecessary and overwhelmingly inefficient TAR process, and the Plaintiff has failed to show any clear error in awarding these costs.

The Magistrate Judge also awarded Spirit the costs of responding to Lawson's motion to compel, and Plaintiff now argues that this was only "tangentially" related to TAR.[44] But the Magistrate Judge found that the motion to compel, which sought a 100% TAR recall rate, lacked any authority and was not substantially justified.[45] The response

---

[42] Dkt. 465, at 17-18.

[43] Dkt. 465, at 20.

[44] Dkt. 486-1, at 19.

[45] Dkt. 465, at 31. In awarding the costs of the response, the Magistrate Judge also noted her prior determination that Plaintiff's "lack of reasonableness with respect to ESI 'bordered on the abusive.'" *Id.*

to the motion to compel was necessitated directly by Lawson's insistence on TAR, and it was not error to shift to him the costs associated with that response.

### 6. Allegedly Invalid Time Entries

Finally, Lawson contends that some of the fees awarded Spirit were "impermissibly block billed and vague."[46]  After Lawson objected to Spirit's application for fees, the Magistrate Judge required Lawson to offer specific objections for each time entry.[47]  The Magistrate Judge then individually reviewed the plaintiff's objections, ultimately finding them to be largely without merit.

The considered and deliberate approach of the Magistrate Judge is exemplified in her adjustment of the time-entries for Mr. DeGraffenreid by 25%, finding the billings "may have involved other case-related activities," while upholding the time entries of Ms. Arcadi, who had personally reviewed and adjusted the time entries to reflect only TAR work.[48]  Similarly, with respect to Legility's time entries, the Magistrate Judge found that "all of the tasks appear to be TAR-related even if they describe more than one task. Furthermore, Spirit has already reviewed and excluded any non-TAR-related time from its calculations and does not seek those expenses."[49]

---

(citing *Lawson v. Spirit Aerosystems*, No. 2020 WL 1813395-EFM-ADM, at *9 (D. Kan. April 9, 2020) [Dkt. 335]).

[46] Second Appeal at 19.

[47] Dkt. 401, at 1.

[48] Dkt. 465, at 22-23.

[49] *Id*. at 16.

The appeal provides little support for finding clear error in the Magistrate Judge's review of time entries.  Although Plaintiff claims that Spirit's bills were "replete" with vague entries, he cites with particularity but two time entries amounting to 4.3 hours as impermissibly vague.[50] That the first, an entry from Legility, is TAR-related is supported both by affirmative affidavit and by the context of the surrounding entries.[51]  The second entry, from Foulston Siefkin, is among the entries which was reduced by the Magistrate Judge.

The Magistrate Judge asked Lawson to provide particularized objections to the time entries and thoughtfully considered them. In the present appeal, the plaintiff has failed to demonstrate how Magistrate Judge's resolution of those objections was clearly erroneous or contrary to law.

### 7. Attorney Fees

Finally, Spirit seeks its attorney fees for responding to Lawson's appeal.[52] The Magistrate Judge determined that Plaintiff's position on electronic discovery was not substantially justified, and awarded Spirit its attorney fees for opposing Plaintiff's motion to compel under Fed.R.Civ.Pr. 37.[53] Spirit cites decisions holding that

---

[50] Dkt. 486-1, at 20.

[51] Dkt. 388-1, ¶ 19.

[52] Dkt. 493, at 30.

[53] Dkt. 465, at 28-29, 31.

"reasonable fees incurred in responding to a Rule 72(a) objection are recoverable under Rule 37(a)(5)(A)."[54]

In his Reply, Plaintiff continues to argue that TAR was reasonably useful, that document review fees by Legility and outside counsel were unreasonable, that the award included matters outside the June 18 Order, and that the attorney fee invoices were vague and block-billed, and that as a result the award should be set aside.[55] But Plaintiff offers no direct response to Spirit's request for fees, address the authorities cited by Spirit, or show why—if the award is not set aside—fees should not be awarded.

As noted above, in the June 18 Order, the Magistrate Judge determined that Spirit should be compensated for "its actual expenses incurred in connection with the TAR process." Defending the resulting award is an expense incurred in connection with the TAR process, and the court finds that Spirit is entitled to recover the reasonable cost for preparing its Response to the Second Appeal.   The Defendant shall submit information sufficient to determine the amount of fees within 20 days of the date of the present Order.

**IT IS THEREFORE ORDERED** that the Magistrate Judge's Orders imposing costs (Dkt. 465, 498) are hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff Larry A. Lawson's Appeals of Magistrate Judge Decisions to District Court (Dkt. 485, 503) are **DENIED.**

---

[54] *Marrocco v. Hill*, 291 F.R.D. 586, 590 (D. Nev. 2013).

[55] Dkt. 531, at 3-12.

**IT IS SO ORDERED.**

Date this 18th day of October, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE